RACHEL E. K. LOWE (State Bar No. 246361)
JONATHAN J. KIM (State Bar No. 312145)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:  213-576-1000
Facsimile:   213-576-1100
rachel.lowe@alston.com
jonathan.kim@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC (erroneously sued as "YARDI SYSTEMS, INC.") and RENTCAFE, LLC**

(Additional Counsel Listed on Next Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>Defendants. | Case No. ____2:26-cv-03318____<br><br>(Santa Barbara Superior Court Case No. 26CV00952)<br><br>**DEFENDANTS YARDI SYSTEMS, LLC'S AND RENTCAFE, LLC'S APPENDIX OF STATE COURT PAPERS AND PLEADINGS**<br><br>Filing Date:  February 9, 2026 |

E. SCOTT SCHIRICK
(*Pro Hac Vice Forthcoming*)
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Scott.schirick@alston.com

DAVID B. CARPENTER
(*Pro Hac Vice Forthcoming*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:    404-881-7777
David.carpenter@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC and
RENTCAFE, LLC**

NOTICE OF REMOVAL

Defendants Yardi Systems, LLC (erroneously sued as "Yardi Systems, Inc.") and RentCafe, LLC hereby submit copies of the following state court pleadings and papers cited in support of its Notice of Removal.

| | |
|---|---|
| Exhibit A | Complaint |
| Exhibit B | Summons |
| Exhibit C | State court docket |
| Exhibit D | All other process, pleadings, and orders filed in the state court |

Dated:  March 27, 2026

E. SCOTT SCHIRICK, *Pro Hac Vice Forthcoming*
DAVID B. CARPENTER, *Pro Hac Vice Forthcoming*
RACHEL E. K. LOWE
JONATHAN J. KIM

**ALSTON & BIRD LLP**


By: _____*/s/ Rachel E. K. Lowe*_____
            Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
2/9/2026 12:50 PM
By: Narzralli Baksh , Deputy

**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

(additional counsel on signature page)

*Attorneys for Plaintiffs and the Putative Class*
\**Pro hac vice* applications to be filed

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA BARBARA

|  |  |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS, INC., and RENTCAFE, LLC, <br><br> Defendants. | Case No: 26CV00952 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Phaness Mosley, William Foxx and Karen Picardi ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Yardi Systems, Inc. and RentCafe, LLC (collectively, "RentCafe" or "Defendants"), and state:

## I.  NATURE OF THE ACTION

1.     There is a cost-of-living crisis in our country, one that is especially acute in the housing market. One reason is the relentless imposition of add-on fees in excess of advertised rental rates—including "pay to pay" fees like those at issue in this Complaint, wherein consumers are charged add-on junk fees by third-party middlemen merely for doing what they are required to do under the terms of their residential leases: make their rent payments.

2.     Plaintiffs bring this putative class action lawsuit seeking monetary damages, punitive damages, restitution and injunctive relief arising from Defendants' deceptive and unfair imposition of junk "Service Fees" on rent payments completed through RentCafe's Resident app.

3.     The Service Fee is added, at the very last step of the checkout process, using a "negative option" process. This process—condemned by the FTC as inherently deceptive—automatically lards online checkout flows with supposedly optional junk fees, then forces consumers to find a way to remove them. Worse, Defendant provides no fair disclosure on how to remove the add-on fees.

4.     Further, the Service Fee is deceptively mis-named, as there is no additional "service" provided by Defendants that is not reasonably already included in a residential lease, *viz*. the ability to make a payment under that lease. RentCafe's Service Fee is a classic example of a company-imposed "junk fee" that serves as a profit generator for RentCafe, while providing no added value to consumers.

5.     RentCafe's Service Fee is additionally deceptive because RentCafe does not inform consumers that there is no additional "service" being provided and, in fact, the fee is not permitted by, or disclosed in, their residential leases.

6.     At no point during the rental payment process in the RentCafe Resident app are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe that the fee is mandatory and unavoidable.

CLASS ACTION COMPLAINT

7.  Indeed, the Service Fee amounts to additional, unexpected rent for tenants that is undisclosed in lease agreements. RentCafe's knowing and intentional imposition of the Service Fee over and above the contracted-for rent constitutes a tortious interference with contract.

8.  Plaintiffs and Class members are injured by RentCafe's deceptive, unfair and illegal practices. Plaintiffs bring this action on behalf of themselves and the putative Class and seek actual damages, punitive damages, restitution and injunctive relief to prevent RentCafe from continuing to engage in its illegal practices described herein.

## II.   PARTIES

9.  Plaintiff Phaness Mosley is a citizen and resident of Chula Vista, California. At all relevant times alleged herein, she was a tenant of a property in California and was assessed a Service Fee for paying rent payments through RentCafe.

10.  Plaintiff William Foxx is a citizen and resident of Pelham, New York. At all relevant times alleged herein, he was a tenant of a property in New Jersey and was assessed a Service Fee for paying rent payments through RentCafe.

11.  Plaintiff Karen Picardi is a citizen and resident of Medford, Massachusetts. At all relevant times alleged herein, she was a tenant of a property in Massachusetts and was assessed a Service Fee for paying rent payments through RentCafe.

12.  Defendant Yardi Systems, Inc. is a California corporation headquartered in Santa Barbara, California. Yardi Systems provides property management software and services in the real estate industry. Yardi Systems offers several products to residential and commercial clients worldwide, including the RentCafe platform.

13.  Defendant RentCafe, LLC is a Delaware limited liability company headquartered in Santa Barbara, California. RentCafe is a real estate listing platform and property management software that streamlines leasing and living functions for prospective and current renters including, application and lease signing tools, actionable move-in checklists, work order submissions, rewards programs, and an online rent payment portal.

CLASS ACTION COMPLAINT

### III.    JURISDICTION, VENUE AND GOVERNING LAW

14.    This Court has jurisdiction over Defendants and the claims set forth herein pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10 because this case is a cause not given by statute to the other trial courts.

15.    Plaintiffs are informed and believe that the State of California has personal jurisdiction over the Defendants named in the action because Defendants are corporations authorized to conduct and do conduct business in this State. Defendants maintain their corporate headquarters in Santa Barbara and are registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails themselves of the California market by conducting business throughout California, including in the County of Santa Barbara, which has caused both obligations and liability of Defendants to arise in the County of Los Angeles.

16.    Unless otherwise alleged herein, each of Plaintiffs' claims brought on behalf of the Nationwide Class are governed by the laws of the State of California in accordance with RentCafe's Governing Law provision set forth in RentCafe's Terms of Service.[1]

### IV.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

A.    **RentCafe's Deceptive and Unlawful Rental Payment Process**

17.    RentCafe contracts with property management companies throughout the country to provide various marketing, leasing and resident services. RentCafe's offerings for prospective tenants include apartment searching and browsing of other rental listings, scheduling tours, contacting property management offices, submitting rental applications, signing lease agreements and collecting rent payments from consumers through its Resident app and online payment processing platform.[2]

---

[1] https://resources.yardi.com/legal/rentcafe-terms-of-service/ (last accessed Jan. 26, 2026).

