RACHEL E. K. LOWE (State Bar No. 246361)
JONATHAN J. KIM (State Bar No. 312145)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:  213-576-1000
Facsimile:   213-576-1100
rachel.lowe@alston.com
jonathan.kim@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC (erroneously sued as
YARDI SYSTEMS, INC.) and
RENTCAFE, LLC**

(Additional Counsel Listed on Next Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>Defendants. | Case No. 2:26-cv-03318-WLH-BFM<br><br>(Santa Barbara Superior Court Case No. 26CV00952)<br><br>**DEFENDANTS YARDI SYSTEMS, LLC'S AND RENTCAFE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:        June 26, 2026<br>TIME:        1:30 p.m.<br>PLACE       Courtroom 9B<br>              350 West First Street<br>              Los Angeles, CA 90071<br><br>(Concurrently filed with Declaration of Rachel E. K. Lowe; Declaration of Alexa Bermudez; Request for Judicial Notice; and [Proposed] Order)<br><br>Filing Date:      February 9, 2026<br>Removal Date:  March 27, 2026 |

E. SCOTT SCHIRICK
(*Admitted Pro Hac Vice*)
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Scott.schirick@alston.com

DAVID B. CARPENTER
(*Admitted Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:   404-881-7777
David.carpenter@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC and
RENTCAFE, LLC**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B, before the Honorable Wesley L. Hsu of the above-entitled Court, located at First Street United States Courthouse, 350 West First Street, Los Angeles, California 90012, Defendants Yardi Systems, LLC ("Yardi") and RentCafe, LLC ("RentCafe") (collectively, "Defendants"), by and through their undersigned counsel, will and hereby do move this Court, pursuant to Rules 12(b)(1), 12(b)(6), 8, and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Class Action Complaint (the "Complaint") filed by Plaintiffs Phaness Mosley, William Foxx, and Karen Picardi (collectively, "Plaintiffs"). This Motion is made on the grounds that each of the six purported causes of action, and the Complaint as a whole, fail to state a claim upon which relief can be granted, are fatally defective, and Plaintiffs lack standing to pursue injunctive relief, and should be dismissed in their entirety.

As set forth in the Declaration of Rachel E. K. Lowe, pursuant to Local Rule 7-3, prior to filing this Motion, counsel for Defendants met and conferred with counsel for Plaintiffs by videoconference on April 23, 2026, but were unable to informally resolve Plaintiffs' claims.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Rachel E. K. Lowe, Declaration of Alexa Bermudez and exhibits thereto, and upon such other and further matters and argument as may be presented at the time of hearing of this Motion.

Dated: May 1, 2026

E. SCOTT SCHIRICK, *Pro Hac Vice*
DAVID B. CARPENTER, *Pro Hac Vice*
RACHEL E. K. LOWE
JONATHAN J. KIM

**ALSTON & BIRD LLP**

By:    */s/ Rachel E. K. Lowe*
          Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION ...................................................................................... 10

II.     FACTUAL BACKGROUND ................................................................... 11

III.    LEGAL STANDARD ............................................................................... 20

IV.     THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS ........................ 21

   A.   Plaintiffs Have Failed to Properly Plead Any of the Claims Asserted in the Complaint. ................................................................. 21

        1.   The Complaint fails to allege well-pleaded facts necessary to support any theory of liability. ................................................ 21

        2.   The Complaint's fraud-based claims fail under Rule 9(b). ........... 22

        3.   Plaintiffs fail to plausibly plead any deception. ........................... 23

             a.   *The Complaint does not plausibly allege any actionable misrepresentation.* ................................................. 23

             b.   *Plaintiffs' omission theory fails.* ........................................... 24

                  (i)   Plaintiffs fail to allege a duty to disclose. ................. 24

                  (ii)  Plaintiffs do not plead an actionable omission because the purported omission is not central to the product's function, as required by controlling Ninth Circuit precedent. ........................................... 25

   B.   Plaintiffs Fail to State Any Claim Upon Which Relief Can Be Granted. .......................................................................................... 25

        1.   Plaintiffs lack statutory standing under the CLRA (Second Cause of Action) & UCL (First Cause of Action). ......................... 26

        2.   Plaintiffs' CLRA claim fails (Second Cause of Action). .............. 26

        3.   Plaintiffs' UCL claim fails (First Cause of Action). ..................... 27

             a.   *Plaintiffs fail to state a claim under the "unlawful" prong.* ............................................................................... 27

*b.*      *Plaintiffs fail to state a claim under the "unfair" prong.* ... 28

*c.*      *Plaintiffs fail to state a claim under the "fraud" prong.* .... 28

*d.*      *Plaintiffs fail to plead entitlement to equitable relief.* ......... 29

4.      Plaintiffs' Tortious Interference claim fails (Third Cause of Action). ....................................................................................... 29

5.      Plaintiffs' Unjust Enrichment claim fails (Fourth Cause of Action). ....................................................................................... 30

6.      Plaintiff Foxx's NJCFA claim fails (Fifth Cause of Action). ....... 31

7.      Picardi's 93A Claim fails (Sixth Cause of Action). ..................... 32

C.    Plaintiffs Lack Standing to Seek Injunctive Relief. ................................. 33

V.    CONCLUSION ......................................................................................... 34

MOTION TO DISMISS CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019)....................................................................26

*Alvantor Indus. Co. v. Shenzhen Jorda Trading Co., Ltd.*,
No. 2:22-CV-04844-DOC-JPRx, 2023 WL 6783280
(C.D. Cal. Sept. 7, 2023) ......................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................21, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).................................................................................................34

*Cole v. Laughrey Funeral Home*,
869 A.2d 457 (N.J. Super. Ct. App. Div. 2005)....................................................32

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) ..............................................................................13

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994) ......................................................................................32

*Daugherty v. Am. Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2006)........................................................24, 27, 28, 29

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ................................................................................34

*Doe v. CVS Pharm., Inc.*,
982 F.3d 1204, 1214-15 (9th Cir. 2020),
*cert. granted in part*, 141 S. Ct. 2882 (2021),
and *cert. dismissed*, 142 S. Ct. 480 (2021)........................................................28