[2] https://www.yardi.com/product/rentcafe-living-resident/ (last accessed Jan. 26, 2026).

4

CLASS ACTION COMPLAINT

18.    In 2025, approximately 3,000 landlords contracted with RentCafe as a property management tool, constituting a market share of 2.46% in the property-management market.[3]

19.    The RentCafe Resident app is how all Plaintiffs and Class members paid their rent and were assessed the Service Fee.[4]

20.    Consumers making their rental payments through the RentCafe Resident app are automatically charged the Service Fee and are not informed of the amount Defendants charge for the Service Fee until the final "Confirm" payment screen.

21.    At no point during the rental payment process through the RentCafe Resident app are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe the fee is mandatory and unavoidable.

22.    This pre-selection and automatic opting-in of consumers to junk fees is itself deceptive.

23.    RentCafe's inadequate and untimely disclosure of the Service Fee, as well as RentCafe's failure to adequately inform consumers of alternative ways to pay their rent to avoid the Service Fee, render the Service Fee nothing more than a junk fee couched in an unlawful pay-to-pay scheme.

24.    Upon information and belief, RentCafe is aware that by programming its Resident app with a "negative option" to automatically opt-in consumers to pay Service Fees, most consumers will unknowingly pay them. On information and belief, RentCafe is further aware that had it programmed its Resident app to offer an *optional* Service Fee (requiring an opt-in or providing fairly disclosed options to remove or avoid such fees, the vast majority of consumers would not pay the Service Fee).

25.    As the Federal Trade Commission ("FTC") notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-

---

[3] https://6sense.com/tech/property-management/yardi-rentcafe-market-share (last accessed Jan. 26, 2026).

[4] *See* https://apps.apple.com/us/app/rentcafe-resident/id541403633 ("The RentCafe Resident app has been designed for communities that use the RentCafe platform as their Resident Portal.") (last accessed Jan. 28, 2026).

5

CLASS ACTION COMPLAINT

checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data."[5] The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that "<u>[a] 'pre-checked box' does not constitute affirmative consent.</u>"[6]

**B.      The Rise of Junk Fees in Renting**

26.      The proliferation of rental housing junk fees like RentCafe's Service Fee negatively impacted millions of renter households nationwide.[7]

27.      Service fees for rent payments pose a real threat to consumers' financial stability, particularly considering that they force tenants to spend significant and unbudgeted sums of money each month on top of rent.[8]

28.      "Commonly referred to as 'junk fees', these [Service] fees can be undisclosed, unpredictable, and arbitrary and can quickly accumulate for tenants, putting safe and decent rental housing even more out of reach."[9] These "surprise fees are imposed for services with little to no value to tenants, such as…Service fees. Such fees can add up quickly, rendering advertised rental prices inaccurate and sometimes forcing tenants to spend hundreds of dollars each month on top of rents."[10]

29.      In 2022, the National Consumer Law Center ("NCLC") conducted a survey of legal services and nonprofit attorneys throughout the country which examined various types of rental junk

---

[5] *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

[6] https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

[7] *"What the Heck, Dude!", How States Can Fight Rental Housing Junk Fees,* National Consumer Law Center, September 2024, available at https://www.nclc.org/wp-content/uploads/2024/09/202409_Report_What-the-Heck-Dude.pdf at pp. 5-7.

[8] *Junk Fees Toolkit,* National Low Income Housing Coalition ("NLIHC") State and Local Tenant Protection Series: A Primer on Renters' Rights, available at https://nlihc.org/sites/default/files/2022-07/SLI_Rental_Fees_Toolkit.pdf at p. 7.

[9] *Id.* at p. 3.

[10] *Id.* at p. 6.

CLASS ACTION COMPLAINT

fees charged to renters in the rental housing market.[11] The survey revealed that 60% of respondents from 23 states observed convenience fees, and that "[s]ome housing providers no longer accept payment in person or by check, meaning that tenants have to pay their rent online," and often times, must do so "through third-party companies that charge fees."[12]

30. The failure to include these rental junk fees in the total cost of the advertised monthly rental rate is problematic—"While a renter may be able to manage and plan for high rents if they know about them in advance, they may not be expecting an array of junk fees, which could push them over their budgets."[13]

31. Indeed, FTC recently issued a warning to rental management software companies, including RentCafe, that its practices may be unfair and deceptive. Specifically, the FTC stated:

> The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market. Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.
>
> Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.[14]

---

[11] *Too Damn High, How Junk Fees Add to Skyrocketing Rents,* National Consumer Law Center, March 2023, available at *https://www.nclc.org/wp-content/uploads/2023/03/JunkFees-Rpt.pdf*.

[12] *Id.* at pp. 17-18.

[13] *Id.* at p. 6.

[14] *See* **Exhibit 1** (footnotes omitted).

7

CLASS ACTION COMPLAINT

32.   Thus, the FTC warned property management software providers, including Defendants, to comprehensively review their practices to ensure consumers are provided "with transparent rental prices."[15]

33.   But RentCafe's Service Fees impede that effort.

34.   The consequences are significant. As RentCafe recently acknowledged in a July 31, 2025, blog post, "[a]lmost half (49.7%) of renters spend over 30% of their income on housing, and nearly a quarter are severely burdened, paying more than half. That's a lot of people and money. The overall cost of renting, including utilities and other basic housing costs, has increased by 3.8% year-over-year—the largest annual real increase in rental costs since at least 2011. That, alongside an increase in grocery, gas, and utility expenses, makes it nearly impossible to have any financial breathing room—but rent waits for no one. Unfortunately, this could mean late fees, overdraft charges, or even falling behind on rent."[16]

35.   Despite its acknowledgment of the financial hardships consumers face in order to meet their monthly rental obligations, RentCafe nevertheless charges these same consumers, like Plaintiffs and Class members, a Service Fee to make their monthly rental payments.

**C.   RentCafe Charges Consumers Service Fees for Processing Rent Payments**

36.   RentCafe charges consumers a pay-to-pay Service Fee on rent payments in an amount beyond the price of their monthly rent obligation.

37.   RentCafe's Service Fee is deceptive because RentCafe fails to inform consumers that it is not providing an additional "service" that is not already included in their residential leases.

38.   RentCafe's Service Fee is not tethered to any actual processing or expense. Instead, the Service Fee is a profit generator for RentCafe.[17]

---

[15] *See id.*

[16]   https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Dec. 17, 2025).

[17] *See Williams v. Pennymac Loan Services, LLC*, No. 1:25-cv-00276, 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) (upholding similar claim).

CLASS ACTION COMPLAINT

39.    Reasonable consumers like Plaintiffs understand the advertised cost for monthly rent to be the total cost of their rent obligation as represented—not the total cost of monthly rent *plus* an additional, undisclosed charge. In other words, RentCafe's Service Fee amounts to additional unexpected rent for tenants over and above the amount that was contracted for.

40.    Consumers who, as RentCafe acknowledges, are "severely burdened, paying more than half [of their income] participating in the costly rental market"—which RentCafe admits "makes it nearly impossible to have any financial breathing room"[18]—are paying this additional, unexpected rent to RentCafe, which serves only to line the pockets of RentCafe at a great expense to consumers.