*Fleites v. MindGeek S.A.R.L.*,
801 F. Supp. 3d 1045 (C.D. Cal. 2025)................................................................22

*Gennari v. Weichert Co. Realtors*,
691 A.2d 350 (N.J. 1997) ......................................................................................32

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ................................................................22

*Hansen v. Saxon Mortg. Servs., Inc.*,
    No. 1:11-CV-11128-JLT, 2012 WL 3686448 (D. Mass. Aug. 23, 2012)..........33

*Hassler v. Sovereign Bank*,
    374 F. App'x 341 (3d Cir. 2010) ..............................................................32

*Hill v. Roll Internat. Corp.*,
    195 Cal. App. 4th 1295 (2011) ................................................................31

*Hodsdon v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018)....25

*In re Plum Baby Food Litig.*,
    No. 4:21-CV-00913-YGR, 2024 WL 1354447 (N.D. Cal. Mar. 28, 2024),
    *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (unpublished)26

*In re Theos Dark Chocolate Litig.*,
    750 F. Supp. 3d 1069 (N.D. Cal. 2024) ..................................................26

*In re Toyota Motor Corp.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..................................................22

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..........................................................................26

*Lanovaz v. Twinings N. Am., Inc.*,
    726 F. App'x 590 (9th Cir. 2018) ............................................................34

*Martinez v. Ford Motor Co.*,
    2022 WL 14118926 (S.D. Cal. Oct. 24, 2022).........................................28

*Morrow-Meadows Corp. v. Honeywell Int'l Inc.*,
    No. CV 22-05716-RSWL-SKx, 2022 WL 14751479 (C.D. Cal. Oct. 24, 2022)13

*Novation Sols., Inc. O/A Dealmaker v. Issuance Inc.*,
    No. 2:23-cv-00696-WLH-KSx, 2023 WL 5505908 (C.D. Cal. June 27, 2023) 30

*R Power Biofuels, LLC v. Chemex LLC*,
    No. 16-CV-00716, 2016 WL 6663002 (N.D. Cal. June 15, 2021) ...................22

*Rahman v. Mott's Ltd. Liab. P'ship*,
    No. CV 13-3482 SI, 2014 WL 325241 (N.D. Cal. Jan. 29, 2014).....................34

*Reed v. Zipcar, Inc.*,
    883 F. Supp. 2d 329 (D. Mass. 2012), *aff'd*, 527 F. App'x 20 (1st Cir. 2013)..33

*Romoff v. GM LLC*,
    574 F. Supp. 3d 782 (S.D. Cal. 2021) ..............................................................29

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870 (2017) ...........................................................................24

*Ruiz v. Bradford Exch., Ltd.*,
    No. 24-3378, 2025 WL 2473007 (9th Cir. Aug. 28, 2025)...............................29

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
    97 Cal. App. 5th 192 (2023) ...........................................................................31

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................29, 30

*Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*,
    No. 17-cv-03871-LHK, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017).............31

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...........................................................................23

*Tripharma, LLC v. First Fruits Bus. Ministry LLC*,
    No. 8:21-cv-01806-JVS(JDEx), 2023 WL 2695476 (C.D. Cal. Feb. 15, 2023)30

*Valley Children's Hosp. v. Athenahealth, Inc.*,
    No. 22-cv-10689-DJC, 2023 WL 6065800 (D. Mass. Sept. 18, 2023)..............33

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..........................................................................21

*Zajonc v. TMobile US, Inc.*,
    No. 3:25-CV-02860-JSC, 2025 WL 2419267 (N.D. Cal. Aug. 21, 2025).........30

**RULES**

Federal Rule of Civil Procedure 8 ..............................................................11, 21, 25

Federal Rule of Civil Procedure 9(b)......................................................11, 21, 23, 25

Federal Rule of Civil Procedure 12(b)(6)........................................................21, 25

STATUTES

940 CMR 38.00 ................................................................................................ 33

940 CMR 38.09 ................................................................................................ 33

Cal. Civ. Code § 1770(a)(2) ............................................................................ 28

Cal. Civ. Code § 1770(a)(5) ....................................................................... 27, 28

Cal. Civ. Code § 1770(a)(29) ..................................................................... 27, 28

Cal. Civ. Code § 1780(a) ................................................................................ 26

Consumers Legal Remedies Act ..................................................................... 11

Massachusetts General Laws Chapter 93A ........................................ 11, 32, 33, 34

New Jersey Consumer Fraud Act .................................................................... 11

Unfair Competition Law ................................................................................. 11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   <u>INTRODUCTION</u>

Yardi offers the RentCafe online rent-payment platform.  Through it, property managers and landlords—not Defendants—set rent obligations and determine available payment options.  When a tenant elects to pay by credit card, third-party processors may charge a fee, which some property managers pass on to tenants.

Plaintiffs' Complaint challenges the disclosed service fee that was assessed when they chose to pay rent by credit card rather than by bank account or check.  Plaintiffs admit they knew of the fee before completing payment.  And Plaintiffs allege no facts showing that the label "Service Fee" conveyed any false statement or was deceptive; rather, they assert without support that no additional "service" was provided to them personally.  The law is clear that a fee may permissibly describe the cost of facilitating a credit-card payment transaction even if Plaintiffs would prefer a different label.

That Plaintiffs' lack a viable claim is evident from their own allegations.  Throughout their Complaint, Plaintiffs make note of the RentCafe Resident app disclosures.  Those app disclosures, which the Court should consider under either the incorporation by reference doctrine or as judicially noticeable, conspicuously disclosed from the outset that a resident who chose to pay rent using a credit card would be assessed a credit card Service Fee.  The disclosures likewise made clear that users are free to pay through a bank account or debit card, neither of which resulted in a Service Fee being charged.[1]  Plaintiffs' Complaint is a proverbial house of cards: there is no undisclosed or misleading fee.