**D.    RentCafe's Service Fee is a Junk Fee that Violates Federal Guidance and State Consumer Protection Laws**

41.    RentCafe's Service Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[19]

42.    As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[20]

---

[18]    https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Dec. 17, 2025).

[19] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/

[20] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

CLASS ACTION COMPLAINT

43.    In a press release, FTC Chair Lina M. Khan articulated the financial harm to consumers arising from "service fees" like Defendants' in particular:

> It's beyond frustrating to end up spending more than you budgeted because of random, arbitrary fees. No one has ever felt that a 'Service fee' was convenient. Companies should compete to provide the best quality at the best price, not to see who can squeeze the most added expenses out of consumers. That's especially true at a time when families are struggling with the effects of inflation.[21]

44.    In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") by amending to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.[22] Under the new California law, dubbed the "Honest Pricing Law," it is now illegal to advertise a price for a product, only for that produce to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay."[23] As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.[24]

45.    Effective September 2, 2025, the State of Massachusetts passed a similar regulation that strictly prohibits businesses from charging unfair or deceptive "junk fees" like RentCafe's

---

[21] Federal Trade Commission, *Federal Trade Commission Explores Rule Cracking Down on Junk Fees*, October 20, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/10/federal-trade-commission-explores-rule-cracking-down-junk-fees.

[22] California Civil Code Section 1770(a)(29).

[23] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions,* available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024).

[24] *Id.* at p. 4 (emphasis added).

CLASS ACTION COMPLAINT

Service Fee.[25] In pertinent part, the express terms of this regulation requires businesses to disclose, at both the initial and final presentation of the price of any product or service, including dwelling units for rent or lease, "any fees, charges, or other expenses . . . that are optional to the consumer or waivable by the seller, the fact that such fees, charges, or other expenses are optional to the consumer or waivable by the seller, as well as readily available instructions regarding how to avoid such fees, charges, or other expenses."[26]

46.     In an article, Massachusetts Attorney General Andrea Joy Campbell expounded upon the rollout of the new "junk fee" regulations and explained how "these new rules will require businesses to disclose the full price of their goods and services upfront" in the apartment rental market:

> It's move-in season in Massachusetts, and you may have just seen an ad for a studio apartment for $2,500 per month. That amount is going to stretch your budget, but recognizing how competitive the housing market is, you know you need to jump on that rental quickly.
>
> So, you head to the management office the very next day to sign your lease. Just before signing, you notice the amount you'd have to pay every month will actually be $2,750 – beyond what you have budgeted for rent. The extra $250 comes from a mandatory "trash pick-up" fee combined with a vague "amenities" fee. You don't want to start the daunting apartment search process over again, so you sign the lease. But the entire process leaves you feeling misled and paying more than you originally anticipated.
> . . .
> These fees are not simply an inconvenience – they're a widespread, costly problem impacting all of us. Every year, Americans spend tens of billions of dollars on hidden or surprise "junk fees" that deceptively raise costs beyond advertised prices. As consumers face rising costs of living, these pesky fees quietly drain consumers' wallets.[27]

---

[25] *See* Unfairness and Deception in Connection with Marketing/Solicitation/Sale, 940 C.M.R. 38.04; 38.09.

[26] *Id.* at 38.04(2)(b); (3)(c); 38.03.

[27] *'Junk Fees' unfairly rob consumers. New Regulations banning them go into effect today.*, CommonWealth Beacon, Andrea Joy Campbell, September 2, 2025, available at https://commonwealthbeacon.org/opinion/junk-fees-unfairly-rob-consumers-new-regulations-banning-them-go-into-effect-today/.

CLASS ACTION COMPLAINT

47. Defendants violate federal guidance and state consumer protection laws by charging the Service Fee for processing rent payments on the RentCafe platform.

**E. Plaintiffs' Experiences**

<u>Plaintiff Mosley</u>

48. Since approximately June 2024, Plaintiff Mosley rented an apartment in Chula Vista, California and pays her rent each month via the RentCafe Resident app.

49. For example, on August 27, 2024, Plaintiff Mosley paid her monthly rent of $1,800.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $39.60. Similarly, on May 28, 2025, Plaintiff Mosley paid her monthly rent of $1,912.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $42.06. These fees were automatically added to Plaintiff's totals.

50. Based on RentCafe's representations and omissions on the Resident app, Plaintiff Mosley reasonably believed the Service Fee was a mandatory fee that she was required to pay in order to pay her monthly rent.

51. At no time during the payment transaction did RentCafe adequately or transparently present alternative forms of payment to avoid the Service Fee, leading Plaintiff Mosely to believe that the Service Fee was mandatory.

52. Plaintiff Mosley relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

53. Therefore, Plaintiff Mosely was unlawfully and deceptively charged a junk "Service Fee" that she should not have paid.

<u>Plaintiff Foxx</u>

54. From approximately September 1, 2022, through September 30, 2023, Plaintiff Foxx rented an apartment in Newark, New Jersey and paid rent through the RentCafe Resident app.

55. For example, on October 2, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $65.00. Similarly, on November 12, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was

CLASS ACTION COMPLAINT

charged a Service Fee from RentCafe totaling $71.90. These fees were automatically added to Plaintiff's totals.

56.     Based on RentCafe's representations and omissions on the Resident app, Plaintiff Foxx reasonably believed the Service Fee was a mandatory fee that he was required to pay in order to pay his monthly rent.

57.     At no time during the payment transaction did RentCafe adequately or transparently present the Service Fee as an optional charge.

58.     Plaintiff Foxx relied on Defendants' misrepresentations and omissions about the Service Fee in making his rent payments.

59.     Therefore, Plaintiff Foxx was unlawfully and deceptively charged a junk "Service Fee" that he should not have paid.

Plaintiff Picardi

60.     From approximately September 1, 2023, through January 16, 2025, Plaintiff Picardi rented an apartment in Malden, Massachusetts and paid her rent each month via the RentCafe Resident app.

61.     For example, on October 1, 2023, Plaintiff Picardi paid a portion of her monthly rent with her debit card in the amount of $340.00 and was charged a Service Fee from RentCafe totaling $8.50. This fee was automatically added to Plaintiff's total.

62.     Based on RentCafe's representations and omissions on the Resident app, Plaintiff Picardi reasonably believed the Service Fee was a mandatory fee that she was required to pay in order to pay her monthly rent.

63.     At no time during the payment transactions did RentCafe adequately or transparently present the Service Fee as an optional charge.

64.     Plaintiff Picardi relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

65.     Therefore, Plaintiff Picardi was unlawfully and deceptively charged a junk "Service Fee" that she should not have paid.