Equally problematic for Plaintiffs is that the Complaint lacks even basic supporting factual allegations.  Instead of identifying the specific statements, omissions, contractual

---

[1] Each of the three Plaintiffs knows all of this to be true because each exercised his or her ability to pay using his or her bank account at times, rather than by credit card. (Declaration of Alexa Bermudez, at Exs. D-F.)

terms, or defendant-specific conduct as Rule 8 and Rule 9(b) require, the Complaint relies on labels, conclusions, and group allegations. Repeatedly labeling the service fee a "junk fee," a "negative option," "unexpected rent," and "pay-to-pay scheme" does not satisfy the pleading standards under Rule 8 or under Rule 9(b) for the claims sounding in fraud. The Complaint should therefore be dismissed in its entirety.

Each individual claim fails separately for independent reasons. The Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") claims fail for multiple independent reasons, including the absence of any actionable misrepresentation or omission and the lack of any basis for equitable relief, because Plaintiffs knew of the fee before paying, cannot plausibly allege future harm, and do not allege that Defendants retained the challenged fee. The tortious-interference claim fails because Plaintiffs do not identify the contract terms allegedly affected or allege any resulting breach, disruption, or damage. The unjust-enrichment claim is not a standalone cause of action in California and fails in any event with the other claims. The New Jersey Consumer Fraud Act ("NJCFA") claim similarly rests on conclusory allegations without particularized facts showing unlawful conduct, ascertainable loss, or causation. And the Chapter 93A claim fails because Picardi does not appear to have served the required pre-suit demand letter and, in any event, does not plausibly allege a deceptive act.

For all of these reasons, Defendants respectfully request the Court dismiss Plaintiffs' claims in their entirety.

## II.   FACTUAL BACKGROUND

Yardi offers property-management software and services, including the RentCafe platform. (Compl. ¶ 12.) RentCafe platform is a residential property management software program, which includes an online rent-payment portal and a related RentCafe "Resident app" (the "App"). (Compl. ¶ 13.) Landlords and property management companies, which are RentCafe's customers, license this software. (Declaration of Alexa Bermudez ("Bermudez Decl."), at ¶ 2.) Plaintiffs do not allege that Defendants are their landlords; they're not. Landlords and property managers can enable the platform to

permit tenants to pay their monthly rent. And landlords and property managers—not RentCafe—choose the mix of payment options to make available to their tenants, retaining the ability to customize the user interface. (*Id.*)

Plaintiffs claim that the App is the means by which "all Plaintiffs and Class members" paid rent and incurred the challenged "Service Fee." (Compl. ¶ 19.) Plaintiffs allege that App users are "automatically charged" the Service Fee and are informed of it on the final "Confirm" payment screen, before a user authorizes payment. (*Id.*, ¶ 20.) Plaintiffs also claim that even though the fee is termed as a "Service Fee" there is no "service" being provided. (*Id.*, at ¶ 5.) The Complaint further alleges that the App does not disclose alternative means of paying rent that would avoid the fee and thereby leads consumers to believe that paying the fee is mandatory. (*Id.*, ¶ 21.)

To the contrary, however, documents referenced throughout the Complaint and submitted with the accompanying Request for Judicial Notice ("RJN") reflect that alternative payment methods were available and that the service fee was fully disclosed. For example, Picardi alleges that she rented an apartment in Malden, Massachusetts from approximately September 1, 2023, through January 16, 2025, and paid her rent each month via the App. (Compl. ¶ 60.) Picardi's apartment complex was managed by Bell Partners, Inc. (Bermudez Decl., at ¶ 3.) On the first screen she saw in the App when she went to make a payment, Picardi—along with other tenants at the complex managed by Bell Partners, Inc.—was notified under a banner labeled "Important Information" that paying by credit card required payment of a service fee, as displayed below. [2]

---

[2] Because Plaintiffs' theory turns on what the app displayed during the payment flow, the Court may consider materials incorporated by reference or properly subject to judicial notice. *See, e.g., Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also Morrow-Meadows Corp. v. Honeywell Int'l Inc.*, No. CV 22-05716-RSWL-SKx, 2022 WL 14751479, at *2 (C.D. Cal. Oct. 24, 2022).



(*See* Bermudez Decl., at Ex. A; RJN at Ex. A.)

After Picardi confirmed the amount of her payment, the App offered three payment methods: bank account, debit card or credit card.



MOTION TO DISMISS CLASS ACTION COMPLAINT

(*Id.*) Choosing "credit card" as the payment method triggered a second notification about the service fee, and this time the notification included a separate line item specifying the amount, as displayed here:



(*Id.*) By contrast, choosing to pay by "bank account" did not incur a service fee, as shown here:



(*Id.*) As such, in Picardi's payment flow process using a credit card (i) she received two separate notices that a service fee would be charged, (ii) the amount of the fee was

MOTION TO DISMISS CLASS ACTION COMPLAINT

disclosed; and (iii) she was notified that there were alternative, free methods of paying rent via the App—all before the final "Confirm" payment screen. (*Id.*)[3]  Critically, Picardi's payment history establishes that she paid by both bank account (ACH) and check on multiple occasions during the relevant period, thereby avoiding any Service Fee which she now claims was always mandatory. (*See* Bermudez Decl., at Ex. D [Plaintiff Picardi Payment Ledger], at 07/24/2023; 08/04/2023; 09/12/2023; 10/04/2023; 10/16/2023; 11/30/2023; 12/05/2023; 01/01/2024; 03/01/2024; 04/01/2024; 05/01/2024; 06/01/2024; 07/01/2024; 08/01/2024; 08/02/2024; 08/07/2024; 08/30/2024; 09/01/2024; 09/03/2024; 10/01/2024; 10/03/2024; 11/01/2024; 11/05/2024; 11/28/2024; 12/01/2024; 12/04/2024; RJN, at Ex. D.)

Plaintiff Mosley's payment flow process is similar.  According to the Complaint, Mosley currently resides and has been a tenant since approximately June 2024 at an apartment in Chula Vista, California. (Compl. ¶ 48.)  That property is managed by Essex Portfolio, L.P. (*See* Bermudez Decl., at ¶ 4.)  When using the App, Mosley likewise was notified at the outset—under a similar banner labeled "Important Information"—that there was a service fee for credit and debit card rental payments, as shown here:

[Screenshot on Next Page]

---

[3] *Compare* Compl., ¶ 21 ("At no point during the rental payment process . . . are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe the fee is mandatory and unavoidable.").