CLASS ACTION COMPLAINT

## V.    PLAINTIFFS' CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH SPECIFICITY

66.    Defendants are in the best position to know what content they placed on their RentCafe Resident app during the relevant timeframe, and the knowledge they had regarding the Service Fee and related disclosures, to the extent necessary, Plaintiffs satisfy the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

a.    **WHO**: Defendants unlawfully, unfairly, deceptively and/or misleadingly imposed the Service Fee on consumers paying their rent.

b.    **WHAT**: Defendants' conduct was, and continues to be, fraudulent because they hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying their rent. Defendants' conduct deceived Plaintiffs and Class members into believing that the Service Fee is mandatory when paying their rent, when in reality the Service Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Plaintiffs and Class members utilized the RentCafe Resident app to make rental payments where RentCafe then imposed the Service Fee. Defendants charged the Service Fee to all consumers paying their rent using a one-time electronic payment method. Defendants failed to post, display or otherwise adequately disclose the Service Fee to consumers during the signing of their lease agreements or during the rental payment process. Defendants knew, or should have known, that they failed to adequately disclose the Service Fee and that this fee is material to reasonable consumers, including Plaintiffs and Class members. The Service Fee is a sham, a classic "junk fee." The "service" purportedly provided by RentCafe, which is allowing consumers to pay for their rent, is a core part of the aspect of the service RentCafe is required to provide. The Service Fee is merely a second payment—in the form of a junk fee—for the service that consumers are already paying for.

c.    **WHEN**: Defendants engaged in these unlawful, unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiffs and Class members signed their lease agreements and made rental payments through Defendants'

14

CLASS ACTION COMPLAINT

Resident app, prior to and at the time Plaintiffs and Class members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

d.  **WHERE**: Defendants' unlawful, unfair and deceptive junk fee was uniformly applied to consumers who made rental payments through the RentCafe Resident app. Defendants' website, advertising and other marketing materials similarly failed to explain or otherwise disclose the Service Fee being charged.

e.  **HOW**: Defendants hid, obfuscated or otherwise concealed from consumers the imposition of the Service Fee by describing the junk fee as an "Service Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Service Fee through their own investigation, Defendants failed to explain or adequately disclose the nature of the Service Fee or reasonable alternatives to paying this fee, or why it was imposed.

f.  **WHY**: Defendants engage in their unlawful, unfair and deceptive junk fee scheme in order to induce Plaintiffs, Class members and all reasonable consumers to pay the undisclosed and unlawful Service Fee, resulting significant revenues for Defendants.

g.  **INJURY**: Plaintiffs and Class members paid a premium or otherwise paid more for their rent when they otherwise would not have absent Defendants' misrepresentations.

## VI.  TOLLING AND ESTOPPLE OF STATUTE OF LIMITATIONS

67.  For years Defendants had actual knowledge that they hid, obfuscated or otherwise concealed from consumers the imposition of the Service Fee by describing the junk fee as an "Service Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Service Fee through their own investigation, Defendants failed to explain or adequately disclose the nature of the Service Fee or reasonable alternatives to paying this fee, or why it was imposed.

68.  Defendants have a duty to accurately disclose the fees it charges to consumers. Yet despite their duty and knowledge, Defendants misrepresented the Service Fee, knowing that they had no basis to do so.

CLASS ACTION COMPLAINT

69. Defendants made, and continue to make, affirmative misrepresentations to consumers to continue to profit off the pay-to-pay Service Fee scheme.

70. Defendants misrepresented material facts that are important to Plaintiffs and Class members in deciding the manner in which they pay their rent. Defendants' misrepresentations were knowing, and they intended to, and did, deceive reasonable consumers, including Plaintiffs and Class members.

71. As a result, Plaintiffs and Class members reasonably relied upon Defendants' affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance.

72. The true extent and nature of the Service Fee as a junk fee was not reasonably detectible to Plaintiffs and Class members.

73. At all times, Defendants actively and intentionally misrepresented the Service Fee and failed to inform Plaintiffs and Class members of its true nature as well as alternative ways to avoid incurring the Service Fee. Plaintiffs' and Class members' lack of awareness was thus not attributable to a lack of diligence on their part.

74. The statements, words and acts by Defendants were made for the purpose of misrepresenting the truth about the Service Fee.

75. Defendants misrepresented the Service Fee and alternative means of payment to avoid the Service Fee for the purpose of delaying Plaintiffs and Class members from filing a complaint on their causes of action.

76. Due to Defendants' active misrepresentation to Plaintiffs and Class members of the true nature of the Service Fee and alternative means to pay rent without subjecting them to the Service Fee, any and all applicable statutes of limitations that may otherwise be applicable to the allegations are tolled. Moreover, Defendants are estopped from relying on any statute of limitations in light of their active misrepresentation regarding the Service Fee.

77. Furthermore, the causes of action alleged herein did not occur until Plaintiffs and Class members discovered the true nature of the Service Fee and/or alternative means to avoid the payment of the Service Fee. Plaintiffs and Class members had no realistic ability to discern that the Service

16

CLASS ACTION COMPLAINT

Fee was not mandatory or that it was just a junk fee. In either event, Plaintiffs and Class members were hampered in their ability to discover their causes of action because of Defendants' active misrepresentation regarding the true nature of its Service Fee.

## VII.    CLASS ACTION ALLEGATIONS

78.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated. The proposed class includes:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe when making a rent payment through the Resident app (the "Nationwide Class").

79.    Plaintiff Mosley further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of California when making a rent payment through the RentCafe Resident app (the "California Subclass").

80.    Plaintiff Foxx further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of New Jersey when making a rent payment through the RentCafe Resident app (the "New Jersey Subclass").

81.    Plaintiff Picardi further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of Massachusetts when making a rent payment through the RentCafe Resident app (the "Massachusetts Subclass").

82.    The Nationwide Class, California Subclass, New Jersey Subclass and Massachusetts Subclass are collectively referred to herein as the "Class."

83.    Excluded from the Class are Defendants, their subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which Defendants have a

17

CLASS ACTION COMPLAINT

controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

84. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

85. **Numerosity (Rule 23(a)(1)).** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to RentCafe's records. The proposed Class is also sufficiently ascertainable because RentCafe has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiffs.

86. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because RentCafe acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether RentCafe's Service Fee is unfair, unlawful, deceptive or misleading;

b. Whether RentCafe's Service Fee constitutes violations of the laws asserted herein;

c. Whether Plaintiffs and members of the Class are harmed by RentCafe's alleged misconduct;

d. Whether RentCafe is unjustly enriched;

e. Whether RentCafe tortiously interfered with Class members' lease agreements;

f. Whether Plaintiffs and the Class are damaged and if so, the proper measure of damages; and

18

CLASS ACTION COMPLAINT

      g.      Whether an injunction is necessary to prevent RentCafe from continuing to engage in the wrongful conduct described herein.

87. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by RentCafe, as described herein.

88. Plaintiffs are more than adequate representatives of the proposed Class in that they suffered damages because of RentCafe's improper business practices. Additionally:

      a.      Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and retained competent counsel experienced in the prosecution of consumer class actions;

      b.      There is no conflict of interest between Plaintiffs and the unnamed Class members;

      c.      Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

      d.      Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

89. **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning RentCafe's liability to all Class members for charging the Service Fee on rent payments through the Resident app predominate over any questions affecting only individual Class members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual Class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs

19

CLASS ACTION COMPLAINT

know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

90. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

91. **Particular Issues (Rule 23(c)(4)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
***(By Plaintiffs, individually, and on behalf of the Nationwide Class; Alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass)***

92. Plaintiffs, individually, and on behalf of the Nationwide Class, or alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

93. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language.