(*See id.*, at Ex. B.)  The App also presented Mosley with three options to pay her rent: by bank account, debit card or credit card, as shown here:



MOTION TO DISMISS CLASS ACTION COMPLAINT

(*See id.*, at Ex. B.)  As with Picardi, choosing to pay by "bank account" triggered a disclosure that no service fee would be charged, as follows:



(*See id.*)  Accordingly, in Mosley's payment flow process using a credit card she (i) received a notice that a service fee would be charged, and (ii) was notified that there were alternative, free methods of paying rent via the App—all before the final "Confirm" payment screen. Mosley's payment history establishes that she, too, paid by bank account (ACH) on multiple occasions during the relevant time period, thereby avoiding the Service Fee that she now claims was mandatory.  (*See id.*, at Ex. E [Plaintiff Mosley's Payment Ledger], at 08/02/2023; 09/02/2023; 09/03/2023; 10/02/2023; 11/01/2023; 12/01/2023; 01/02/2024; 02/01/2024; 03/03/2024; 03/29/2024; 04/01/2024; 04/30/2024; 05/01/2024; and 06/02/2024.)

Plaintiff Foxx's payment flow process is also similar.  According to the Complaint, he rented an apartment in Newark, New Jersey from approximately September 1, 2022, to September 30, 2023, and paid rent through the App.  (Compl. ¶ 54.)  Foxx's apartment complex was managed by Gomes Management, LLC.  (Bermudez Decl. ¶ 5.)  When Foxx

logged onto the App to make a payment, the first screen he would have encountered clearly linked to a "Frequently Asked Questions" page:



(*Id.*, Ex. C.)  Clicking on one of the linked pages brought Foxx to the following screen, which discloses the fee associated with credit and debit card payments, as well as the lack of fees for payments by bank account:



(*Id.*)  By contrast, the FAQ disclosed that a fee would be charged for using a credit card, as shown here:



(*Id.*)  In order to pay by credit card, Foxx would have had to scroll past the bank account option, as shown here, to input a credit card number:



(*Id.*)  Like Picardi and Mosley, in Foxx's payment flow process using a credit card he (i) received a notice through the FAQ page that a service fee would be charged, and (ii) was shown that there were alternative, free methods of paying rent via the App—all before

the final "Confirm" payment screen.  In fact, as displayed above, Foxx added his banking details—including a bank routing number and account number—to his App account.  (*Id.*)

Even apart from these documents and disclosures that completely undercut the Complaint's foundation, the remaining allegations are largely conclusory, formulaic, and directed generically at "Defendants."  Paragraphs 48-65 contain no meaningful plaintiff-specific facts; Paragraphs 25-35 and 41-47 consist of generalized complaints about "junk fees" that don't have anything to do with this matter[4]; and Paragraphs 67-77, do not plead the who, what, where, how and when of the alleged fraud.  (Compl. ¶ 66.)  These allegations cannot sustain any claim.

## III.   **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Federal Rule of Civil Procedure 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.*  (quoting *Twombly*, 550 U.S. at 555).  In evaluating plausibility, the Court need not accept legal conclusions cast as factual allegations.  Moreover, Rule 9(b) applies to all claims that sound in fraud, including statutory and quasi-contract theories to the extent they are premised on the same alleged deceptive course of conduct.  This heightened pleading standard broadly covers any claims that sound in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

---

[4] Along these lines, the generic FTC letter that Plaintiffs attached to the Complaint has nothing to do with the allegations here and is a red herring.  The FTC's concern was disclosure of the total price required to rent advertised properties, not processing fees charged by credit card companies for certain payment types.  (Compl. Ex. 1.)

## IV.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS

### A.   Plaintiffs Have Failed to Properly Plead Any of the Claims Asserted in the Complaint.

Given the number and wide range of legal claims asserted, Plaintiffs are required to meet a variety of pleading standards.  They fail to meet any of them.

### 1.   The Complaint fails to allege well-pleaded facts necessary to support any theory of liability.

Plaintiffs' Complaint has two fundamental pleading defects.  First, the Complaint fails to plead *any* statements that comprise the allegedly deceptive payment flow.  Plaintiffs allege that the fee was added at the "very last step," that users did not see the amount until the final "Confirm" screen, and that alternative payment methods were not adequately disclosed.  (Compl. ¶¶ 3, 20.)  But the Complaint does not reproduce what the App actually said, identify how the fee was displayed, quote any contextual language, or allege what options the user had to proceed, change payment method, or cancel the transaction.  Whether a disclosure is misleading depends on the words used and the context in which they appeared.  Yet the Complaint pleads no such supporting facts.  And the reason is obvious: the transaction flow for Plaintiffs not only fails to support the Complaint's allegations—it completely undercuts them.  (*See, e.g.*, RJN, at Exs. A-C.); *see also, e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of plaintiff's factual allegations in a complaint as true, we 'need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'") (citation omitted).

Second, the Complaint fails to plead the lease terms that supposedly make the challenged service fee misleading or unlawful.  Plaintiffs allege that the Service Fee was "not permitted by" or "not disclosed in" their leases, amounting to "additional" or "unexpected" rent.  (Compl. ¶¶ 5, 39.)  But Defendants are not alleged to be Plaintiffs' landlords or lease counterparties, and Plaintiffs do not attach their leases, quote relevant provisions, or identify clauses governing payment methods or processing charges.  Nor do they explain how the fee violated the leases to which Defendants were not parties.

MOTION TO DISMISS CLASS ACTION COMPLAINT

Without that, the Court cannot plausibly infer that the Service Fee breached any lease-based obligation or was somehow misleading. *See R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716, 2016 WL 6663002, at *17 (N.D. Cal. June 15, 2021) (finding allegations of "several agreements with major oil companies" as a basis of claims insufficient where Plaintiffs failed to allege specific terms or parties with whom they contracted, making it "impossible to even determine how many contracts are at issue").