94. RentCafe's conduct related to charging the Service Fee on rent payments violates each of the statute's "unfair," "unlawful" and "fraudulent" prongs.

95. The UCL imposes strict liability. Plaintiffs need not prove that RentCafe intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

CLASS ACTION COMPLAINT

96. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

97. A business act is "fraudulent" under the UCL if it is likely to deceive members of the public.

98. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

99. RentCafe commits unfair business acts and practices by charging the junk Service Fee, which serves no legitimate purpose except profit for RentCafe at the expense of consumers.

100. RentCafe's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

101. The harm to Plaintiffs and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

102. RentCafe's conduct also constitutes an unlawful business practice in violation of Cal. Bus. & Prof. Code § 17200 because, as alleged herein, it also constitutes a violation of sections 1770(a)(5) and (a)(29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code sections 1750, *et seq*.

103. RentCafe commits fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200 by deceptively naming and describing the Service Fee, charging a fee that provides no added value to consumers and by representing the Service Fee as mandatory without adequately and transparently disclosing payment options to avoid the Service Fee. The financial harm to consumers because of RentCafe's wrongful business practice is substantial.

104. RentCafe's business practices misled Plaintiffs and the proposed Class and unless enjoined, will continue to mislead them in the future.

21

CLASS ACTION COMPLAINT

105. Plaintiffs relied on Defendants' misrepresentations and omissions in making rent payments and paying the Service Fee, believing the fee to be mandatory.

106. As a direct and proximate result of RentCafe's misconduct, Plaintiffs and the Class suffered and will continue to suffer actual harm.

107. Plaintiffs and the Class are entitled to restitution of all funds wrongfully obtained by RentCafe through its unlawful, fraudulent and unfair business practices as described herein.

108. Defendants' wrongful conduct is ongoing and is part of a pattern of generalized course of conduct repeated on thousands of occasions yearly.

109. Plaintiffs may be subject to the same wrongful conduct in the future unless RentCafe is enjoined. Plaintiffs have no adequate remedy at law, in part, because RentCafe continues to automatically add Service Fees to rent payments made through its Resident app. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs therefore seek an injunction on behalf of the general public enjoining Defendants from continuing to engage in the unfair, fraudulent and unlawful business practices described herein, or any other act prohibited by law.

110. Additionally, Plaintiffs and the Class seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION

**Violations of California's Consumers Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
***(By Plaintiffs, individually, and on behalf of the Nationwide Class; Alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass)***
***(for injunctive relief only)***

111. Plaintiffs, individually, and on behalf of the Nationwide Class, or alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

112. Plaintiffs and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code section 1761(d). RentCafe's assessment of the Service Fee on consumers' rent payments are "transactions" within the meaning of Cal. Civ. Code section 1761(e). RentCafe's rent payment

processing service utilized by Plaintiffs and the Class are "services" within the meaning of Cal. Civ. Code section 1761(b).

113. RentCafe violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, rent payment services:

    a. "Representing that. . . services have . . . characteristics . . . that they do not have" (a)(5); and

    b. "Advertising, displaying, or offering a price for a . . . service that does not include all mandatory fees or charges" (a)(29).

114. Specifically, RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiffs' and Class members' rent obligations.

115. Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendants in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fail to respond to Plaintiffs' letter and/or fails to agree to rectify the problems associated with the actions detailed herein, Plaintiffs will amend this cause of action to seek actual and statutory damages, as appropriate, against Defendants. At this time as to this cause of action, Plaintiff seeks only public injunctive relief as described above.

116. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

### THIRD CAUSE OF ACTION

**Tortious Interference with Contract**
***(By Plaintiffs, individually, and on behalf of the Nationwide Class)***

117. Plaintiffs, individually, and on behalf of the Nationwide Class, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

CLASS ACTION COMPLAINT

118.    Plaintiffs and members of the Class entered into valid lease agreements with rental property management companies and/or landlords based on their economic necessity for rental housing services.

119.    RentCafe knew or should have known about this business relationship when it acted as the third-party platform through which Plaintiffs and Class members were required to make monthly rental payments to those rental property management companies and landlords.

120.    RentCafe intentionally and/or wrongfully interfered with those lease agreements to Plaintiffs' and Class members' detriment by charging the Service Fee, which amounted to undisclosed rent costs.

121.    RentCafe's act of charging the Service Fee on Plaintiffs' and Class members' rent payments was designed to induce and did induce breach and/or disruption of their contractual relationship with those entities.

122.    RentCafe's intentional interference caused Plaintiffs and members of the Class actual harm in the form of the wrongfully collected Service Fee.

**FOURTH CAUSE OF ACTION**

**Unjust Enrichment**
*(By Plaintiffs, individually, and on behalf of the Nationwide Class)*

123.    Plaintiffs, individually, and on behalf of the Nationwide Class, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

124.    To the detriment of Plaintiffs and the Class, Defendants were, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

125.    Plaintiffs and the Class conferred a benefit on Defendants.

126.    Defendants unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

127.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

CLASS ACTION COMPLAINT

128.    Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained Service Fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

## FIFTH CAUSE OF ACTION

**Alternative Cause of Action for Violation of
New Jersey Consumer Fraud Act (the "NJCFA")
N.J. Stat. Ann. §§ 56:8-1, *et seq.*
(By Plaintiff Foxx, individually, and the New Jersey Subclass)**

129.    Plaintiff Foxx, individually, and on behalf of the New Jersey Subclass, realleges and incorporates paragraphs 1 through 98 as if fully set forth herein.

130.    Plaintiff Foxx and the other New Jersey Subclass members are "persons" under the NJCFA, N.J. Stat. Ann. § 56:8-1(d).

131.    Defendants engaged in "sales" and/or "advertisement" of "merchandise" within the meaning of N.J. Stat. Ann. §§ 56:8-1(a), (c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce and Defendants' foregoing acts and practices, including its omissions, were directed at consumers.

132.    The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." *Id.* § 56:8-2.

133.    RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiff Foxx's and New Jersey Subclass members' rent obligations.

134.    Contrary to these representations and omissions, the Service Fee is a junk fee in the form of a pay-to-pay scheme.

25

CLASS ACTION COMPLAINT

135. Defendants intentionally and knowingly misrepresented material facts regarding the Service Fee with the intent to mislead Plaintiff Foxx and the other New Jersey Subclass members. Defendants knew or should have known that their conduct violated the NJCFA.

136. Defendants' misrepresentations and omissions were material to Plaintiff Foxx's and the other New Jersey Subclass members' decision to utilize the form of payment to pay their rental obligations.

137. Defendants' misrepresentations and omissions regarding the Service Fee were and are directed at consumers in a uniform manner.

138. Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Foxx and the other New Jersey Subclass members relied upon Defendants' misrepresentations and omissions regarding the Service Fee to their detriment in paying the Service Fee.

139. Defendants' violations described herein present a continuing risk to Plaintiff Foxx and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

140. Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Foxx and the other New Jersey Subclass members who were unaware they would be charged a useless Service Fee for making their rent payments, or that the Service Fee was avoidable.