More broadly, the Complaint relies on conclusory statements, formulaic recitations of legal standards, and group pleading rather than the underlying text, terms, and transaction details needed to state a plausible claim. That is insufficient. *See, e.g., In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("Pleadings containing conclusory claims—'labels and conclusions' and 'formulaic recitation of the elements of a cause of action'—are insufficient.") (quoting *Ashcroft,* 556 U.S. at 677 (2009)); *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1069 (C.D. Cal. 2025) (a "repeat of the statutory language without further support is the definition of conclusory and cannot pass muster on a motion to dismiss.").

**2.      The Complaint's fraud-based claims fail under Rule 9(b).**

Plaintiffs' fraud-based claims fail for the independent reason that the Complaint does not satisfy Rule 9(b). Plaintiffs assert, for example, that Defendants "hid," "concealed," "obfuscated," or "disguised" additional charges; failed adequately to display the Service Fee; and labeled the charge a "Service Fee" to prevent consumers from discovering its true nature. (*See* Compl. ¶ 66(b).) Those are conclusions, not particularized factual allegations. At a minimum, Plaintiffs are required to allege the specific statements each named Plaintiff encountered, when each Plaintiff encountered them, which Defendant presented them, and why those statements were false or misleading in context. *See, e.g., Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (to satisfy Rule 9(b), a fraud suit against differently situated defendants must "identify the role of each defendant in the alleged fraudulent scheme." (citation modified)). Other than pointing to the term "Service Fee" itself (addressed below), the Complaint identifies

literally no statements in the App.  Zero.  It includes no screenshots; no quoted language; no description of the App interface at issue; no defendant-specific allegations about who authored or controlled the challenged content; and no concrete explanation of falsity beyond Plaintiffs' assertion that the fee was improper.  That deficiency is especially pronounced because the named Plaintiffs' transactions span different states—California, New Jersey and Massachusetts—time periods, payment methods and circumstances.  "To meet Rule 9(b)'s heightened standard, the pleading must set forth 'specific descriptions of the representations made, [and] the reasons for their falsity.'"  *Alvantor Indus. Co. v. Shenzhen Jorda Trading Co., Ltd.*, No. 2:22-CV-04844-DOC-JPRx, 2023 WL 6783280, at *4 (C.D. Cal. Sept. 7, 2023) (alteration in original) (citation omitted).  The Complaint categorically fails to do so, requiring dismissal.

### 3.   Plaintiffs fail to plausibly plead any deception.

Every claim in the Complaint depends on the same threshold premise: that Defendants either made a material misrepresentation about the Service Fee or wrongfully omitted material information concerning it.  (*See, e.g.*, Compl. ¶¶ 105, 136.)  But the Complaint plausibly alleges neither.

> a.   *The Complaint does not plausibly allege any actionable misrepresentation.*

The Complaint fails plausibly to allege an actionable misrepresentation.  Plaintiffs contend—without support—that the charge's label of a "Service Fee" was "deceptively mis-named." (Compl. ¶ 4.)  But the mere use of the term "Service Fee" is not itself false.  Processing a rent payment by credit card necessarily involves transaction-related costs, and the Complaint contains no facts showing the term "Service Fee" communicated any objectively false representation about the nature of the charge.  At most, Plaintiffs allege a semantic disagreement with the label and assert in conclusory fashion that no additional "service" was provided to them.

The alleged timing of the fee disclosure similarly does not establish any misrepresentation.  Plaintiffs allege that the amount of the Service Fee was displayed on

MOTION TO DISMISS CLASS ACTION COMPLAINT

the final "Confirm" screen—that is, the fee was disclosed *before* Plaintiffs made any payment. (Compl. ¶ 20.) But a fee disclosed before the user completes the transaction is, by definition, still disclosed. To turn that sequence into an actionable misrepresentation would require far more. For example, Plaintiffs would need to allege that there was some earlier (false) statement affirmatively representing that no fee would be charged. Or that the App somehow represented that the listed rent amount was the full amount due, regardless of payment method. The Complaint alleges no such thing. (*See* Compl., *passim*.)

> b.    *Plaintiffs' omission theory fails.*
>
> (i)    Plaintiffs fail to allege a duty to disclose.

Plaintiffs' omission theory likewise must be rejected. "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL" and therefore not actionable. *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). The same is true of CLRA claims. *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 881 (2017). Each of Plaintiffs' claims fails because they cannot allege that either Defendant had a duty to disclose all alternative payment methods. *See Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1025–26 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018). The Complaint does not allege facts giving rise to any duty to disclose under any identified relationship, transaction structure, statute, or regulation. It does not identify any contractual provision requiring Defendants to disclose all possible payment alternatives. And it does not plead any statute or regulation imposing the broad disclosure obligation Plaintiffs posit across the full proposed class period and across multiple jurisdictions. Instead, the Complaint simply assumes the existence of such a duty without alleging any facts necessary to establish it.[5]

---

[5] The Complaint also fails to distinguish between the two named defendants. Although Plaintiffs briefly describe Yardi and RentCafe separately, (Compl. ¶¶ 7–8), they thereafter attribute the challenged conduct generically to "Defendants" or sometimes

24

MOTION TO DISMISS CLASS ACTION COMPLAINT

(ii)   Plaintiffs do not plead an actionable omission because the purported omission is not central to the product's function, as required by controlling Ninth Circuit precedent.

Governing Ninth Circuit precedent limits omissions-based false advertising claims to the product's central functionality. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (omission-based claim as to a product must relate to a product defect that implicates the "central functionality" of the product). Plaintiffs do not and cannot meet this standard. Plaintiffs do not allege that the supposed undisclosed Service Fee rendered the App or payment portal incapable of use. Plaintiffs allege only that there was an "inadequate and untimely disclosure of the Service Fee." (Compl., at ¶ 23.) In addition to being entirely conclusory, this alleged omission does not relate to the App's safety or even its features. Federal courts in California have dismissed numerous omissions-based claims under FRCP 12(b)(6) where, as here, the presence or absence of information did not render the product unusable. *See, e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019) (no duty to disclose as plaintiffs did not adequately allege that the defect either impairs the central function of plaintiffs' computers or implicates consumer safety); *In re Plum Baby Food Litig.*, No. 4:21-CV-00913-YGR, 2024 WL 1354447, at *6 (N.D. Cal. Mar. 28, 2024) (finding that trace heavy metals in baby food do not "render[] the product incapable of nourishment"), *aff'd*, No. 24-2766, 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (unpublished).