141. Defendants had an ongoing duty to all of consumers to refrain from unfair and deceptive practices under the NJCFA in the course of their business.

142. Defendants' violations present continuing violations to Plaintiff Foxx, the other New Jersey Subclass members and the general public. Defendants' wrongful acts and practices complained of herein affect the public interest.

143. As a direct and proximate result of Defendants' deceptive acts and practices, including their representations and omissions, Plaintiff Foxx and the other New Jersey Subclass members are damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

CLASS ACTION COMPLAINT

144.    In addition, Plaintiff Foxx and the other New Jersey Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

**Alternative Cause of Action for Violation of
Massachusetts Consumer Protection Act ("MCPA")
Mass. Gen. Laws Ann. Ch. 93A §§ 1, *et seq.*
(By Plaintiff Picardi, individually, and the Massachusetts Subclass)**

145.    Plaintiff Picardi, individually, and on behalf of the Massachusetts Subclass, realleges and incorporates paragraphs 1 through 98 as if fully set forth herein.

146.    Plaintiff Picardi and each member of the Massachusetts Subclass is a "person," as that term is used in Section 9(1) of Chapter 93A.

147.    RentCafe is a "person engaged in the conduct of trade or commerce," as those terms are used in Sections 2(a) and 9(1) of Chapter 93A.

148.    Plaintiff Picardi's and Class members' rental dwelling units are "products," as that term is used in Section 38.03 of Code of Massachusetts Regulation Title 940.

149.    RentCafe's improper assessment of Service Fees is an unfair or deceptive act or practice, pursuant to Section 2 of the Chapter 93A and Sections 38.04, *et seq.* of Code of Massachusetts Regulations Title 940.

150.    RentCafe violated Section 38.04 when it failed to clearly and conspicuously disclose to Plaintiff Picardi and Massachusetts Subclass members that its Service Fee was not a mandatory charge required to make their monthly rent payment and that there were ways to avoid such fee.

151.    RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiff Picardi's and Massachusetts Subclass members' rent obligations.

152.    Defendants knew or should have known that their policy and practice of charging the Service Fee on rent payments was a deceptive and misleading practice to Plaintiff Picardi and the Massachusetts Subclass.

153. Defendants' implementation of their Service Fee policies and procedures injured Plaintiff Picardi and each member of the Massachusetts Subclass.

154. Defendants' ongoing implementation of their policy and practice of assessing the Service Fee on rent payments will harm Plaintiff Picardi and Massachusetts Subclass members by forcing them to pay fees that provide no added value to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against RentCafe for themselves and the proposed Class members as follows:

a. Certifying the proposed Class(es), appointing Plaintiffs as representatives of the Class(es), and appointing Plaintiffs' counsel as class counsel for the proposed Class(es);

b. Declaring that RentCafe's Service Fee, policies and practices described herein are improper;

c. Enjoining RentCafe from the wrongful conduct as described herein on behalf of the general public;

d. For an order requiring RentCafe to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

e. Awarding actual damages and statutory damages in an amount according to proof;

f. Awarding treble damages, if permitted by law;

g. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

h. Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs and expenses, pursuant to applicable law and any other basis; and

i. Awarding such other relief as this Court deems just and proper.

///

///

///

///

28

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: February 9, 2026

**KALIELGOLD PLLC**

By: _Sophia Gonen Gold_____
    Sophia G. Gold
    Amanda J. Rosenberg
    Jeffrey D. Kaliel (SBN 238293)

**PEARSON WARSHAW, LLP**
Mailing Address:
Rachel Soffin (FL Bar 18054)*
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91043
Telephone: (818) 205-2815
rsoffin@pwfirm.com

**PEARSON WARSHAW, LLP**
Melissa S. Weiner (MN Bar 038790)*
Ryan T. Gott (MN Bar 0397978)*
328 Barry Avenue S, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
mwiner@pwfirm.com
rgott@pwfirm.com

*Attorneys for Plaintiffs and the Putative Class*

*Pro Hac Vice* Motions to be filed

CLASS ACTION COMPLAINT

# EXHIBIT 1



Office of the Director
Bureau of Consumer Protection

UNITED STATES OF AMERICA
**FEDERAL TRADE COMMISSION**
WASHINGTON, D.C. 20580

December 8, 2025

<u>Via E-Mail</u>

[NAME]
[ADDRESS]

Re: Deceptive or Unfair Acts or Practices Relating to the Marketing or Advertising of Residential Rental Units

Dear [NAME]:

The Federal Trade Commission ("FTC" or "Commission") is a federal agency whose mission is to protect Americans from unfair, deceptive, and anticompetitive business practices, without unduly burdening legitimate business activity. As part of that mission, we work to educate businesses about their rights and responsibilities, and where necessary, initiate investigations and enforcement actions.

The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market.[1] Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.[2]

---

[1] *See, e.g.*, Press Release, FTC, FTC Sues Zillow and Redfin Over Illegal Agreement to Suppress Rental Advertising Competition (Sep. 30, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-zillow-redfin-over-illegal-agreement-suppress-rental-advertising-competition; Press Release, FTC, State of Colorado Take Action Against Greystar, Nation's Largest Multi-Family Rental Property Manager, for Deceiving Consumers About Rent Prices (Jan. 16, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-state-colorado-take-action-against-greystar-nations-largest-multi-family-rental-property-manager; Press Release, FTC, FTC Takes Action Against Invitation Homes for Deceiving Renters, Charging Junk Fees, Withholding Security Deposits, and Employing Unfair Eviction Practices (Sep. 24, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-takes-action-against-invitation-homes-deceiving-renters-charging-junk-fees-withholding-security.

[2] See Concurring Statement of Chairman Andrew N. Ferguson, *FTC v. Greystar Real Estate Partners*, Matter No. X250023 (Dec. 2, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/2025.12.02-greystar-chairman-ferguson-statement.pdf; see Presidential Mem., *Delivering Emergency Price Relief for American Families and Defeating the*

Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.

The FTC has authority under Section 5 of the FTC Act, 15 U.S.C. § 45(a), to investigate unfair or deceptive acts or practices in or affecting commerce.[3] In addition, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6821(a)(2), makes it illegal to use false, fraudulent, or fictitious statements or representations to obtain, attempt to obtain, cause the disclosure of, or attempt to cause the disclosure of customer information of a financial institution.

Violations of the FTC Act and the Gramm-Leach-Bliley Act may be subject to legal action and federal district court injunctions. In addition, companies or individuals that violate the Gramm-Leach-Bliley Act may be subject to civil penalties of up to $53,088 per violation pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and may be required to pay refunds to consumers or provide other relief pursuant to Section 19(b), 15 U.S.C. § 57b(b).

Recently, the FTC has pursued law enforcement actions to protect Americans from deceptive acts and practices in the rental housing market, in violation of the FTC Act and the Gramm-Leach-Bliley Act, including in:

- *FTC v. Invitation Homes*, N.D. Ga. No. 1:24-cv-04280: The FTC alleged that Invitation Homes, the largest single family home owner in the country, violated Section 5 of the FTC Act by, among other things, misrepresenting the total cost of renting homes by excluding mandatory monthly fees from the advertised price, failing to disclose all mandatory monthly fees consumers must pay to rent a home, and misrepresenting deductions against security deposits. The FTC further alleged that Invitation Homes violated the Gramm-Leach-Bliley Act by falsely representing the price of a rental home and thereby obtaining or attempting to obtain customer information of a financial institution. Invitation Homes was ordered to pay $48 million to the Commission for consumer redress.