**B.   Plaintiffs Fail to State Any Claim Upon Which Relief Can Be Granted.**

On top of their wholesale pleading failures detailed above, Plaintiffs fail to plead facts supporting the elements of each of their individual claims. Each claim must therefore be dismissed.

---

"RentCafe," without explaining each entity's role. That kind of group pleading is insufficient under Rule 8, much less Rule 9(b).

### 1.    Plaintiffs lack statutory standing under the CLRA (Second Cause of Action) & UCL (First Cause of Action).

Plaintiffs lack statutory standing—which is "substantially narrower" than Article III standing, *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 324 (2011)—because they have no viable economic injury as a result of Defendants' supposed wrongful conduct.  *See* Cal. Civ. Code § 1780(a) (CLRA standing requires actual injury); *Kwikset*, 51 Cal. 4th at 322 (UCL standing requires economic injury in fact caused by the wrongful conduct).  Plaintiffs' payment of the Service Fee alone cannot establish statutory standing.  For one, Plaintiffs do not plead that Defendants were paid and retained the Service Fee.  Further, Plaintiffs concede that they were aware of the Service Fee prior to finalizing their payment.  (Compl., at ¶¶ 50, 56, 62.)  They therefore cannot plausibly claim that they made the payment because of some deception by Defendants, which is required to establish standing.  Moreover, their purchase flows, which are incorporated by reference in the Complaint, establish that Plaintiffs were informed early in the transaction process about the Service Fees and the alternative payment methods available to them.  (Bermudez Decl., at Exs. A-C.)  Accordingly, because there is no cognizable harm under the CLRA or UCL, Plaintiffs lack standing to assert claims under either statute.

### 2.    Plaintiffs' CLRA claim fails (Second Cause of Action).

Plaintiffs' CLRA claim separately fails under both Sections 1770(a)(5) and (a)(29).  As to Section 1770(a)(5), Plaintiffs allege that the "Service Fee" was deceptively labeled because Defendants did not provide a service beyond what should already have been included in the lease relationship.  (Compl., ¶ 4.)  But the Complaint pleads no facts about what payment-processing services Defendants performed, what the fee was intended to cover, or why the label was objectively false.  It offers only Plaintiffs' conclusion that the fee added no value.  That is not enough.  A viable CLRA claim requires facts showing that the challenged description was likely to mislead a reasonable consumer, not merely that Plaintiffs take semantic issue with it.  *See, e.g.*, *Daugherty*, 144 Cal. App. 4th at 834 ("[T]he CLRA proscribes a concealment of characteristics or quality 'contrary to that

represented,' but in Daugherty's case, no representation was made to which the alleged concealment was contrary.").

Plaintiffs' CLRA theory under Section 1770(a)(29) fares no better. That provision addresses the advertisement or display of a price that omits a mandatory fee or charge. However, Defendants did not charge Plaintiffs any price for their own goods or services. Nor does the Complaint allege as much. Instead, Plaintiffs paid rent to their landlords via the RentCafe App. Moreover, Plaintiffs' assertion is disproven by their own allegations and the payment-flow materials. Both show the fee was clearly disclosed before Plaintiffs chose to complete the transaction. (*See, e.g.*, RJN, at Ex. A.) Section 1770(a)(29) does not prohibit itemization; it prohibits displaying a price that omits charges the consumer is required to pay. On the facts Plaintiffs plead—and the payment-flow document they necessarily place at issue—the fee was tied to payment method and it was disclosed before the transaction was completed.

### 3.    Plaintiffs' UCL claim fails (First Cause of Action).

#### a.    *Plaintiffs fail to state a claim under the "unlawful" prong.*

Plaintiffs expressly predicate their UCL "unlawful" claim on the alleged CLRA violations, asserting that Defendants' conduct was "unlawful" because it violated California Civil Code sections 1770(a)(5) and 1770(a)(29). (Compl. ¶ 102.) The UCL unlawful prong claim is therefore derivative of the CLRA claim. Because Plaintiffs do not plausibly plead a CLRA violation, they likewise fail to state a UCL claim. The Court should therefore dismiss Plaintiffs' UCL for that additional reason. *See Martinez v. Ford Motor Co.*, 2022 WL 14118926, at *3–4 (S.D. Cal. Oct. 24, 2022) ("A UCL claim stands or falls depending on the fate of antecedent substantive causes of action." (citation modified)); *Daugherty*, 144 Cal. App. 4th at 837 (no unlawful prong liability predicated on CLRA where CLRA claim failed). And to the extent Plaintiffs may rely on other unspecified laws or policies, the Complaint does not identify any alternative predicate violations.

     b.  *Plaintiffs fail to state a claim under the "unfair" prong.*

The Ninth Circuit has recognized three tests for the UCL's "unfair" prong: whether the challenged conduct is tethered to a constitutional, statutory, or regulatory provision; whether it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or whether the consumer injury outweighs the utility of the practice. *See Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) ("CVS"), *cert. granted in part*, 141 S. Ct. 2882 (2021), and *cert. dismissed*, 142 S. Ct. 480 (2021). Plaintiffs do not satisfy any of these tests. They do not allege that Defendants' conduct violates or is tethered to any constitutional, statutory, or regulatory provision.[6] (*See* Compl., ¶¶ 92-110.) They plead solely in conclusory fashion that the practice was immoral or against public policy, without identifying any violated public policy or facts supporting that conclusion. (*Id.*) And they do not allege facts showing substantial consumer injury that outweighs the utility of a disclosed, payment-method-dependent processing charge, particularly where alternative payment options were available. (*See, e.g.*, RJN, at Ex. A.) Plaintiffs' "unfair" prong therefore fails.

     c.  *Plaintiffs fail to state a claim under the "fraud" prong.*

The UCL's fraudulent prong fails for the reasons already discussed: the Complaint does not plausibly allege any actionable misrepresentation or omission. That includes Plaintiffs' bare assertion that "Service Fee" was a deceptive label. The Complaint contains no facts establishing that reasonable consumers would understand that term to not include charges associated with facilitating a credit-card payment. Moreover, as explained above, the Complaint does not identify the actual language presented to users, the full context of the alleged disclosure, or facts showing why any statement was false or misleading to a reasonable consumer. *See Daugherty*, 144 Cal. App. 4th at 838 ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is

---

[6] While Plaintiffs' Complaint expressly identifies Sections 1770(a)(2) and (a)(29) of the CLRA, this allegation is in connection with Plaintiffs' "unlawful" claim. (*See* Compl., ¶ 102.)