- *FTC, et al, v. Greystar Real Estate Partners, LLC, et al*, D. Colo. No. 1:25-cv-00165: The FTC alleged that Greystar, the largest residential rental property owner and manager in the United States, violated Section 5 of the FTC Act by misrepresenting the true cost of renting an apartment, by excluding mandatory, fixed fees from the advertised rental price. The FTC further alleged that Greystar violated the Gramm-Leach-Bliley Act by using these false representations to induce consumers to provide their credit card or bank account information to pay nonrefundable application fees, thereby causing the disclosure

---

*Cost-of-Living Crisis* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/delivering-emergency-price-relief-for-american-families-and-defeating-the-cost-of-living-crisis/.

[3] An act or practice is deceptive if there is a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).

of customer information of financial institutions. Greystar was ordered to pay $23 million to the Commission for consumer redress and $1 million to the State of Colorado.

Accordingly, I encourage you to conduct a comprehensive review of your practices, including your website hosting platforms and any software or coding controlling the flow of information from your software to internet listing sites, to ensure that you comply with applicable laws and do not impede the ability of property owners and managers to provide consumers with transparent rental prices. If your company is currently engaged in acts or practices that could be in violation of the FTC Act or other rules and statutes enforced by the FTC, I strongly encourage you to discontinue the practices immediately and to notify relevant employees of the discontinuance. Doing so could help ameliorate the detrimental effects of the Biden Administration's cost-of-living crisis currently suffered by American consumers and rental markets.

This letter is not intended to be a comprehensive statement of concerns that may exist in connection with property management software providers. Additionally, please note that I am distributing similar notifications to other property management software providers, and your receipt of this letter is not intended to suggest that you have engaged in illegal conduct. As always, it is your company's responsibility to comply with all requirements of federal law, including Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, and other laws and rules enforced by the Commission. We are monitoring the marketplace for potentially deceptive or unfair acts or practices relating to the marketing and advertising of rental housing and will take additional action as warranted.

Copies of the cases discussed in this letter are available on the Commission's website at www.ftc.gov. The Commission's website has other important resources designed to ensure that business know their responsibilities under the FTC Act and other laws and rules enforced by the Commission. *See, e.g.*, https://www.ftc.gov/business-guidance/advertising-marketing/advertising-marketing-basics.

Thank you for your attention to this matter. Please direct any inquiries concerning this letter to Katherine White at kwhite@ftc.gov, including any requests to meet with FTC staff regarding its subject matter.

Sincerely,

_____
Christopher Mufarrige
Director
Bureau of Consumer Protection

3

# EXHIBIT B

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

<table>
<tr><td></td><td><strong>FOR COURT USE ONLY</strong><br><em>(SOLO PARA USO DE LA CORTE)</em></td></tr>
</table>

**ELECTRONICALLY FILED**
Superior Court of California
County of Santa Barbara
Darrel E. Parker, Executive Officer
2/9/2026 12:50 PM
By: Narzralli Baksh , Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
YARDI SYSTEMS, INC., and RENTCAFE, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Santa Barbara County Superior Court

1100 Anacapa Street, Santa Barbara, CA 93101

| CASE NUMBER:<br>*(Número del Caso):* | 26CV00952 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sophia G. Gold, KalielGold PLLC, 490 43rd Street, No. 122, Oakland, CA 94609, (202) 350-4783 sgold@kalielgold.com

DATE:
*(Fecha)* 02/09/2026

Clerk, by
*(Secretario)* /s/ Narzralli Baksh , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario* Proof of Service of Summons, *(POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

# EXHIBIT C

## Case Information

26CV00952 | Phaness Mosley et al vs Yardi Systems Inc et al

| | | |
|---|---|---|
| Case Number | Court | Judicial Officer |
| 26CV00952 | Santa Barbara - Anacapa | Sterne, Colleen K |
| File Date | Case Type | Case Status |
| 02/09/2026 | Unlimited Fraud (16) | Active |

## Party

Plaintiff
Mosley, Phaness

DOB
XX/XX/XXXX

Active Attorneys ▼
Lead Attorney
Gold, Sophia
Retained

Attorney
Kaliel, Jeffrey
Retained

Plaintiff
Foxx, William

DOB
XX/XX/XXXX

Active Attorneys ▼
Lead Attorney
Gold, Sophia
Retained

Attorney
Kaliel, Jeffrey
Retained

Plaintiff
Picardi, Karen

DOB
XX/XX/XXXX

Active Attorneys ▾

Lead Attorney
Gold, Sophia
Retained

Attorney
Kaliel, Jeffrey
Retained

Defendant
Yardi Systems Inc

Defendant
RentCafe LLC

## Events and Hearings

02/09/2026 New Filed Case

02/09/2026 Civil Case Cover Sheet, Filed

02/09/2026 Civil Case Cover Sheet Addendum (Local Form), Filed

02/09/2026 Declaration, Filed ▾

Comment
Declaration of Sophia G. Gold re Proper Venue

02/09/2026 Summons Issued, Filed

02/09/2026 Complaint, Filed ▾

Comment
- Class Action Complaint

02/18/2026 Notice of Case Assignment/Case Management Conf, Filed

03/04/2026 Proof of Service - Summons & Complaint, Filed

03/04/2026 Proof of Service 30 Day Summons and Complaint ▾

Served
02/26/2026

06/15/2026 Case Management Conference ▾

Judicial Officer
Sterne, Colleen K

Hearing Time
8:30 AM

# EXHIBIT D

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 307971 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Sophia G. Gold<br>FIRM NAME: KalielGold PLLC<br>STREET ADDRESS: 490 43rd Street, No. 122<br>CITY: Oakland    STATE: CA    ZIP CODE: 94609<br>TELEPHONE NO.: (202) 350-4783    FAX NO.:<br>EMAIL ADDRESS: sgold@kalielgold.com<br>ATTORNEY FOR (name): Plaintiffs and the Putative Class | | ELECTRONICALLY FILED<br>Superior Court of California<br>County of Santa Barbara<br>Darrel E. Parker, Executive Officer<br>2/9/2026 12:50 PM<br>By: Narzralli Baksh , Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA
STREET ADDRESS: 1100 Anacapa Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME:

CASE NAME:
MOSLEY, et al., v. YARDI SYSTEMS, INC., and RENTCAFE, LLC

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 26CV00952 |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount demanded exceeds $35,000) | [ ] Limited<br>(Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)



CM-010

2.  Is this case complex under rule 3.400 of the California Rules of Court?    ☒ Yes    ☐ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):*

a. ☒ monetary

b. ☒ nonmonetary; declaratory or injunctive relief

c. ☒ punitive

4.  Number of causes of action *(specify):* 1-Unfair Competion, 2-CLRA, 3-Tortious Interference with Contract, 4-Unjust Enrichment,

5.  Is this case a class action suit?    ☒ Yes ☐ No

6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 9, 2026

SOPHIA G. GOLD

(TYPE OR PRINT NAME)

▶ *Sophia Horen Gold*

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

---

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.