'likely to deceive' anyone within the meaning of the UCL.")  Without those foundational allegations, the Complaint does not plausibly allege conduct likely to deceive a reasonable consumer, and the materials referenced in the Complaint undermine Plaintiffs' contrary characterizations.  (*See, e.g.*, RJN, at Ex. A); *see also Romoff v. GM LLC*, 574 F. Supp. 3d 782, 788–89 (S.D. Cal. 2021) (dismissing UCL claim based on allegation that "Destination Charge" fraudulently included profit to the seller where the amount and existence of the charge were fully disclosed).

### d.     *Plaintiffs fail to plead entitlement to equitable relief.*

A plaintiff seeking equitable relief under the UCL must establish that they lack an adequate remedy at law.  *See Ruiz v. Bradford Exch., Ltd.*, No. 24-3378, 2025 WL 2473007, at \*4 (9th Cir. Aug. 28, 2025).  When a plaintiff does not make such a showing, claims for equitable relief under the UCL and CLRA must be dismissed.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020).  Here, Plaintiffs allege they have no adequate remedy at law "because RentCafe continues to automatically add Service Fees to rent payments made through its Resident app."  (Compl. ¶ 109.)  But Plaintiffs fail to allege how monetary damages—a remedy Plaintiffs themselves seek in this action (Compl. ¶¶ 2, 8, 115, 140, 143.)—are unavailable or inadequate.  In seeking damages to compensate them for the same past harm for which Plaintiffs also claim entitlement to equitable relief, Plaintiffs tacitly admit they have an adequate remedy at law.  *See Zajonc v. TMobile US, Inc.*, No. 3:25-CV-02860-JSC, 2025 WL 2419267, at \*3 (N.D. Cal. Aug. 21, 2025);  *Sonner*, 971 F.3d 834, 844–45 ("Sonner fails to explain how the same amount of money for the exact same harm is inadequate or incomplete, and nothing in the record supports that conclusion.").

### 4.     **Plaintiffs' Tortious Interference claim fails (Third Cause of Action).**

"Pursuant to California law, the elements of tortious interference with contract are: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the

contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" (citation omitted). *See Novation Sols., Inc. O/A Dealmaker v. Issuance Inc.*, No. 2:23-cv-00696-WLH-KSx, 2023 WL 5505908, at *11 (C.D. Cal. June 27, 2023). Plaintiffs' tortious interference claim fails because the Complaint (1) does not identify the lease terms allegedly interfered with; and (2) does not plausibly allege intentional inducement of any actual breach.

First, a plaintiff asserting tortious interference "must identify the *terms of the contract*, 'third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties.'" *Tripharma, LLC v. First Fruits Bus. Ministry LLC*, No. 8:21-cv-01806-JVS(JDEx), 2023 WL 2695476, at *8 (C.D. Cal. Feb. 15, 2023) (emphasis added). Plaintiffs do not identify the terms of their lease agreements, the landlords or rental companies with whom they contracted, or the nature of those relationships. (Compl., ¶¶ 117-122.) Second, Plaintiffs do not allege a breach or disruption of any lease term, as opposed to a separate processing charge associated with payment. Under Plaintiffs' view, every contract would be interfered with when there are separate service fees associated with paying by credit card. That is contrary to common sense and the law.

Moreover, Plaintiffs do not allege any contract-based damages resulting from the supposed interference with their lease agreements. Plaintiffs do not allege, for example, that their lease agreements were terminated due to Defendants' conduct or that they were otherwise deprived of some benefit conferred by the lease. Plaintiffs' lease agreements remain unaffected, and the Complaint does not allege otherwise. Accordingly, as a matter of law, the Complaint fails to state a cause of action for tortious interference.

### 5. Plaintiffs' Unjust Enrichment claim fails (Fourth Cause of Action).

Plaintiffs' unjust enrichment claim fails for at least four independent reasons. First, Plaintiffs' unjust enrichment claim fails because there is no such standalone claim under California law. *Hill v. Roll Internat. Corp.*, 195 Cal.App.4th 1295, 1307 (2011) (Under

California law, unjust enrichment is not considered an independent cause of action and is instead "just a restitution claim."). Second, Plaintiffs fail to plead that any unjust benefit accrued to each Defendant by virtue of the disclosed Service Fee. Third, it fails because Plaintiffs already seek restitution by way of their UCL claim. (Compl., ¶ 109.) A duplicative claim for "restitution" is unnecessary and should be dismissed. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 208 (2023) ("Restitution is already an available remedy under the UCL cause of action, within the broad equitable discretion of the trial court . . . . Thus, a separate claim is unnecessary for [the plaintiff] to recover restitution."). Fourth, it fails because Plaintiffs fail to plead that money damages—which Plaintiffs seek via their tortious interference claim—would not provide an adequate legal remedy. "[W]here [as here] an equitable relief claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-cv-03871-LHK, 2017 WL 4517111, at *12 (N.D. Cal. Oct. 10, 2017) (citation modified).

### 6. Plaintiff Foxx's NJCFA claim fails (Fifth Cause of Action).

Foxx separately asserts a claim under the NJCFA on behalf of the proposed New Jersey subclass. (Compl. ¶¶ 129-144.) But he does not sufficiently allege unlawful conduct under the NJCFA. To state a claim, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the two." *Hassler v. Sovereign Bank*, 374 F. App'x 341, 343 (3d Cir. 2010) (citation modified). Actionable unlawful conduct generally falls into one of three categories: affirmative acts, knowing omissions, and specific regulatory violations. *Cox v. Sears Roebuck & Co*., 647 A.2d 454, 462 (N.J. 1994).