---



CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice–Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collections Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister-State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
 Mechanic's Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

**Civil Case Cover Sheet**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA BARBARA | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:   1100 Anacapa Street<br>CITY AND ZIP CODE:   Santa Barbara CA  93101<br>BRANCH NAME:   Anacapa | **F I L E D**<br>SUPERIOR COURT of CALIFORNIA<br>COUNTY of SANTA BARBARA<br>**02/18/2026**<br>Darrel E. Parker, Executive Officer<br>BY  Baksh, Narzralli<br>Deputy Clerk |
| CAPTION:<br><br>**Phaness Mosley et al vs Yardi Systems Inc  et al** | |

| ORDER AND NOTICE OF CASE ASSIGNMENT;<br>NOTICE OF CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>**26CV00952** |
|---|---|

The above case is hereby assigned to Judge **Colleen K Sterne** for ALL purposes, including trial.  All future matters, including ex-parte matters, are to be scheduled with the assigned judge.  Counsel shall include the name of the assigned judge in the caption of every document filed with the court.  The above-entitled case is hereby ordered set for:

**Case Management Conference on 06/15/2026 at 8:30 AM in SB Dept 5 at the court address above.**

PLAINTIFF SHALL GIVE NOTICE of this assignment to ALL parties brought into the case, including but not limited to defendants, cross-defendants and intervenors.  A Proof of Service of this ORDER & NOTICE OF CASE ASSIGNMENT is to be filed with the Court within five (5) working days after service.  Failure to give notice and file proof thereof or failure to appear may result in the imposition of sanctions.  Pursuant to California Rule of Court 3.725, no later than fifteen (15) calendar days before the date set for the Case Management Conference, each party must file a Case Management Statement (Judicial Council form CM110).  In lieu of each party filing a separate Case Management Statement, any two or more parties may file a joint statement.

Appearance by Zoom video conference is currently optional for Civil Case Management Conferences.
Please refer to the court's website for information about remote proceedings
https://www.santabarbara.courts.ca.gov/system/files/general/information-remote-appearances-website.pdf.
Use the links provided to access the Remote Hearing Information flyer in English
https://www.santabarbara.courts.ca.gov/system/files/general/zoom-information-civil.pdf,and in Spanish
https://www.santabarbara.courts.ca.gov/system/files/general/zoom-instructions-civil-spanish.pdf.  Or visit the to the court's website at https://santabarbara.courts.ca.gov/ and click on Remote Appearance by Zoom.
At the Court's discretion counsel, parties and insurance representatives (if any) with full settlement authority may be required to attend a CADRe Information Meeting within ten (10) days of the Conference date.

Dated:   2/18/2026

Judge of the Superior Court
Von Deroian

## CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause, and that a true copy of this document was electronically served or mailed first class, postage prepaid in a sealed envelope addressed as shown, and that the electronic service or mailing of the foregoing and execution of this certificate occurred at *(place)* Santa Barbara, California on *(date)*: 02/18/2026

Sophia Gold
KalielGold PLLC
sgold@kalielgold.com

Jeffrey D Kaliel
Kalielgold PLLC
jkaliel@kalielpllc.com

Darrel E Parker, Executive Officer                 By _____ Narzralli Baksh _____ , Deputy

| SC-2028 | ORDER &NOTICE OF CASE ASSIGNMENT<br>NOTICE OF CASE MANAGEMENT CONFERENCE | Local Rule 1309<br>CRC3.222 |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*
Sophia G. Gold (SBN: 307971)
KALIEL GOLD PLLC
1100 15th Street NW, 4th Floor  4th Washington, DC 20009

TELEPHONE NO.: (202) 350-4783 | FAX NO. (424) 342-4129 | E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: Plaintiffs and the Putative Class *Pro hac vice applications to be filed

**SUPERIOR COURT OF CALIFORNIA**

STREET ADDRESS: 1100 Anacapa Street, 2nd Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: Anacapa Division

FOR COURT USE ONLY

ELECTRONICALLY FILED
Superior Court of California
County of Santa Barbara
Angela Braun, Executive Officer
3/4/2026 8:00 AM
By: Marcus Mercado , Deputy

PLAINTIFF: Phanes Mosley, et al.,

DEFENDANT: Yardi Systems and RentCafe

CASE NUMBER:
26CV00952

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: MOSLEY |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☐ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☑ other *(specify documents)*: **Civil Cover Sheet Addendum; Notice of Case Assignment; DECLARATION OF SOPHIA G. GOLD REGARDING PROPER VENUE UNDER THE CONSUMERS LEGAL REMEDIES ACT;**

3. a. Party served *(specify name of party as shown on documents served)*:
   **Yardi Systems, Inc.**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **Rebecca Vang - Authorized to Accept**

4. Address where the party was served: **CSC - Lawyers Incorporating Service**
   **2170 GATEWAY OAKS DR**
   **SACRAMENTO, CA**

5. I served the party *(check proper box)*
   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **2/26/2026**  (2) at *(time)*: **9:19 AM**

   b. ☐ **by substituted service.** On *(date)*:  at  *(time)*:  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*:  from *(city)*:  **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS010-1/64949**

| PETITIONER: **Phanes Mosley, et al.,** | CASE NUMBER: |
|---|---|
| RESPONDENT: **Yardi Systems and RentCafe** | **26CV00952** |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                              (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of *(specify):* **Yardi Systems, Inc.**

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name: **Ricky Siebel - Apex Legal Services**

b. Address: **611 Wilshire Boulevard, Ste 700  Los Angeles, CA 90017**

c. Telephone number: **(213) 488-1500**

d. **The fee** for service was: **$ .00**

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☑ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

        (i) ☐ owner    ☐ employee    ☑ independent contractor.

        (ii) Registration No.: **2021-041**

        (iii) County: **Sacramento**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **3/2/2026**

**Apex Legal Services
611 Wilshire Boulevard, Ste 700
Los Angeles, CA 90017
(213) 488-1500**

APEX
LEGAL SERVICES

| **Ricky Siebel** | ▶ | |
|---|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | | (SIGNATURE) |

**PROOF OF SERVICE**

I, Lisa Reynolds, declare:

I am employed in the County of Los Angeles, State of California.  My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, California 90071.  I am over the age of eighteen years and not a party to the action in which this service is made.

On **March 27, 2026,** I served the document(s) described as follows

**APPENDIX OF STATE COURT PAPERS AND PLEADINGS**

on the interested parties in this action:

**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

☒    BY ELECTRONIC MAIL TRANSMISSION WITH ATTACHMENT:   On this date, I transmitted the above-mentioned document by electronic mail transmission with attachment to the parties at the electronic mail transmission address set forth on the attached service list

☒    [Federal]        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
      [Federal]        I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 27, 2026, at Los Angeles, California.

*/s/ Lisa Reynolds*
Lisa Reynolds