Foxx alleges no "specific regulatory violations." Instead, he asserts only in vague terms that Defendants or RentCafe made "misrepresentations and omissions" about the Service Fee and Plaintiffs' rent obligations. (Compl. ¶¶ 133, 137.) For the same reasons Plaintiffs' UCL claim fails, so does Foxx's NJCFA claim. He identifies no specific

statements supporting actionable unlawful conduct. *See, e.g.*, *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997) (In order to plead an actionable false and misleading statement under the NJCFA, "the [alleged] misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase."). Nor does he plausibly allege that the phrase "Service Fee," standing alone, was false or misleading. The Complaint alleges no facts showing the term could not refer to processing the elected payment method. And because this claim rests on alleged misrepresentations and omissions, it must be pled with particularity, which Foxx does not do. Accordingly, Foxx's NJCFA claim must be dismissed.

### 7.   Picardi's 93A Claim fails (Sixth Cause of Action).

Picardi asserts an alternative claim under Massachusetts General Laws chapter 93A on behalf of the Massachusetts subclass. (Compl. ¶¶ 145-154.) That claim should be dismissed for at least three reasons. First, Picardi did not serve the required pre-suit demand letter and does not allege that she did so.[7] 93A requires a demand letter at least thirty days prior to filing a lawsuit. *See* M.G.L. ch. 93A, § 9(3) (providing that a demand letter must be mailed or delivered to any prospective respondent "[a]t least thirty days prior to the filing" of any action under Chapter 93A). That defect is fatal. *See Hansen v. Saxon Mortg. Servs., Inc.*, No. 1:11-CV-11128-JLT, 2012 WL 3686448, at *4 (D. Mass. Aug. 23, 2012) (dismissing Chapter 93A claim where Plaintiffs "did not follow the statutory requirement of the demand letter . . . by waiting thirty days after sending a demand letter to file suit").

Second, the specific section of the Code of Massachusetts Regulation on which Picardi relies was not in effect during the relevant period. It applies only to acts

---

[7] Nor can she rely on Plaintiffs' CLRA demand letter, because it makes no mention of a 93A claim. (Bermudez Decl., ¶ 5; Ex. G [Feb. 9, 2026, Ltr.].)

committed September 2, 2025, and after. *See* 940 CMR 38.09 ("Enforcement Date" "940 CMR 38.00 shall apply to acts committed or practices in force as of September 2, 2025."). Picardi alleges the relevant time period is between September 1, 2023 through January 16, 2025. (Compl. ¶¶ 6, 43.) The Complaint therefore does not plausibly plead a viable statutory predicate for Picardi's 93A claim.

Third, even if Picardi could assert a 93A claim, the existence of disclosed alternatives undercuts any plausible inference that the challenged practice was extortionate, coercive, or sufficiently unfair to rise to the level required under Chapter 93A. *See, e.g.*, *Valley Children's Hosp. v. Athenahealth, Inc.*, No. 22-cv-10689-DJC, 2023 WL 6065800, at *4 (D. Mass. Sept. 18, 2023) (dismissing Chapter 93A claim where no factual allegations suggesting alleged conduct "rose to the 'level of rascality' or had the 'requisite extortionate quality' necessary to constitute a violation of Chapter 93A."); *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 336 (D. Mass. 2012) (no 93A claim where consumer Plaintiff "had alternatives available" and "freely agreed" to Defendant's terms of service), *aff'd*, 527 F. App'x 20 (1st Cir. 2013). The payment flow that Picardi experienced (Bermudez Decl., at Ex. A), offered alternative ways to pay rent without a Service Fee, including by bank account or debit card. Defendants' alleged conduct therefore does not rise to the level Chapter 93A reaches.

### C.   Plaintiffs Lack Standing to Seek Injunctive Relief.

Plaintiffs seek to enjoin RentCafe from including "junk fees" on rent payments and inadequately disclosing the Service Fee. (*See, e.g.*, Compl., at ¶¶ 22-23; Prayer for Relief, at (c).) But Plaintiffs lack standing to seek injunctive relief because they cannot show any actual or imminent threat of future injury. To seek injunctive relief, a plaintiff must allege a "sufficient likelihood that [s]he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). That requires allegations that the plaintiff wants or intends to purchase the challenged product in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018); *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("A some day intention—

without any description of concrete plans, or indeed even any specification of when the some day will be—does not support a finding of the actual or imminent injury that Article III requires." (citation modified)).

Plaintiffs make no such allegations.  They complain of the Service Fee, but do not plausibly allege that they will pay rent by credit card using Defendants' services going forward.   To the contrary, each "is now fully aware of the alleged misrepresentations" and fails "to allege that he intends to [unknowingly pay the fee] again in the future." *Rahman v. Mott's Ltd. Liab. P'ship*, No. CV 13-3482 SI, 2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014) (dismissing injunctive relief demand for lack of standing).   Because Plaintiffs allege only past harm, they lack standing to seek injunctive relief.

## V.   **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.

Dated:  May 1, 2026

E. SCOTT SCHIRICK, *Pro Hac Vice*
DAVID B. CARPENTER, *Pro Hac Vice*
RACHEL E. K. LOWE
JONATHAN J. KIM

**ALSTON & BIRD LLP**


By:  ____*/s/ Rachel E. K. Lowe*____
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

## <u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Yardi Systems, LLC and RentCafe, LLC, certifies that this brief contains 6,915 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  May 1, 2026

By:    <u>*/s/ Rachel E. K. Lowe*</u>
                Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC
and RentCafe, LLC

MOTION TO DISMISS CLASS ACTION COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

DATED: May 1, 2026

By: _____*/s/ Rachel E. K. Lowe*_____
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC
and RentCafe, LLC

MOTION TO DISMISS CLASS ACTION COMPLAINT