RACHEL E. K. LOWE (State Bar No. 246361)
JONATHAN J. KIM (State Bar No. 312145)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: 213-576-1000
Facsimile: 213-576-1100
rachel.lowe@alston.com
jonathan.kim@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC (erroneously sued as
YARDI SYSTEMS, INC.) and
RENTCAFE, LLC**

(Additional Counsel Listed on Next Page)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>Defendants. | Case No. 2:26-cv-03318-WLH-BFM<br><br>(Santa Barbara Superior Court Case No. 26CV00952)<br><br>**DECLARATION OF ALEXA BERMUDEZ IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**<br><br>DATE:        June 26, 2026<br>TIME:        1:30 p.m.<br>PLACE:      Courtroom 9B<br>                   350 West First Street<br>                   Los Angeles, CA 90071<br><br>(Concurrently filed with Notice of Motion and Motion and Dismiss; Declaration of Rachel E. K. Lowe; Request for Judicial Notice; and [Proposed] Order)<br><br>Filing Date:        February 9, 2026<br>Removal Date:  March 27, 2026 |

E. SCOTT SCHIRICK
(*Admitted Pro Hac Vice*)
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Scott.schirick@alston.com

DAVID B. CARPENTER
(*Admitted Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:   404-881-7777
David.carpenter@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC and
RENTCAFE, LLC**

DECLARATION OF ALEXA BERMUDEZ

## DECLARATION OF ALEXA BERMUDEZ

I, Alexa Bermudez, declare as follows:

1.      I am currently Corporate Counsel in the Legal Department of Defendant Yardi Systems, LLC ("Yardi").  I submit this declaration in support of Defendants Yardi's and RentCafe, LLC's ("RentCafe") ("Yardi" and "RentCafe" referred to as "Defendants") Motion to Dismiss Plaintiffs' Class Action Complaint and the Request for Judicial Notice.  I have been Corporate Counsel with Yardi since December 2023.  Through my employment, I have personal knowledge of the facts set forth herein or have obtained such knowledge from persons with knowledge of the facts stated herein and kept in the course of Yardi's regularly conducted business activities.  If called as a sworn witness, I could competently testify as set forth below.[1]

2.      Yardi is a provider of cloud-based software for the real estate and property management industries.  It is the sole member/manager of RentCafe, LLC.  Yardi offers the RentCafe "Resident App" identified by the Complaint in this matter.  (*See* Compl., ¶ 2.)  Yardi's clients, such as property management companies, are licensed to use the RentCafe "Resident App" and offer the platform to their tenants.  Tenants can use the platform to pay their monthly rent to their property management companies, and are generally provided several options to make payment.  The property management companies can customize the user platform for their tenants, such as offering various payment methods, crafting disclaimer language shown to users, and other items that may be unique to the building that their tenants rent.

3.      Plaintiff Karen Picardi alleges she rented an apartment in Malden, Massachusetts from September 1, 2023, through January 16, 2025, and paid her rent each month via the RentCafe Resident app.  (Compl., ¶ 60.)  The property that Picardi rented during this time period was managed by Bell Partners, Inc.  Bell Partners, Inc. is a Yardi

---

[1] Any statements made herein are solely for the purpose of providing facts in support of the Removal and are not intended to waive any information that is protected by attorney-client privilege, work product doctrine, or any other applicable privilege.  Defendants reserve all rights.

client that uses Yardi's cloud-based software and offers its tenants a means to pay their monthly rent using the RentCafe Resident app. When a resident at a Bell Partners, Inc. property uses the RentCafe Resident App to pay rent, she encounters several screens with payment options and disclosures before finalizing payment. Attached hereto as **Exhibit A** is a true and correct copy of the screens that Picardi encountered on the RentCafe Resident App before she made any rent payment using the app.

4.    Plaintiff Phaness Mosley alleges she has rented an apartment in Chula Vista, California since June 2024, and paid her rent each month via the RentCafe Resident app. (Compl., ¶ 48.) The property that Mosley rents is managed by Essex Portfolio, LLC. Essex Portfolio, LLC is a Yardi client that uses Yardi's cloud-based software and offers its tenants a means to pay their monthly rent using the RentCafe Resident app. When a resident at Essex Portfolio, LLC property uses the RentCafe Resident App to pay rent, she encounters several screens with payment options and disclosures before finalizing payment. Attached hereto as **Exhibit B** is a is a true and correct copy of the screens Mosley encountered on the RentCafe Resident App before she made any rent payment using the app.

5.    Plaintiff William Foxx alleges he rented an apartment in Newark, New Jersey from September 1, 2022 through September 30, 2023, and paid his rent each month via the RentCafe Resident app. (Compl., ¶ 54.) The property that Foxx rented is managed by Gomes Management, LLC. Gomes Management, LLC is a Yardi client that uses Yardi's cloud-based software and offers its tenants a means to pay their monthly rent using the RentCafe Resident app. When a resident at a Gomes Management, LLC property uses the RentCafe Resident App to pay rent, he encounters several screens with payment options and disclosures before finalizing payment. Attached hereto as **Exhibit C** is a true and correct copy of the screens Foxx would have encountered on the RentCafe Resident App before a resident makes rent payments therein.

6.    Bell Partners, Inc. kept a Resident Ledger to record all charges and payments between it and Picardi.  Attached hereto as **Exhibit D** is a true and correct copy of the Bell Partners, Inc. Resident Ledger for Picardi.

7.    Essex Portfolio, LLC kept a Resident Ledger to record all charges and payments between it and residents in Mosley's apartment unit.  Attached hereto as **Exhibit E** is a true and correct copy of the Essex Portfolio, LLC Resident Ledger for Mosley's apartment unit.

8.    Gomes Management, LLC kept a Resident Ledger to record all charges and payments between it and residents in Foxx's apartment unit. Attached hereto as **Exhibit F** is a true and correct copy of the Gomes Management, LLC Resident Ledger for Foxx's apartment unit.

9.    On February 11, 2026, Defendants were served with a letter from Plaintiffs' counsel. Attached hereto as **Exhibit G** is a true and correct copy of the letter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st of May, 2026 in Santa Barbara, California.

_____
Alexa Bermudez

DECLARATION OF ALEXA BERMUDEZ

# EXHIBIT A







# EXHIBIT B







# EXHIBIT C



Logged in as: William Foxx - Roommate to Kayc Mesquita

## PAYMENTS

Make Payments    Recent Activity    Payment Accounts

### CURRENT BALANCE: -$3,900.00                    as of 4/17/2026                    PAY NOW

| Charge | Amount | Charged on |
|---|---|---|
| Security Deposit | -$3,900.00 | 12/4/2023 |

### HAVE QUESTIONS?

They may be answered in our FAQ pages for Debit Card, Bank Account and Credit Card

973 732 0125

GG Logo

ADMIN@GOMESGROUPLLC.COM



<< Back

## PAY BY CREDIT CARD

**$ MAKE ONE-TIME PAYMENT**

Residents have the option to pay by Visa, MasterCard, or American Express. The first step is to add your payment account details. You will need your card information handy. Once a payment account is set up, you can use it to make payments on your account.

We've contracted with a payment agent to process credit card payments on our behalf and to ensure the safety and security of your transaction. The payment agent charges a service fee of 2.95%, per credit card transaction. The service fee covers bank, payment agent, and processing network fees to ensure the safety and security of your transaction. Please understand your property management company does not receive any portion of these fees. The service fee will not display on your ledger. Service fee is non-refundable.

You should allow three banking days for payment to be withdrawn from your account.

### FREQUENTLY ASKED QUESTIONS

**Q: What credit cards are accepted?**
A: Most of our payment agents will accept MasterCard, Visa and American Express. Other cards may be accepted as well. The type of card accepted can vary by community or location.

**Q: Can I pay by credit card anytime?**
A: You can set up this payment option 24 hours a day, seven days a week through your resident portal account. The payment rules of your property will determine if you can make payments after their due date. Please note some properties do not accept late payments.

**Q: How do I set up payment by credit card?**
A: Login to your resident portal account and have your credit card information handy. After you enter your card information, you will have the option to make a one-time payment or setup a recurring, auto payment.

**Q: Is there a fee for using this payment option?**
A: Yes, there is a service fee for making a payment with a credit card. A fee of 2.95% will be charged with your payment.

Before you submit your payment, your review page will list all the charges for you to review, including the services fee.

## ONE-TIME PAYMENT



We've contracted with a payment agent to process bank account payments on our behalf and to ensure the safety and security of your transaction.

This program creates an authorized check from your bank account with the information you provide. This eliminates the responsibility of writing and mailing a payment to us. For your protection, the program is encrypted.

### FREQUENTLY ASKED QUESTIONS

**Q: How do I pay by bank account?**
**A:** Login to your resident account portal and have your bank account information handy. After you enter your bank account information, you can either make a one-time payment or setup an auto payment.

**Q: Can I pay by bank account anytime?**
**A:** You can set up this payment option 24 hours a day, seven days a week through your resident portal account. The payment rules of your property will determine if you can make payments after their due date. Please note some properties do not accept late payments.

**Q: What bank account types does the payment agent accept?**
**A:** The payment agent accepts checking and savings accounts.

**Q: To pay by bank account, what do I need?**
**A:** Login to your resident portal account and have your bank account information handy.

**Q: Is there a fee for using this payment option?**
**A:** No fee will be charged for Bank account payments.

**Q: When will payment be posted to my account?**
**A:** You should allow three banking days for payment to be withdrawn from your account. To avoid a late payment charge, please make your payment before midnight of the payment due date show on your bill.



## BANK ACCOUNTS

ADD BANK ACCOUNT

**If you click to add a bank account, you will be redirected to a third-party website** and must follow their instructions to verify your account. Once your account is verified, your bank account will appear as a payment option. Only your bank account and routing number are used to set up a verified bank account.

**If you do not wish to verify your bank account, or if your bank account is not listed** (not all banks are supported), please select another payment method or contact our office for other payment options.

Use the bank accounts listed below to make one-time payments.

| Account Holder Name | Bank Transit Number | Bank Account Number | Account Type | Delete |
|---|---|---|---|---|
| William Foxx | *****0021 | *****4353 | Checking | Delete |

Showing 1 to 1 of 1 entries

## CREDIT CARDS OR DEBIT CARDS

ADD CREDIT CARD    ADD DEBIT CARD

Use the credit cards or debit cards listed below to make one-time payments.

| Card Type | Card Number | Edit | Delete |
|---|---|---|---|

# EXHIBIT D

**Resident Ledger**

 Bell Partners

**Date: 02/16/2026**

| Code | t0420358 | Property | p2303 | Lease From | 09/01/2022 |
|---|---|---|---|---|---|
| Name | Karen Picardi | Unit | CR-2416 | Lease To | 08/31/2024 |
| Address | 100 Rivers Edge | Status | Past | Move In | 09/01/2022 |
| | unit 440 | Rent | 2235.00 | Move Out | 01/22/2025 |
| City | Medford, MA 02155 | Phone (H) | | Phone (W) | (617) 308-1161 |

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|---|
| 09/01/2022 | deposit | 04/2023 | Security Deposits | 500.00 | | 500.00 | 31983006 |
| 09/01/2022 | | 04/2023 | Security Deposits | | 500.00 | 0.00 | 11146328 |
| 04/03/2023 | | 04/2023 | chk# 9880 | | 5.25 | (5.25) | 11146664 |
| 05/01/2023 | rent | 05/2023 | Rent - MF (05/2023) | 2,235.00 | | 2,229.75 | 32165670 |
| 05/01/2023 | subw | 05/2023 | Sewer - 01/01/23-02/01/23 | 29.77 | | 2,259.52 | 32658582 |
| 05/01/2023 | subw | 05/2023 | Water - 01/01/23-02/01/23 | 33.64 | | 2,293.16 | 32658583 |
| 05/01/2023 | | 05/2023 | chk# 9534 Credit Card On-Line Payment ; Mobile App - Resident Services | | 271.00 | 2,022.16 | 11261062 |
| 05/10/2023 | parking | 05/2023 | Reserved or Covered Parking 22 days | 35.48 | | 2,057.64 | 32741122 |
| 06/01/2023 | rent | 06/2023 | Rent - MF (06/2023) | 2,235.00 | | 4,292.64 | 33023966 |
| 06/01/2023 | parking | 06/2023 | Reserved or Covered Parking (06/2023) | 50.00 | | 4,342.64 | 33023967 |
| 06/01/2023 | subw | 06/2023 | Sewer - 02/01/23-03/01/23 | 16.62 | | 4,359.26 | 33109631 |
| 06/01/2023 | subw | 06/2023 | Water - 02/01/23-03/01/23 | 17.98 | | 4,377.24 | 33109635 |
| 06/01/2023 | | 06/2023 | chk# 1750 Credit Card On-Line Payment ; Mobile App - Resident Services | | 235.00 | 4,142.24 | 11484684 |
| 06/30/2023 | | 07/2023 | chk# 9666 Credit Card On-Line Payment ; Mobile App - Resident Services | | 348.00 | 3,794.24 | 11684188 |
| 07/01/2023 | parking | 07/2023 | Reserved or Covered Parking (07/2023) | 50.00 | | 3,844.24 | 33797573 |
| 07/01/2023 | rent | 07/2023 | Rent - MF (07/2023) | 2,235.00 | | 6,079.24 | 33797574 |
| 07/01/2023 | subw | 07/2023 | Sewer - 03/01/23-04/01/23 | 41.99 | | 6,121.23 | 33930868 |
| 07/01/2023 | subw | 07/2023 | Water - 03/01/23-04/01/23 | 47.40 | | 6,168.63 | 33930869 |
| 07/24/2023 | | 08/2023 | chk# 4916 :CHECKscan Payment | | 2,029.00 | 4,139.63 | 11833045 |
| 08/01/2023 | parking | 08/2023 | Reserved or Covered Parking (08/2023) | 50.00 | | 4,189.63 | 34680032 |
| 08/01/2023 | rent | 08/2023 | Rent - MF (08/2023) | 2,235.00 | | 6,424.63 | 34680033 |
| 08/01/2023 | subw | 08/2023 | Sewer - 04/01/23-05/01/23 | 24.10 | | 6,448.73 | 34763655 |
| 08/01/2023 | subw | 08/2023 | Water - 04/01/23-05/01/23 | 27.26 | | 6,475.99 | 34763657 |
| 08/01/2023 | | 08/2023 | chk# 0578 Credit Card On-Line Payment ; Mobile App - Resident Services | | 257.00 | 6,218.99 | 11937920 |
| 08/04/2023 | | 08/2023 | chk# 4937 :CHECKscan Payment | | 2,029.00 | 4,189.99 | 11980385 |
| 09/01/2023 | rent | 09/2023 | Rent - MF (09/2023) | 2,235.00 | | 6,424.99 | 35506868 |
| 09/01/2023 | parking | 09/2023 | Reserved or Covered Parking (09/2023) | 50.00 | | 6,474.99 | 35506869 |
| 09/01/2023 | subw | 09/2023 | Sewer | 33.87 | | 6,508.86 | 35606150 |
| 09/01/2023 | subw | 09/2023 | Water | 38.62 | | 6,547.48 | 35606152 |
| 09/01/2023 | | 09/2023 | chk# 5571 Credit Card On-Line Payment ; Mobile App - Resident Services | | 330.00 | 6,217.48 | 12143265 |
| 09/12/2023 | | 09/2023 | chk# 5436 :CHECKscan Payment | | 2,074.00 | 4,143.48 | 12247775 |
| 10/01/2023 | parking | 10/2023 | Reserved or Covered Parking (10/2023) | 50.00 | | 4,193.48 | 36332939 |
| 10/01/2023 | rent | 10/2023 | Rent - MF (10/2023) | 2,235.00 | | 6,428.48 | 36332940 |
| 10/01/2023 | subw | 10/2023 | Sewer - 06/01/23-07/01/23 | 41.45 | | 6,469.93 | 36424626 |
| 10/01/2023 | subw | 10/2023 | Water - 06/01/23-07/01/23 | 47.41 | | 6,517.34 | 36424629 |
| 10/01/2023 | | 10/2023 | chk# 8989 Credit Card On-Line Payment ; Mobile App - Resident Services | | 340.00 | 6,177.34 | 12378345 |
| 10/04/2023 | | 10/2023 | chk# 5939 :CHECKscan Payment | | 2,074.00 | 4,103.34 | 12422249 |
| 10/16/2023 | | 10/2023 | chk# 2023 | | 2,029.00 | 2,074.34 | 12485505 |
| 10/16/2023 | | 10/2023 | chk# 2023 | | 2,029.00 | 45.34 | 12485507 |
| 11/01/2023 | parking | 11/2023 | Reserved or Covered Parking (11/2023) | 50.00 | | 95.34 | 37111911 |

| Date | Type | Period | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|---|
| 11/01/2023 | rent | 11/2023 | Rent - MF (11/2023) | 2,235.00 | | 2,330.34 | 37111912 |
| 11/01/2023 | subw | 11/2023 | Sewer - 07/01/23-08/01/23 | 32.29 | | 2,362.63 | 37222150 |
| 11/01/2023 | subw | 11/2023 | Water - 07/01/23-08/01/23 | 36.71 | | 2,399.31 | 37222158 |
| 11/03/2023 | | 11/2023 | chk# █9005 Credit Card On-Line Payment ; Mobile App - Resident Services | | 307.00 | 2,092.31 | 12628879 |
| 11/30/2023 | | 12/2023 | chk# █2770 | | 2,074.00 | 18.31 | 12778898 |
| 12/01/2023 | rent | 12/2023 | Rent - MF (12/2023) | 2,235.00 | | 2,253.31 | 37899410 |
| 12/01/2023 | parking | 12/2023 | Reserved or Covered Parking (12/2023) | 50.00 | | 2,303.31 | 37899411 |
| 12/01/2023 | subw | 12/2023 | Sewer - 08/01/23-09/01/23 | 28.24 | | 2,331.55 | 38006760 |
| 12/01/2023 | subw | 12/2023 | Water - 08/01/23-09/01/23 | 32.25 | | 2,363.80 | 38006763 |
| 12/02/2023 | | 12/2023 | chk# █2527 Credit Card On-Line Payment ; Mobile App - Resident Services | | 299.00 | 2,064.80 | 12828230 |
| 12/05/2023 | | 12/2023 | chk# █5993 | | 2,074.00 | (9.20) | 12859197 |
| 01/01/2024 | rent | 01/2024 | Rent - MF (01/2024) | 2,235.00 | | 2,225.80 | 38651923 |
| 01/01/2024 | parking | 01/2024 | Reserved or Covered Parking (01/2024) | 50.00 | | 2,275.80 | 38747278 |
| 01/01/2024 | subw | 01/2024 | Sewer - 09/01/23-10/01/23 | 18.05 | | 2,293.85 | 38795514 |
| 01/01/2024 | subw | 01/2024 | Water - 09/01/23-10/01/23 | 20.54 | | 2,314.39 | 38795522 |
| 01/01/2024 | | 01/2024 | chk# █9192 | | 2,074.00 | 240.39 | 13076110 |
| 01/03/2024 | | 01/2024 | chk# █4309 Credit Card On-Line Payment ; Mobile App - Resident Services | | 277.00 | (36.61) | 13033928 |
| 02/01/2024 | parking | 02/2024 | Reserved or Covered Parking (02/2024) | 50.00 | | 13.39 | 39450067 |
| 02/01/2024 | rent | 02/2024 | Rent - MF (02/2024) | 2,235.00 | | 2,248.39 | 39450068 |
| 02/01/2024 | subw | 02/2024 | Sewer - 10/01/23-11/01/23 | 21.41 | | 2,269.80 | 39573858 |
| 02/01/2024 | subw | 02/2024 | Water - 10/01/23-11/01/23 | 24.30 | | 2,294.10 | 39573860 |
| 02/01/2024 | | 02/2024 | chk# █0362 Credit Card On-Line Payment ; Mobile App - Resident Services | | 284.00 | 2,010.10 | 13216371 |
| 02/01/2024 | | 03/2024 | chk# █2421 Reapplied Receipt | | 2,074.00 | (63.90) | 13350388 |
| 03/01/2024 | rent | 03/2024 | Rent - MF (03/2024) | 2,235.00 | | 2,171.10 | 40195521 |
| 03/01/2024 | parking | 03/2024 | Reserved or Covered Parking 31 days | 50.00 | | 2,221.10 | 40753320 |
| 03/01/2024 | | 03/2024 | chk# █5683 | | 2,074.00 | 147.10 | 13439502 |
| 03/02/2024 | | 03/2024 | chk# █7734 Credit Card On-Line Payment ; Mobile App - Resident Services | | 238.00 | (90.90) | 13423290 |
| 04/01/2024 | rent | 04/2024 | Rent - MF (04/2024) | 2,235.00 | | 2,144.10 | 40914850 |
| 04/01/2024 | parking | 04/2024 | Reserved or Covered Parking (04/2024) | 50.00 | | 2,194.10 | 40914851 |
| 04/01/2024 | | 04/2024 | chk# █6000 | | 2,074.00 | 120.10 | 13659068 |
| 04/03/2024 | | 04/2024 | chk# █7171 Credit Card On-Line Payment ; Mobile App - Resident Services | | 148.00 | (27.90) | 13626339 |
| 05/01/2024 | parking | 05/2024 | Reserved or Covered Parking (05/2024) | 50.00 | | 22.10 | 41757332 |
| 05/01/2024 | rent | 05/2024 | Rent - MF (05/2024) | 2,235.00 | | 2,257.10 | 41757333 |
| 05/01/2024 | | 05/2024 | chk# █2166 | | 2,074.00 | 183.10 | 13852795 |
| 05/03/2024 | | 05/2024 | chk# █2461 Credit Card On-Line Payment ; Mobile App - Resident Services | | 188.00 | (4.90) | 13825319 |
| 06/01/2024 | parking | 06/2024 | Reserved or Covered Parking (06/2024) | 50.00 | | 45.10 | 42581325 |
| 06/01/2024 | rent | 06/2024 | Rent - MF (06/2024) | 2,235.00 | | 2,280.10 | 42581326 |
| 06/01/2024 | | 06/2024 | chk# █7150 Credit Card On-Line Payment ; Mobile App - Resident Services | | 238.00 | 2,042.10 | 14020583 |
| 06/01/2024 | | 06/2024 | chk# █6000 | | 2,074.00 | (31.90) | 14091522 |
| 07/01/2024 | parking | 07/2024 | Reserved or Covered Parking (07/2024) | 50.00 | | 18.10 | 43423550 |
| 07/01/2024 | rent | 07/2024 | Rent - MF (07/2024) | 2,235.00 | | 2,253.10 | 43423551 |
| 07/01/2024 | subw | 07/2024 | Sewer - 03/01/24-04/01/24 | 33.24 | | 2,286.34 | 43680261 |
| 07/01/2024 | subw | 07/2024 | Water - 03/01/24-04/01/24 | 37.67 | | 2,324.01 | 43680264 |
| 07/01/2024 | | 07/2024 | chk# █8709 | | 2,074.00 | 250.01 | 14233059 |
| 07/04/2024 | | 07/2024 | chk# █9657 Credit Card On-Line Payment ; Mobile App - Resident Services | | 188.01 | 62.00 | 14276190 |
| 08/01/2024 | rent | 08/2024 | Rent - MF (08/2024) | 2,235.00 | | 2,297.00 | 44194065 |
| 08/01/2024 | parking | 08/2024 | Reserved or Covered Parking (08/2024) | 50.00 | | 2,347.00 | 44194066 |
| 08/01/2024 | subw | 08/2024 | Sewer - 04/01/24-05/01/24 | 29.59 | | 2,376.59 | 44498896 |
| 08/01/2024 | subw | 08/2024 | Water - 04/01/24-05/01/24 | 33.53 | | 2,410.12 | 44498898 |
| 08/01/2024 | | 08/2024 | chk# █1989 | | 2,074.00 | 336.12 | 14514821 |
| 08/02/2024 | | 08/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 275.00 | 61.12 | 14491976 |
| 08/07/2024 | | 08/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 25.00 | 36.12 | 14532604 |

| Date | Code | Period | Description | Charge | Payment | Balance | Ref# |
|---|---|---|---|---|---|---|---|
| 08/30/2024 | | 09/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 36.12 | 0.00 | 14668038 |
| 09/01/2024 | rent | 09/2024 | Rent - MF (09/2024) :Reversed by Charge Ctrl# ███8882 | 4,155.00 | | 4,155.00 | 45091829 |
| 09/01/2024 | parking | 09/2024 | Reserved or Covered Parking (09/2024) | 50.00 | | 4,205.00 | 45091830 |
| 09/01/2024 | subw | 09/2024 | Sewer - 05/01/24-06/01/24 | 41.10 | | 4,246.10 | 45380245 |
| 09/01/2024 | subw | 09/2024 | Water - 05/01/24-06/01/24 | 46.58 | | 4,292.68 | 45380247 |
| 09/01/2024 | rent | 09/2024 | :Reverse Charge Ctrl# ███1829 Resident charged MTM rate. Housing reviewing increase. | (4,155.00) | | 137.68 | 45798882 |
| 09/01/2024 | rent | 09/2024 | Rent - MF | 2,235.00 | | 2,372.68 | 45798884 |
| 09/01/2024 | idep | 09/2024 | Interest Distribution as of 09/01/2024 | (1.83) | | 2,370.85 | 45835513 |
| 09/01/2024 | | 09/2024 | chk# ███5320 | | 2,074.00 | 296.85 | 14751591 |
| 09/03/2024 | | 09/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 300.00 | (3.15) | 14721251 |
| 09/03/2024 | | 09/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 2.68 | (5.83) | 14721253 |
| 10/01/2024 | rent | 10/2024 | Rent - MF (10/2024) | 2,235.00 | | 2,229.17 | 46050924 |
| 10/01/2024 | parking | 10/2024 | Reserved or Covered Parking (10/2024) | 50.00 | | 2,279.17 | 46050925 |
| 10/01/2024 | subw | 10/2024 | Sewer - 06/01/24-07/01/24 | 28.54 | | 2,307.71 | 46387701 |
| 10/01/2024 | subw | 10/2024 | Water - 06/01/24-07/01/24 | 32.52 | | 2,340.23 | 46387706 |
| 10/01/2024 | | 10/2024 | chk# ███2024 | | 2,074.00 | 266.23 | 14977899 |
| 10/03/2024 | | 10/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 270.00 | (3.77) | 14940941 |
| 11/01/2024 | parking | 11/2024 | Reserved or Covered Parking (11/2024) | 50.00 | | 46.23 | 46870319 |
| 11/01/2024 | rent | 11/2024 | Rent - MF (11/2024) | 2,235.00 | | 2,281.23 | 46870320 |
| 11/01/2024 | subw | 11/2024 | Sewer - 07/01/24-08/01/24 | 45.00 | | 2,326.23 | 47232697 |
| 11/01/2024 | subw | 11/2024 | Water - 07/01/24-08/01/24 | 68.78 | | 2,395.01 | 47232698 |
| 11/01/2024 | | 11/2024 | chk# ███2013 | | 2,074.00 | 321.01 | 15160446 |
| 11/02/2024 | latefee | 01/2025 | Late Charges - MF, 5% of $2235.00 :Reversed by Charge Ctrl# ███4478 | 111.75 | | 432.76 | 49266776 |
| 11/05/2024 | | 11/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 100.00 | 332.76 | 15169262 |
| 11/14/2024 | rentins | 11/2024 | Renters Insurance Fees | 15.00 | | 347.76 | 47605267 |
| 11/14/2024 | rentins | 12/2024 | Resident has an active insurance policy on file. | (15.00) | | 332.76 | 48440615 |
| 11/28/2024 | | 12/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 100.00 | 232.76 | 15287372 |
| 12/01/2024 | rent | 12/2024 | Rent - MF (12/2024) | 2,235.00 | | 2,467.76 | 47651856 |
| 12/01/2024 | parking | 12/2024 | Reserved or Covered Parking (12/2024) | 50.00 | | 2,517.76 | 47651857 |
| 12/01/2024 | rentins | 12/2024 | Renters Insurance Fees (12/2024) | 15.00 | | 2,532.76 | 47651858 |
| 12/01/2024 | subw | 12/2024 | Sewer - 08/01/24-09/01/24 | 27.18 | | 2,559.94 | 48100009 |
| 12/01/2024 | subw | 12/2024 | Water - 08/01/24-09/01/24 | 31.06 | | 2,591.00 | 48100011 |
| 12/01/2024 | rentins | 12/2024 | Resident has an active insurance policy on file. | (15.00) | | 2,576.00 | 48440617 |
| 12/01/2024 | | 12/2024 | chk# ███25412 | | 2,074.00 | 502.00 | 15377591 |
| 12/04/2024 | | 12/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 20.25 | 481.75 | 15367450 |
| 12/04/2024 | | 12/2024 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 200.00 | 281.75 | 15368295 |
| 01/01/2025 | rent | 01/2025 | Rent - MF (01/2025) 16 days | 1,153.55 | | 1,435.30 | 48521326 |
| 01/01/2025 | parking | 01/2025 | Reserved or Covered Parking (01/2025) 16 days | 25.81 | | 1,461.11 | 48521327 |
| 01/01/2025 | rentins | 01/2025 | Renters Insurance Fees (01/2025) 16 days :Reversed by Charge Ctrl# ███5149 | 7.74 | | 1,468.85 | 48521328 |
| 01/01/2025 | subw | 01/2025 | Sewer - 09/01/24-10/01/24 | 29.11 | | 1,497.96 | 48821479 |
| 01/01/2025 | subw | 01/2025 | Water - 09/01/24-10/01/24 | 33.16 | | 1,531.12 | 48821484 |
| 01/01/2025 | | 02/2025 | chk# ███8801 Reapplied Receipt | | 2,074.00 | (542.88) | 15686171 |
| 01/07/2025 | latefee | 01/2025 | :Reverse Charge Ctrl# ███6776 | (111.75) | | (654.63) | 49294478 |
| 01/07/2025 | rentins | 01/2025 | :Reverse Charge Ctrl# ███1328 | (7.74) | | (662.37) | 49295149 |
| 01/24/2025 | subw | 02/2025 | Final Sewer - 11/02/24-12/02/24 | 51.40 | | (610.97) | 49656379 |
| 01/24/2025 | subw | 02/2025 | Final Sewer - 12/02/24-01/02/25 | 53.11 | | (557.86) | 49656380 |
| 01/24/2025 | subw | 02/2025 | Final Sewer - 01/02/25-01/22/25 | 34.27 | | (523.59) | 49656381 |
| 01/24/2025 | subw | 02/2025 | Sewer - 10/01/24-11/01/24 | 45.00 | | (478.59) | 49656382 |
| 01/24/2025 | subw | 02/2025 | Final Water - 11/02/24-12/02/24 | 58.30 | | (420.29) | 49656383 |
| 01/24/2025 | subw | 02/2025 | Final Water - 12/02/24-01/02/25 | 60.24 | | (360.05) | 49656384 |
| 01/24/2025 | subw | 02/2025 | Final Water - 01/02/25-01/22/25 | 38.87 | | (321.18) | 49656385 |
| 01/24/2025 | subw | 02/2025 | Water - 10/01/24-11/01/24 | 67.14 | | (254.04) | 49656386 |

Case 2:26-cv-03318-WLH-BFM   Document 18-3   Filed 05/01/26   Page 23 of 71   Page ID #:195

| Date | Type | Period | Description | | | | Ref |
|------|------|--------|-------------|---|---|---|-----|
| 02/01/2025 | deposit | 02/2025 | :Deposit - MF credit | (500.00) | | (754.04) | 50169330 |
| 02/01/2025 | rent | 02/2025 | Rent - MF (01/2025) 6 days | 432.58 | | (321.46) | 50169331 |
| 02/01/2025 | parking | 02/2025 | Reserved or Covered Parking (01/2025) 6 days | 9.67 | | (311.79) | 50169332 |
| 02/01/2025 | rentins | 02/2025 | Renters Insurance Fees (01/2025) 6 days | 2.91 | | (308.88) | 50169333 |
| 02/01/2025 | idep | 02/2025 | :Deposit Interest Charge | (0.37) | | (309.25) | 50169334 |
| 02/01/2025 | refnddep | 02/2025 | Amount to be refunded | 309.25 | | 0.00 | 50169335 |
| 02/01/2025 | rentins | 02/2025 | Renters Insurance Fees | (2.91) | | (2.91) | 50169353 |
| 02/01/2025 | refnddep | 02/2025 | Adjustment to amount to be refunded | 2.91 | | 0.00 | 50169354 |
| 02/01/2025 | | 02/2025 | Move out refund (Payable) | (312.16) | | (312.16) | 7523120 |
| 02/05/2025 | | 02/2025 | Chk# 2747 to payable | | (312.16) | 0.00 | 3789198 |

# EXHIBIT E

# Resident Ledger

**Date: 04/14/2026**

| Code | t0528617 | Property | san1193 | Lease From | 06/09/2025 |
|---|---|---|---|---|---|
| Name | Aydai Palmer | Unit | 340 | Lease To | 06/08/2026 |
| Address | 1304 SANTA YNEZ #340 | Status | Current | Move In | 06/09/2023 |
| | | Rent | 3633.00 | Move Out | |
| City | Chula Vista, CA 91913 | Phone (H) | | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 06/09/2023 | dpse | Deposit | 600.00 | | 600.00 | 36427115 |
| 06/09/2023 | rent | Rent for 22 days | 2,618.73 | | 3,218.73 | 36427116 |
| 06/20/2023 | sdcl | Transfer Credit from unit #█████3751 | (3,330.20) | | (111.47) | 36456131 |
| 07/01/2023 | getcov | Fees: Insurance Non-Compliance | 9.37 | | (102.10) | 36442995 |
| 07/01/2023 | rent | Rent (07/2023) | 3,571.00 | | 3,468.90 | 36809375 |
| 07/01/2023 | | chk# █████4290 Debit Card On-Line Payment ; Mobile App - Resident Services | | 1,735.00 | 1,733.90 | 18674322 |
| 07/02/2023 | | chk# █████4429 Debit Card On-Line Payment ; Mobile App - Resident Services | | 1,733.90 | 0.00 | 18691840 |
| 08/01/2023 | rbufe | Admin Fee - 06/03/23-06/30/23 | 5.00 | | 5.00 | 36996717 |
| 08/01/2023 | rbs | Sewer - 06/03/23-06/30/23 | 22.92 | | 27.92 | 36996720 |
| 08/01/2023 | rbtra | Trash - 06/03/23-06/30/23 | 23.39 | | 51.31 | 36996723 |
| 08/01/2023 | rbw | Water - 06/03/23-06/30/23 | 34.09 | | 85.40 | 36996726 |
| 08/01/2023 | rent | Rent (08/2023) | 3,571.00 | | 3,656.40 | 37244845 |
| 08/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 3,656.40 | 0.00 | 18820458 |
| 09/01/2023 | rbufe | Admin Fee - 07/01/23-07/31/23 | 5.00 | | 5.00 | 37443380 |
| 09/01/2023 | rbs | Sewer - 07/01/23-07/31/23 | 26.40 | | 31.40 | 37443384 |
| 09/01/2023 | rbtra | Trash - 07/01/23-07/31/23 | 24.54 | | 55.94 | 37443385 |
| 09/01/2023 | rbw | Water - 07/01/23-07/31/23 | 39.56 | | 95.50 | 37443388 |
| 09/01/2023 | rent | Rent (09/2023) | 3,571.00 | | 3,666.50 | 37686484 |
| 09/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 650.00 | 3,016.50 | 18949930 |
| 09/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,016.50 | 0.00 | 18957858 |
| 10/01/2023 | rbufe | Admin Fee - 08/01/23-08/31/23 | 5.00 | | 5.00 | 37908724 |
| 10/01/2023 | rbs | Sewer - 08/01/23-08/31/23 | 26.38 | | 31.38 | 37908727 |
| 10/01/2023 | rbtra | Trash - 08/01/23-08/31/23 | 32.37 | | 63.75 | 37908730 |
| 10/01/2023 | rbw | Water - 08/01/23-08/31/23 | 35.63 | | 99.38 | 37908733 |
| 10/01/2023 | rent | Rent (10/2023) | 3,571.00 | | 3,670.38 | 38132432 |
| 10/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,670.38 | 0.00 | 19085898 |
| 11/01/2023 | rbufe | Admin Fee - 09/01/23-09/30/23 | 5.00 | | 5.00 | 38347272 |
| 11/01/2023 | rbs | Sewer - 09/01/23-09/30/23 | 30.86 | | 35.86 | 38347275 |
| 11/01/2023 | rbtra | Trash - 09/01/23-09/30/23 | 31.61 | | 67.47 | 38347276 |
| 11/01/2023 | rbw | Water - 09/01/23-09/30/23 | 41.53 | | 109.00 | 38347278 |
| 11/01/2023 | rent | Rent (11/2023) | 3,571.00 | | 3,680.00 | 38588235 |
| 11/01/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,680.00 | 0.00 | 19204109 |
| 12/01/2023 | rbufe | Admin Fee - 10/01/23-10/31/23 | 5.00 | | 5.00 | 38787551 |
| 12/01/2023 | rbs | Sewer - 10/01/23-10/31/23 | 28.38 | | 33.38 | 38787554 |
| 12/01/2023 | rbtra | Trash - 10/01/23-10/31/23 | 31.68 | | 65.06 | 38787562 |
| 12/01/2023 | rbw | Water - 10/01/23-10/31/23 | 38.02 | | 103.08 | 38787564 |
| 12/01/2023 | rent | Rent (12/2023) | 3,571.00 | | 3,674.08 | 39031195 |
| 12/01/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,674.08 | 0.00 | 19342498 |
| 01/01/2024 | rbufe | Admin Fee - 11/01/23-11/30/23 | 5.00 | | 5.00 | 39231189 |
| 01/01/2024 | rbs | Sewer - 11/01/23-11/30/23 | 27.58 | | 32.58 | 39231192 |
| 01/01/2024 | rbtra | Trash - 11/01/23-11/30/23 | 31.51 | | 64.09 | 39231195 |
| 01/01/2024 | rbw | Water - 11/01/23-11/30/23 | 36.88 | | 100.97 | 39231199 |
| 01/01/2024 | rent | Rent (01/2024) | 3,571.00 | | 3,671.97 | 39483450 |
| 01/02/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,671.97 | 0.00 | 19540011 |
| 02/01/2024 | rbufe | Admin Fee - 12/01/23-12/31/23 | 5.00 | | 5.00 | 39823571 |
| 02/01/2024 | rbs | Sewer - 12/01/23-12/31/23 | 32.70 | | 37.70 | 39823572 |
| 02/01/2024 | rbtra | Trash - 12/01/23-12/31/23 | 33.56 | | 71.26 | 39823574 |
| 02/01/2024 | rbw | Water - 12/01/23-12/31/23 | 44.18 | | 115.44 | 39823575 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 02/01/2024 | rent | Rent (02/2024) | 3,571.00 | | 3,686.44 | 40052445 |
| 02/01/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,686.44 | 0.00 | 19747793 |
| 03/01/2024 | rbufe | Admin Fee - 01/01/24-01/31/24 | 5.00 | | 5.00 | 40410762 |
| 03/01/2024 | rbs | Sewer - 01/01/24-01/31/24 | 26.51 | | 31.51 | 40410763 |
| 03/01/2024 | rbtra | Trash - 01/01/24-01/31/24 | 20.91 | | 52.42 | 40410764 |
| 03/01/2024 | rbw | Water - 01/01/24-01/31/24 | 35.25 | | 87.67 | 40410765 |
| 03/01/2024 | rent | Rent (03/2024) | 3,571.00 | | 3,658.67 | 40495788 |
| 03/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile App - Resident Services | | 3,658.67 | 0.00 | 19908988 |
| 03/29/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Aydai Palmer (███6624). | | 100.95 | (100.95) | 19966935 |
| 04/01/2024 | rbufe | Admin Fee - 02/01/24-02/29/24 | 5.00 | | (95.95) | 40714385 |
| 04/01/2024 | rbs | Sewer - 02/01/24-02/29/24 | 29.34 | | (66.61) | 40714388 |
| 04/01/2024 | rbtra | Trash - 02/01/24-02/29/24 | 24.74 | | (41.87) | 40714391 |
| 04/01/2024 | rbw | Water - 02/01/24-02/29/24 | 41.87 | | 0.00 | 40714394 |
| 04/01/2024 | rent | Rent (04/2024) | 3,571.00 | | 3,571.00 | 40936642 |
| 04/01/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Aydai Palmer (███6624). | | 3,571.00 | 0.00 | 20000711 |
| 04/30/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Aydai Palmer (███6624). | | 99.34 | (99.34) | 20095953 |
| 05/01/2024 | rbufe | Admin Fee - 03/01/24-03/31/24 | 5.00 | | (94.34) | 41153359 |
| 05/01/2024 | rbs | Sewer - 03/01/24-03/31/24 | 31.01 | | (63.33) | 41153363 |
| 05/01/2024 | rbtra | Trash - 03/01/24-03/31/24 | 18.86 | | (44.47) | 41153366 |
| 05/01/2024 | rbw | Water - 03/01/24-03/31/24 | 44.47 | | 0.00 | 41153369 |
| 05/01/2024 | rent | Rent (05/2024) | 3,571.00 | | 3,571.00 | 41386493 |
| 05/01/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Aydai Palmer (███6624). | | 3,571.00 | 0.00 | 20129072 |
| 06/01/2024 | rbufe | Admin Fee - 04/01/24-04/30/24 | 5.00 | | 5.00 | 41578947 |
| 06/01/2024 | rbs | Sewer - 04/01/24-04/30/24 | 29.43 | | 34.43 | 41578950 |
| 06/01/2024 | rbtra | Trash - 04/01/24-04/30/24 | 18.86 | | 53.29 | 41578954 |
| 06/01/2024 | rbw | Water - 04/01/24-04/30/24 | 42.22 | | 95.51 | 41578958 |
| 06/01/2024 | rent | Rent (06/2024) | 3,571.00 | | 3,666.51 | 41847111 |
| 06/02/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Paid by Roommate Aydai Palmer (███6624). | | 3,666.51 | 0.00 | 20298458 |
| 06/09/2024 | rent | June Rent: Pro-Rated Charge Adjustment | 45.47 | | 45.47 | 41902243 |
| 06/25/2024 | feap | Application Fee (Phaness Mosley) | 48.00 | | 93.47 | 42212885 |
| 06/25/2024 | | chk#███████0000 ch_3PVjLwAlEGRSPHp62uxFiCQ3 Stripe Payment ; Roommate Phaness Mosley None ; Funnel Online Leasing | | 48.00 | 45.47 | 20360305 |
| 07/01/2024 | rbufe | Admin Fee - 05/01/24-05/31/24 | 5.00 | | 50.47 | 42212260 |
| 07/01/2024 | rbs | Sewer - 05/01/24-05/31/24 | 23.25 | | 73.72 | 42212261 |
| 07/01/2024 | rbtra | Trash - 05/01/24-05/31/24 | 44.58 | | 118.30 | 42212262 |
| 07/01/2024 | rbw | Water - 05/01/24-05/31/24 | 33.14 | | 151.44 | 42212263 |
| 07/01/2024 | rent | Rent (07/2024) | 3,633.00 | | 3,784.44 | 42307247 |
| 07/03/2024 | | chk# ███2860 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,851.44 | 933.00 | 20472564 |
| 07/10/2024 | | chk# ███7841 Credit Card On-Line Payment ; Mobile App - Resident Services | | 933.00 | 0.00 | 20498105 |
| 07/29/2024 | | chk# ███3547 Credit Card On-Line Payment ; Mobile App - Resident Services | | 106.51 | (106.51) | 20536758 |
| 07/31/2024 | | chk# ███2340 Credit Card On-Line Payment ; Roommate Phaness Mosley (███7973) ; Mobile App - Resident Services | | 1,800.00 | (1,906.51) | 20542309 |
| 07/31/2024 | | chk# 250213847 Debit Card On-Line Payment ; Roommate Phaness Mosley (███7973) ; Mobile App - Resident Services | | 1,800.00 | (3,706.51) | 20542317 |
| 08/01/2024 | rbufe | Admin Fee - 06/01/24-06/30/24 | 5.00 | | (3,701.51) | 42516677 |
| 08/01/2024 | rbs | Sewer - 06/01/24-06/30/24 | 23.54 | | (3,677.97) | 42516678 |
| 08/01/2024 | rbtra | Trash - 06/01/24-06/30/24 | 43.88 | | (3,634.09) | 42516679 |
| 08/01/2024 | rbw | Water - 06/01/24-06/30/24 | 34.09 | | (3,600.00) | 42516680 |
| 08/01/2024 | rent | Rent (08/2024) | 3,633.00 | | 33.00 | 42766404 |
| 08/02/2024 | | chk#███5015 Credit Card On-Line Payment ; Roommate Phaness Mosley (███7973) ; Mobile App - Resident Services | | 33.00 | 0.00 | 20603611 |
| 08/27/2024 | | chk#███1591 Credit Card On-Line Payment ; Mobile App - Resident Services | | 1,800.00 | (1,800.00) | 20756394 |
| 08/28/2024 | | chk#███3491 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 1,700.00 | (3,500.00) | 20758834 |
| 08/29/2024 | | chk#███3295 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 258.00 | (3,758.00) | 20759582 |
| 09/01/2024 | rbufe | Admin Fee - 07/01/24-07/31/24 | 5.00 | | (3,753.00) | 43025108 |
| 09/01/2024 | rbs | Sewer - 07/01/24-07/31/24 | 26.21 | | (3,726.79) | 43025113 |
| 09/01/2024 | rbtra | Trash - 07/01/24-07/31/24 | 45.07 | | (3,681.72) | 43025118 |
| 09/01/2024 | rbw | Water - 07/01/24-07/31/24 | 37.59 | | (3,644.13) | 43025122 |

| Date | Code | Description | Charge | Payment | Balance | ID |
|---|---|---|---|---|---|---|
| 09/01/2024 | rent | Rent (09/2024) | 3,633.00 | | (11.13) | 43281657 |
| 09/26/2024 | | chk# ___ Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,945.67 | (1,956.80) | 20893079 |
| 10/01/2024 | rbufe | Admin Fee - 08/01/24-08/31/24 | 5.00 | | (1,951.80) | 43485248 |
| 10/01/2024 | rbs | Sewer - 08/01/24-08/31/24 | 30.87 | | (1,920.93) | 43485251 |
| 10/01/2024 | rbtra | Trash - 08/01/24-08/31/24 | 123.03 | | (1,797.90) | 43485254 |
| 10/01/2024 | rbw | Water - 08/01/24-08/31/24 | 41.04 | | (1,756.86) | 43485257 |
| 10/01/2024 | rent | Rent (10/2024) | 3,633.00 | | 1,876.14 | 43731146 |
| 10/01/2024 | | chk# ___5253 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 1,876.14 | 0.00 | 20939376 |
| 10/30/2024 | | chk# ___0350 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 122.05 | (122.05) | 21043079 |
| 10/30/2024 | | chk# ___0464 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,800.00 | (1,922.05) | 21043080 |
| 11/01/2024 | rbufe | Admin Fee - 09/01/24-09/30/24 | 5.00 | | (1,917.05) | 43932422 |
| 11/01/2024 | rbs | Sewer - 09/01/24-09/30/24 | 30.78 | | (1,886.27) | 43932424 |
| 11/01/2024 | rbtra | Trash - 09/01/24-09/30/24 | 45.38 | | (1,840.89) | 43932426 |
| 11/01/2024 | rbw | Water - 09/01/24-09/30/24 | 40.89 | | (1,800.00) | 43932429 |
| 11/01/2024 | rent | Rent (11/2024) | 3,633.00 | | 1,833.00 | 44180320 |
| 11/01/2024 | | chk# ___3003 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 1,833.00 | 0.00 | 21074894 |
| 11/29/2024 | | chk# ___2813 Debit Card On-Line Payment ; Web - Resident Services | | 1,850.00 | (1,850.00) | 21190841 |
| 11/30/2024 | | chk# ___3568 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,729.38 | (3,579.38) | 21195788 |
| 12/01/2024 | rbufe | Admin Fee - 10/01/24-10/31/24 | 5.00 | | (3,574.38) | 44459662 |
| 12/01/2024 | rbs | Sewer - 10/01/24-10/31/24 | 29.51 | | (3,544.87) | 44459665 |
| 12/01/2024 | rbtra | Trash - 10/01/24-10/31/24 | 47.24 | | (3,497.63) | 44459668 |
| 12/01/2024 | rbw | Water - 10/01/24-10/31/24 | 38.87 | | (3,458.76) | 44459671 |
| 12/01/2024 | rent | Rent (12/2024) | 3,633.00 | | 174.24 | 44622054 |
| 12/01/2024 | | chk# ___7510 Debit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 174.24 | 0.00 | 21254292 |
| 01/01/2025 | rbufe | Admin Fee - 11/01/24-11/30/24 | 5.00 | | 5.00 | 44810523 |
| 01/01/2025 | rbs | Sewer - 11/01/24-11/30/24 | 32.25 | | 37.25 | 44810524 |
| 01/01/2025 | rbtra | Trash - 11/01/24-11/30/24 | 45.25 | | 82.50 | 44810525 |
| 01/01/2025 | rbw | Water - 11/01/24-11/30/24 | 42.28 | | 124.78 | 44810526 |
| 01/01/2025 | rent | Rent (01/2025) | 3,633.00 | | 3,757.78 | 45075792 |
| 01/01/2025 | | chk# ___3811 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,735.27 | 2,022.51 | 21480995 |
| 01/01/2025 | | chk# ___5463 Debit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 65.00 | 1,957.51 | 21481012 |
| 01/02/2025 | | chk# ___3591 Debit Card On-Line Payment ; Web - Resident Services | | 1,957.51 | 0.00 | 21506612 |
| 01/28/2025 | | chk# ___2872 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,860.00 | (1,860.00) | 21587069 |
| 01/31/2025 | | chk# ___3984 Debit Card On-Line Payment ; Web - Resident Services | | 1,890.51 | (3,750.51) | 21611252 |
| 02/01/2025 | rbufe | Admin Fee - 12/01/24-12/31/24 | 5.00 | | (3,745.51) | 45255404 |
| 02/01/2025 | rbs | Sewer - 12/01/24-12/31/24 | 29.04 | | (3,716.47) | 45255405 |
| 02/01/2025 | rbtra | Trash - 12/01/24-12/31/24 | 45.51 | | (3,670.96) | 45255407 |
| 02/01/2025 | rbw | Water - 12/01/24-12/31/24 | 37.96 | | (3,633.00) | 45255409 |
| 02/01/2025 | rent | Rent (02/2025) | 3,633.00 | | 0.00 | 45522384 |
| 02/28/2025 | | chk# ___2038 Debit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,912.00 | (1,912.00) | 21742933 |
| 03/01/2025 | rbufe | Admin Fee - 01/01/25-01/31/25 | 5.00 | | (1,907.00) | 45703247 |
| 03/01/2025 | rbs | Sewer - 01/01/25-01/31/25 | 30.79 | | (1,876.21) | 45703250 |
| 03/01/2025 | rbtra | Trash - 01/01/25-01/31/25 | 45.89 | | (1,830.32) | 45703252 |
| 03/01/2025 | rbw | Water - 01/01/25-01/31/25 | 40.52 | | (1,789.80) | 45703255 |
| 03/01/2025 | rent | Rent (03/2025) | 3,633.00 | | 1,843.20 | 45966960 |
| 03/01/2025 | | chk# ___3546 Debit Card On-Line Payment ; Web - Resident Services | | 1,843.20 | 0.00 | 21770817 |
| 03/27/2025 | | chk# ___7731 Credit Card On-Line Payment ; Roommate Phaness Mosley (___7973) ; Mobile App - Resident Services | | 1,880.00 | (1,880.00) | 21881771 |
| 04/01/2025 | rbufe | Admin Fee - 02/01/25-02/28/25 | 5.00 | | (1,875.00) | 46144105 |
| 04/01/2025 | rbs | Sewer - 02/01/25-02/28/25 | 32.58 | | (1,842.42) | 46144107 |
| 04/01/2025 | rbtra | Trash - 02/01/25-02/28/25 | 45.68 | | (1,796.74) | 46144109 |
| 04/01/2025 | rbw | Water - 02/01/25-02/28/25 | 42.81 | | (1,753.93) | 46144110 |
| 04/01/2025 | rent | Rent (04/2025) | 3,633.00 | | 1,879.07 | 46416774 |
| 04/01/2025 | | chk# ___2245 Debit Card On-Line Payment ; Web - Resident Services | | 1,879.07 | 0.00 | 21935994 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 05/01/2025 | rbufe | Admin Fee - 03/01/25-03/31/25 | 5.00 | | 5.00 | 46594064 |
| 05/01/2025 | rbs | Sewer - 03/01/25-03/31/25 | 29.72 | | 34.72 | 46594066 |
| 05/01/2025 | rbtra | Trash - 03/01/25-03/31/25 | 45.54 | | 80.26 | 46594068 |
| 05/01/2025 | rbw | Water - 03/01/25-03/31/25 | 37.80 | | 118.06 | 46594070 |
| 05/01/2025 | rent | Rent (05/2025) | 3,633.00 | | 3,751.06 | 46866642 |
| 05/01/2025 | | chk# 4460 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,900.00 | 1,851.06 | 22055269 |
| 05/03/2025 | | chk# 1652 Debit Card On-Line Payment ; Web - Resident Services | | 1,851.06 | 0.00 | 22078847 |
| 05/28/2025 | | chk# 7514 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,912.00 | (1,912.00) | 22149847 |
| 06/01/2025 | rbufe | Admin Fee - 04/01/25-04/30/25 | 5.00 | | (1,907.00) | 47041297 |
| 06/01/2025 | rbs | Sewer - 04/01/25-04/30/25 | 29.45 | | (1,877.55) | 47041299 |
| 06/01/2025 | rbtra | Trash - 04/01/25-04/30/25 | 44.99 | | (1,832.56) | 47041301 |
| 06/01/2025 | rbw | Water - 04/01/25-04/30/25 | 41.83 | | (1,790.73) | 47041302 |
| 06/01/2025 | rent | Rent (06/2025) | 3,633.00 | | 1,842.27 | 47326677 |
| 06/01/2025 | | chk# 2113 Debit Card On-Line Payment ; Web - Resident Services | | 1,842.27 | 0.00 | 22190147 |
| 06/26/2025 | | chk# 3591 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,900.00 | (1,900.00) | 22300393 |
| 06/27/2025 | | chk# 9552 Debit Card On-Line Payment ; Web - Resident Services | | 1,700.00 | (3,600.00) | 22303504 |
| 07/01/2025 | rbufe | Admin Fee - 05/01/25-05/31/25 | 5.00 | | (3,595.00) | 47502730 |
| 07/01/2025 | rbs | Sewer - 05/01/25-05/31/25 | 28.57 | | (3,566.43) | 47502731 |
| 07/01/2025 | rbtra | Trash - 05/01/25-05/31/25 | 45.34 | | (3,521.09) | 47502732 |
| 07/01/2025 | rbw | Water - 05/01/25-05/31/25 | 40.98 | | (3,480.11) | 47502733 |
| 07/01/2025 | rent | Rent (07/2025) | 3,633.00 | | 152.89 | 47790042 |
| 07/01/2025 | | chk# 2781 Debit Card On-Line Payment ; Web - Resident Services | | 152.89 | 0.00 | 22338383 |
| 07/09/2025 | inot | Garage remote replacement | 75.00 | | 75.00 | 47850833 |
| 07/10/2025 | | chk# 1017 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 75.00 | 0.00 | 22399986 |
| 07/29/2025 | | chk# 3777 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,900.00 | (1,900.00) | 22437728 |
| 07/31/2025 | | chk# 4353 Debit Card On-Line Payment ; Web - Resident Services | | 1,850.00 | (3,750.00) | 22442708 |
| 08/01/2025 | rbufe | Admin Fee - 06/01/25-06/30/25 | 6.11 | | (3,743.89) | 47982763 |
| 08/01/2025 | rbs | Sewer - 06/01/25-06/30/25 | 31.08 | | (3,712.81) | 47982764 |
| 08/01/2025 | rbtra | Trash - 06/01/25-06/30/25 | 45.92 | | (3,666.89) | 47982765 |
| 08/01/2025 | rbw | Water - 06/01/25-06/30/25 | 44.11 | | (3,622.78) | 47982766 |
| 08/01/2025 | rent | Rent (08/2025) | 3,633.00 | | 10.22 | 48250248 |
| 08/26/2025 | | chk# 1059 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,933.33 | (1,923.11) | 22562801 |
| 08/29/2025 | | chk# 2721 Debit Card On-Line Payment ; Web - Resident Services | | 1,825.00 | (3,748.11) | 22568487 |
| 09/01/2025 | rbufe | Admin Fee - 07/01/25-07/31/25 | 6.11 | | (3,742.00) | 48442565 |
| 09/01/2025 | rbs | Sewer - 07/01/25-07/31/25 | 29.61 | | (3,712.39) | 48442568 |
| 09/01/2025 | rbtra | Trash - 07/01/25-07/31/25 | 45.17 | | (3,667.22) | 48442571 |
| 09/01/2025 | rbw | Water - 07/01/25-07/31/25 | 41.97 | | (3,625.25) | 48442575 |
| 09/01/2025 | rent | Rent (09/2025) | 3,633.00 | | 7.75 | 48707323 |
| 09/03/2025 | | chk# 3529 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 7.75 | 0.00 | 22636221 |
| 09/26/2025 | | chk# 2944 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,934.00 | (1,934.00) | 22885216 |
| 09/30/2025 | | chk# 1471 Debit Card On-Line Payment ; Web - Resident Services | | 1,800.00 | (3,734.00) | 22891613 |
| 10/01/2025 | rbufe | Admin Fee - 08/01/25-08/31/25 | 6.11 | | (3,727.89) | 48921135 |
| 10/01/2025 | rbs | Sewer - 08/01/25-08/31/25 | 34.49 | | (3,693.40) | 48921136 |
| 10/01/2025 | rbtra | Trash - 08/01/25-08/31/25 | 45.88 | | (3,647.52) | 48921137 |
| 10/01/2025 | rbw | Water - 08/01/25-08/31/25 | 48.01 | | (3,599.51) | 48921138 |
| 10/01/2025 | rent | Rent (10/2025) | 3,633.00 | | 33.49 | 49189288 |
| 10/03/2025 | | chk# 9781 Debit Card On-Line Payment ; Web - Resident Services | | 33.49 | 0.00 | 22962923 |
| 11/01/2025 | rbufe | Admin Fee - 09/01/25-09/30/25 | 6.11 | | 6.11 | 49373448 |
| 11/01/2025 | rbs | Sewer - 09/01/25-09/30/25 | 29.71 | | 35.82 | 49373449 |
| 11/01/2025 | rbtra | Trash - 09/01/25-09/30/25 | 46.73 | | 82.55 | 49373450 |
| 11/01/2025 | rbw | Water - 09/01/25-09/30/25 | 41.12 | | 123.67 | 49373451 |
| 11/01/2025 | rent | Rent (11/2025) | 3,633.00 | | 3,756.67 | 49643417 |
| 11/01/2025 | | chk# 3890 Credit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,900.00 | 1,856.67 | 23067246 |
| 11/04/2025 | | chk# 2597 Debit Card On-Line Payment ; Web - Resident Services | | 1,856.67 | 0.00 | 23095568 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 12/01/2025 | rbufe | Admin Fee - 10/01/25-10/31/25 | 6.11 | | 6.11 | 49835442 |
| 12/01/2025 | rbs | Sewer - 10/01/25-10/31/25 | 37.29 | | 37.29 | 49835444 |
| 12/01/2025 | rbtra | Trash - 10/01/25-10/31/25 | 46.19 | | 83.48 | 49835446 |
| 12/01/2025 | rbw | Water - 10/01/25-10/31/25 | 43.30 | | 126.78 | 49835448 |
| 12/01/2025 | rent | Rent (12/2025) | 3,633.00 | | 3,759.78 | 50101035 |
| 12/01/2025 | | chk# 9712 Debit Card On-Line Payment ; Web - Resident Services | | 1,900.00 | 1,859.78 | 23179274 |
| 12/01/2025 | | chk# 2902 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,859.78 | 0.00 | 23182733 |
| 12/30/2025 | | chk# 2560 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,700.08 | (1,700.08) | 23268813 |
| 01/01/2026 | rbufe | Admin Fee - 11/01/25-11/30/25 | 6.11 | | (1,693.97) | 50279063 |
| 01/01/2026 | rbs | Sewer - 11/01/25-11/30/25 | 34.93 | | (1,659.04) | 50279064 |
| 01/01/2026 | rbtra | Trash - 11/01/25-11/30/25 | 47.24 | | (1,611.80) | 50279065 |
| 01/01/2026 | rbw | Water - 11/01/25-11/30/25 | 48.39 | | (1,563.41) | 50279066 |
| 01/01/2026 | rent | Rent (01/2026) | 3,633.00 | | 2,069.59 | 50551327 |
| 01/04/2026 | | chk# 6625 Debit Card On-Line Payment ; Web - Resident Services | | 2,069.59 | 0.00 | 23340953 |
| 01/29/2026 | | chk# 5966 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,608.00 | (1,608.00) | 23392706 |
| 02/01/2026 | rbufe | Admin Fee - 12/01/25-12/31/25 | 6.11 | | (1,601.89) | 50734490 |
| 02/01/2026 | rbs | Sewer - 12/01/25-12/31/25 | 31.85 | | (1,570.04) | 50734491 |
| 02/01/2026 | rbtra | Trash - 12/01/25-12/31/25 | 46.48 | | (1,523.56) | 50734492 |
| 02/01/2026 | rbw | Water - 12/01/25-12/31/25 | 43.90 | | (1,479.66) | 50734493 |
| 02/01/2026 | rent | Rent (02/2026) | 3,633.00 | | 2,153.34 | 51007064 |
| 02/04/2026 | | chk# 2244 Debit Card On-Line Payment ; Web - Resident Services | | 2,153.34 | 0.00 | 23471534 |
| 02/25/2026 | | chk# 7890 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,800.00 | (1,800.00) | 23509930 |
| 03/01/2026 | rbufe | Admin Fee - 01/01/26-01/31/26 | 6.11 | | (1,793.89) | 51194913 |
| 03/01/2026 | rbs | Sewer - 01/01/26-01/31/26 | 30.32 | | (1,763.57) | 51194915 |
| 03/01/2026 | rbtra | Trash - 01/01/26-01/31/26 | 45.83 | | (1,717.74) | 51194917 |
| 03/01/2026 | rbw | Water - 01/01/26-01/31/26 | 41.95 | | (1,675.79) | 51194919 |
| 03/01/2026 | rent | Rent (03/2026) | 3,633.00 | | 1,957.21 | 51463271 |
| 03/03/2026 | | chk# 9910 Debit Card On-Line Payment ; Web - Resident Services | | 1,957.21 | 0.00 | 23593029 |
| 03/30/2026 | | chk# 5593 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,800.00 | (1,800.00) | 23647049 |
| 04/01/2026 | rbufe | Admin Fee - 02/01/26-02/28/26 | 6.11 | | (1,793.89) | 51654778 |
| 04/01/2026 | rbs | Sewer - 02/01/26-02/28/26 | 36.18 | | (1,757.71) | 51654780 |
| 04/01/2026 | rbtra | Trash - 02/01/26-02/28/26 | 47.52 | | (1,710.19) | 51654783 |
| 04/01/2026 | rbw | Water - 02/01/26-02/28/26 | 54.64 | | (1,655.55) | 51654786 |
| 04/01/2026 | rent | Rent (04/2026) | 3,633.00 | | 1,977.45 | 51924094 |
| 04/01/2026 | | chk# 7080 Debit Card On-Line Payment ; Web - Resident Services | | 1,977.45 | 0.00 | 23697359 |
| 04/13/2026 | | chk# 4438 Debit Card On-Line Payment ; Roommate Phaness Mosley ( 7973) ; Mobile App - Resident Services | | 1,800.00 | (1,800.00) | 23743959 |

# EXHIBIT F

# Resident Ledger



**Date: 04/15/2026**

| Code | t0000283 | | Property | 134142su | Lease From | 04/01/2022 |
|---|---|---|---|---|---|---|
| Name | Kayc Mesquita | | Unit | 106 | Lease To | 09/30/2023 |
| Address | 134-142 Sussex Ave | | Status | Past | Move In | 04/01/2022 |
| | 106 | | Rent | 2678.00 | Move Out | 09/30/2023 |
| City | Newark, NJ 07103 | | Phone (H) | | Phone (W) | |

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|---|
| 04/01/2022 | sd | 06/2022 | :Posted by QuickTrans (sd) | 3,900.00 | | 3,900.00 | 58 |
| 04/01/2022 | | 06/2022 | chk# :QuickTrans :Posted by QuickTrans | | 3,900.00 | 0.00 | 61 |
| 08/01/2022 | rent | 08/2022 | Rent (08/2022) | 2,600.00 | | 2,600.00 | 659 |
| 08/01/2022 | | 08/2022 | chk# ▮▮▮2959 Credit Card On-Line Payment ; Mobile App - Resident Services | | 2,600.00 | 0.00 | 895 |
| 09/01/2022 | rent | 09/2022 | Rent (09/2022) | 2,600.00 | | 2,600.00 | 1605 |
| 09/02/2022 | | 09/2022 | chk# ▮▮▮9398 Credit Card On-Line Payment ; Mobile App - Resident Services | | 2,600.00 | 0.00 | 1780 |
| 10/01/2022 | rent | 10/2022 | Rent (10/2022) | 2,600.00 | | 2,600.00 | 2544 |
| 10/02/2022 | | 10/2022 | chk# ▮▮▮1404 Credit Card On-Line Payment ; Roommate William Foxx (▮▮0010) ; Mobile App - Resident Services | | 2,600.00 | 0.00 | 2551 |
| 10/06/2022 | parking | 10/2022 | Parking Fees (10/2022) 26 days | 125.81 | | 125.81 | 3329 |
| 11/01/2022 | parking | 11/2022 | Parking Fees (11/2022) | 150.00 | | 275.81 | 3415 |
| 11/01/2022 | rent | 11/2022 | Rent (11/2022) | 2,600.00 | | 2,875.81 | 3416 |
| 11/02/2022 | | 11/2022 | chk# ▮▮▮6465 Credit Card On-Line Payment ; Roommate William Foxx (▮▮0010) ; Mobile App - Resident Services | | 2,875.81 | 0.00 | 3345 |
| 12/01/2022 | parking | 12/2022 | Parking Fees (12/2022) | 150.00 | | 150.00 | 4299 |
| 12/01/2022 | rent | 12/2022 | Rent (12/2022) | 2,600.00 | | 2,750.00 | 4300 |
| 12/01/2022 | | 12/2022 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,750.00 | 0.00 | 3955 |
| 01/01/2023 | parking | 01/2023 | Parking Fees (01/2023) | 150.00 | | 150.00 | 5117 |
| 01/01/2023 | rent | 01/2023 | Rent (01/2023) | 2,600.00 | | 2,750.00 | 5118 |
| 01/02/2023 | | 01/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,750.00 | 0.00 | 4604 |
| 02/01/2023 | parking | 02/2023 | Parking Fees (02/2023) | 150.00 | | 150.00 | 5943 |
| 02/01/2023 | rent | 02/2023 | Rent (02/2023) | 2,600.00 | | 2,750.00 | 5944 |
| 02/01/2023 | | 02/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,750.00 | 0.00 | 5285 |
| 02/24/2023 | rent | 02/2023 | Prorated Parking Fees (02-14-2023) | (80.35) | | (80.35) | 6756 |
| 03/01/2023 | rent | 03/2023 | Rent (03/2023) | 2,600.00 | | 2,519.65 | 6762 |
| 03/01/2023 | | 03/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,519.65 | 0.00 | 5880 |
| 03/31/2023 | | 03/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,678.00 | (2,678.00) | 6502 |
| 04/01/2023 | rent | 04/2023 | Rent (04/2023) | 2,678.00 | | 0.00 | 7615 |
| 04/29/2023 | | 04/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,600.00 | (2,600.00) | 7192 |
| 05/01/2023 | rent | 05/2023 | Rent (05/2023) | 2,678.00 | | 78.00 | 8514 |
| 05/01/2023 | | 05/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 78.00 | 0.00 | 7326 |
| 06/01/2023 | rent | 06/2023 | Rent (06/2023) | 2,678.00 | | 2,678.00 | 9313 |
| 06/01/2023 | | 06/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,678.00 | 0.00 | 7967 |
| 06/29/2023 | | 06/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(▮▮0010).Mobile App - Resident Services | | 2,678.00 | (2,678.00) | 8574 |
| 07/01/2023 | rent | 07/2023 | Rent (07/2023) | 2,678.00 | | 0.00 | 10215 |

| Date | Code | Period | Description | Charge | Payment | Balance | Link |
|---|---|---|---|---|---|---|---|
| 07/12/2023 | mainten | 07/2023 | Maintenance & Repairs Fees 6/2023 | 200.00 | | 200.00 | 11072 |
| 08/01/2023 | rent | 08/2023 | Rent (08/2023) | 2,678.00 | | 2,878.00 | 11203 |
| 08/02/2023 | | 08/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(    0010).Mobile App - Resident Services | | 2,878.00 | 0.00 | 9653 |
| 09/01/2023 | rent | 09/2023 | Rent (09/2023) | 2,678.00 | | 2,678.00 | 12324 |
| 09/01/2023 | | 09/2023 | chk# :ACH-WEB Online Payment - EFT Payment Paid by Roommate William Foxx(    0010).Mobile App - Resident Services | | 2,678.00 | 0.00 | 10679 |
| 09/19/2023 | leasemod | 09/2023 | Tenant is adding a co-signer and roommate to his lease | 1,000.00 | | 1,000.00 | 13849 |
| 09/19/2023 | | 09/2023 | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 1,000.00 | 0.00 | 11136 |
| 12/04/2023 | sd | 12/2023 | :Security Deposit credit | (3,900.00) | | (3,900.00) | 17928 |

# EXHIBIT G



null / ALL
**Transmittal Number: 33307314**
**Date Processed: 02/12/2026**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Brady Bustany<br>Yardi Systems Inc.<br>430 S Fairview Ave<br>Santa Barbara, CA 93117-3637 |
| **Electronic copy provided to:** | Lauren Sparks<br>Shawn Mihill<br>Nailah Freeman<br>Arnold Brier<br>Emily Chiang<br>Paralegal Team<br>Donna Krouzman<br>Alexa Bicos |

| | |
|---|---|
| **Entity:** | Yardi Systems, Inc.<br>Entity ID Number  2749527 |
| **Entity Served:** | Yardi Systems, Inc. |
| **Title of Action:** | Phaness Mosley vs. Yardi Systems, Inc. |
| **Matter Name/ID:** | Phaness Mosley vs. Yardi Systems, Inc. (18610647) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Santa Barbara County Superior Court, CA |
| **Case/Reference No:** | Not Shown |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/11/2026 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Kalielgold PLLC<br>202-350-4783 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



**1100 15th Street, NW | 4th Floor**
**Washington, DC 20005**

**202.350.4783**
**www.kalielgold.com**

**490 43rd Street | No. 122**
**Oakland, CA 94609**

February 9, 2026

Yardi Systems, Inc.
c/o 1505 Corporation CSC d/b/a Lawyers
  Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California 95833

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

RentCafe, LLC
c/o 1505 Corporation CSC d/b/a Lawyers
  Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California 95833

**Re:**    *Notice of Violations of the California Consumers Legal Remedies Act*
         *(California Civil Code § 1750, et. seq.)*

To Whom it May Concern:

Pursuant to the California Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.* (the "CLRA"), Phaness Mosley ("Ms. Mosley"), William Foxx ("Mr. Foxx"), and Karen Picardi ("Ms. Picardi) (collectively, "Clients"), on behalf of themselves and all others similarly situated, through their undersigned counsel, hereby notify you that Yardi Systems, Inc. ("Yardi") and RentCafe, LLC ("RentCafe") (collectively, "Defendants") are alleged to have violated Civil Code Section 1770 by engaging in misconduct, arising from their deceptive addition of Defendants' service junk fees to tenants' rental payments. We write on behalf of our Clients who intend to a claim for monetary damages as set forth herein, on each of their own behalf, individually, as well as on behalf of all other similarly situated consumers in the United States (the respective "Classes").

These actions specifically concern Defendants' addition of service junk fees to tenants' rental payments when tenants pay through RentCafe's Resident app. Specifically, when tenants use RentCafe's Resident app to pay their rent, RentCafe adds a "service" fee at the very last step of the checkout process (the "Service Fee"). The Service Fee representation is deceptive to tenants, as the fee is not disclosed in their lease agreements, tenants are not informed on how to avoid the service fee at any point during the checkout process, and no additional "service" is being provided to tenants for paying the fee. Indeed, the Service Fee amounts to additional, unexpected, and seemingly unavoidable rent for tenants, many of whom are already paying a premium, high-cost rent payment. This deceptive and unfair practice of adding on a Service Fee to tenant rent payments has harmed our Clients and potential Class Members.


©KalielGold

February 9, 2026
Page 2

Our Clients' facts are typical of other Class members:

a.  Since June 2024, Ms. Mosley has rented an apartment in Chula Vista, California and pays her rent each month via the RentCafe Resident app. For example, on August 27, 2024, Ms. Mosley paid her monthly rent of $1,800.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $39.60. Similarly, on May 28, 2025, Ms. Mosley paid her monthly rent of $1,912.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $42.06. These fees were automatically added to Ms. Mosley's totals.

b.  Mr. Foxx rented an apartment in Newark, New Jersey from September 1, 2022 through September 30, 2023, and paid rent through the RentCafe Resident app. For example, on October 2, 2022, Mr. Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $65.00. Similarly, on November 12, 2022, Mr. Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $71.90. These fees were automatically added to Mr. Foxx's totals.

c.  Ms. Picardi rented an apartment in Malden, Massachusetts and paid her rent each month via the RentCafe Resident app. For example, on October 1, 2023, Ms. Picardi paid a portion of her monthly rent with her debit card in the amount of $340.00 and was charged a Service Fee from RentCafe totaling $8.50. This fee was automatically added to Ms. Picardi's total.

When using the RentCafe Resident app, our Clients were repeatedly informed that the Service Fee added on to their rent payment was unavoidable and required to process their payments. Our Clients' rental payments included a Service Fee that was automatically and surreptitiously added to the checkout process, that—for the reasons described above—in fact, represented an additional charge. Our Clients did not know the Service Fee could be removed prior to completing their rental payments because Defendants either concealed the removal of the Service Fee or, worse yet, required the Service Fee to be paid in order to pay their rent. Our Clients would not have paid the Service Fee if they knew it was optional and provided no additional benefit. As a result, our Clients will allege that they and the Class members they seek to represent have suffered economic damages in the amount of the Service Fees paid.

The conduct described herein violates Cal. Civ. Code § 1770(a)(5) and (a)(29), which prohibit "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…" and "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges…." As a result, this letter serves as a notice and demand for corrective action on behalf of our Clients, as well as all other persons similarly situated, to cease the above-described misconduct. To cure the defects described above, we demand that you do and complete the following within thirty (30) days:

©KalielGold

February 9, 2026
Page 3

1. Identify or make a reasonable attempt to identify all consumers in the United States who, within the applicable statute of limitations preceding this correspondence, were charged a Service Fee or other similar fee;
2. Notify all such consumers that upon their request, Defendants will offer an appropriate correction or other remedy for their wrongful conduct, which may include a refund of the Service Fee;
3. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all customers who so request; and
4. Cease from misrepresenting Defendants' Service Fees and otherwise comply with California law and the common law as described herein.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents and communications concerning the development, design, construction, and operation (including any documents and communications concerning regulatory compliance, research and development) relating to the RentCafe Resident app and implementation of the Service Fee;

2. All communications with customers concerning complaints or comments about the Service Fee;

3. All documents and communications regarding the funds generated from the Service Fee;

4. All litigation and subrogation documents and materials related to claims made about the Service Fee; and

5. All documents and communications provided to or received from any state, federal or international government agency concerning the Service Fee.

Absent Defendants' complete rectification of the problems associated with the actions detailed above within 30 days, Plaintiffs will amend their action to seek actual and statutory damages, as appropriate, against Defendants. We look forward to your response. We await your response.

Very truly yours,

**KALIELGOLD PLLC**

Jeffrey D. Kaliel

/Enclosure
cc: Melissa S. Weiner

**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

**PEARSON WARSHAW, LLP**
Mailing Address:
Rachel Soffin (FL Bar 18054)*
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91043
Telephone: (818) 205-2815
rsoffin@pwfirm.com

**PEARSON WARSHAW, LLP**
Melissa S. Weiner (MN Bar 038790)*
Ryan T. Gott (MN Bar 0397978)*
328 Barry Avenue S, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
mwiner@pwfirm.com
rgott@pwfirm.com

*Attorneys for Plaintiffs and the Putative Class*
*Pro hac vice* applications to be filed

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA BARBARA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS, INC., and RENTCAFE, LLC, <br><br> Defendants. | Case No: <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiffs Phaness Mosley, William Foxx and Karen Picardi ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Yardi Systems, Inc. and RentCafe, LLC (collectively, "RentCafe" or "Defendants"), and state:

## I.    NATURE OF THE ACTION

1.    There is a cost-of-living crisis in our country, one that is especially acute in the housing market. One reason is the relentless imposition of add-on fees in excess of advertised rental rates—including "pay to pay" fees like those at issue in this Complaint, wherein consumers are charged add-on junk fees by third-party middlemen merely for doing what they are required to do under the terms of their residential leases: make their rent payments.

2.    Plaintiffs bring this putative class action lawsuit seeking monetary damages, punitive damages, restitution and injunctive relief arising from Defendants' deceptive and unfair imposition of junk "Service Fees" on rent payments completed through RentCafe's Resident app.

3.    The Service Fee is added, at the very last step of the checkout process, using a "negative option" process. This process—condemned by the FTC as inherently deceptive—automatically lards online checkout flows with supposedly optional junk fees, then forces consumers to find a way to remove them. Worse, Defendant provides no fair disclosure on how to remove the add-on fees.

4.    Further, the Service Fee is deceptively mis-named, as there is no additional "service" provided by Defendants that is not reasonably already included in a residential lease, *viz.* the ability to make a payment under that lease. RentCafe's Service Fee is a classic example of a company-imposed "junk fee" that serves as a profit generator for RentCafe, while providing no added value to consumers.

5.    RentCafe's Service Fee is additionally deceptive because RentCafe does not inform consumers that there is no additional "service" being provided and, in fact, the fee is not permitted by, or disclosed in, their residential leases.

6.    At no point during the rental payment process in the RentCafe Resident app are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe that the fee is mandatory and unavoidable.

7.    Indeed, the Service Fee amounts to additional, unexpected rent for tenants that is undisclosed in lease agreements. RentCafe's knowing and intentional imposition of the Service Fee over and above the contracted-for rent constitutes a tortious interference with contract.

8.    Plaintiffs and Class members are injured by RentCafe's deceptive, unfair and illegal practices. Plaintiffs bring this action on behalf of themselves and the putative Class and seek actual damages, punitive damages, restitution and injunctive relief to prevent RentCafe from continuing to engage in its illegal practices described herein.

## II.    PARTIES

9.    Plaintiff Phaness Mosley is a citizen and resident of Chula Vista, California. At all relevant times alleged herein, she was a tenant of a property in California and was assessed a Service Fee for paying rent payments through RentCafe.

10.    Plaintiff William Foxx is a citizen and resident of Pelham, New York. At all relevant times alleged herein, he was a tenant of a property in New Jersey and was assessed a Service Fee for paying rent payments through RentCafe.

11.    Plaintiff Karen Picardi is a citizen and resident of Medford, Massachusetts. At all relevant times alleged herein, she was a tenant of a property in Massachusetts and was assessed a Service Fee for paying rent payments through RentCafe.

12.    Defendant Yardi Systems, Inc. is a California corporation headquartered in Santa Barbara, California. Yardi Systems provides property management software and services in the real estate industry. Yardi Systems offers several products to residential and commercial clients worldwide, including the RentCafe platform.

13.    Defendant RentCafe, LLC is a Delaware limited liability company headquartered in Santa Barbara, California. RentCafe is a real estate listing platform and property management software that streamlines leasing and living functions for prospective and current renters including, application and lease signing tools, actionable move-in checklists, work order submissions, rewards programs, and an online rent payment portal.

CLASS ACTION COMPLAINT

**III.    JURISDICTION, VENUE AND GOVERNING LAW**

14.    This Court has jurisdiction over Defendants and the claims set forth herein pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10 because this case is a cause not given by statute to the other trial courts.

15.    Plaintiffs are informed and believe that the State of California has personal jurisdiction over the Defendants named in the action because Defendants are corporations authorized to conduct and do conduct business in this State. Defendants maintain their corporate headquarters in Santa Barbara and are registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails themselves of the California market by conducting business throughout California, including in the County of Santa Barbara, which has caused both obligations and liability of Defendants to arise in the County of Los Angeles.

16.    Unless otherwise alleged herein, each of Plaintiffs' claims brought on behalf of the Nationwide Class are governed by the laws of the State of California in accordance with RentCafe's Governing Law provision set forth in RentCafe's Terms of Service.[1]

**IV.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

    **A.    RentCafe's Deceptive and Unlawful Rental Payment Process**

17.    RentCafe contracts with property management companies throughout the country to provide various marketing, leasing and resident services. RentCafe's offerings for prospective tenants include apartment searching and browsing of other rental listings, scheduling tours, contacting property management offices, submitting rental applications, signing lease agreements and collecting rent payments from consumers through its Resident app and online payment processing platform.[2]

---

[1] https://resources.yardi.com/legal/rentcafe-terms-of-service/ (last accessed Jan. 26, 2026).

[2] https://www.yardi.com/product/rentcafe-living-resident/ (last accessed Jan. 26, 2026).

CLASS ACTION COMPLAINT

18.     In 2025, approximately 3,000 landlords contracted with RentCafe as a property management tool, constituting a market share of 2.46% in the property-management market.[3]

19.     The RentCafe Resident app is how all Plaintiffs and Class members paid their rent and were assessed the Service Fee.[4]

20.     Consumers making their rental payments through the RentCafe Resident app are automatically charged the Service Fee and are not informed of the amount Defendants charge for the Service Fee until the final "Confirm" payment screen.

21.     At no point during the rental payment process through the RentCafe Resident app are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe the fee is mandatory and unavoidable.

22.     This pre-selection and automatic opting-in of consumers to junk fees is itself deceptive.

23.     RentCafe's inadequate and untimely disclosure of the Service Fee, as well as RentCafe's failure to adequately inform consumers of alternative ways to pay their rent to avoid the Service Fee, render the Service Fee nothing more than a junk fee couched in an unlawful pay-to-pay scheme.

24.     Upon information and belief, RentCafe is aware that by programming its Resident app with a "negative option" to automatically opt-in consumers to pay Service Fees, most consumers will unknowingly pay them. On information and belief, RentCafe is further aware that had it programmed its Resident app to offer an *optional* Service Fee (requiring an opt-in or providing fairly disclosed options to remove or avoid such fees, the vast majority of consumers would not pay the Service Fee).

25.     As the Federal Trade Commission ("FTC") notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-

---

[3] https://6sense.com/tech/property-management/yardi-rentcafe-market-share (last accessed Jan. 26, 2026).

[4] *See* https://apps.apple.com/us/app/rentcafe-resident/id541403633 ("The RentCafe Resident app has been designed for communities that use the RentCafe platform as their Resident Portal.") (last accessed Jan. 28, 2026).

CLASS ACTION COMPLAINT

checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data."[5] The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that "[a] 'pre-checked box' does not constitute affirmative consent."[6]

**B.     The Rise of Junk Fees in Renting**

26.     The proliferation of rental housing junk fees like RentCafe's Service Fee negatively impacted millions of renter households nationwide.[7]

27.     Service fees for rent payments pose a real threat to consumers' financial stability, particularly considering that they force tenants to spend significant and unbudgeted sums of money each month on top of rent.[8]

28.     "Commonly referred to as 'junk fees', these [Service] fees can be undisclosed, unpredictable, and arbitrary and can quickly accumulate for tenants, putting safe and decent rental housing even more out of reach."[9] These "surprise fees are imposed for services with little to no value to tenants, such as...Service fees. Such fees can add up quickly, rendering advertised rental prices inaccurate and sometimes forcing tenants to spend hundreds of dollars each month on top of rents."[10]

29.     In 2022, the National Consumer Law Center ("NCLC") conducted a survey of legal services and nonprofit attorneys throughout the country which examined various types of rental junk

---

[5] *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers).

[6] https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

[7] *"What the Heck, Dude!", How States Can Fight Rental Housing Junk Fees,* National Consumer Law Center, September 2024, available at https://www.nclc.org/wp-content/uploads/2024/09/202409_Report_What-the-Heck-Dude.pdf at pp. 5-7.

[8] *Junk Fees Toolkit,* National Low Income Housing Coalition ("NLIHC") State and Local Tenant Protection Series: A Primer on Renters' Rights, available at https://nlihc.org/sites/default/files/2022-07/SLI_Rental_Fees_Toolkit.pdf at p. 7.

[9] *Id.* at p. 3.

[10] *Id.* at p. 6.

CLASS ACTION COMPLAINT

fees charged to renters in the rental housing market.[11] The survey revealed that 60% of respondents from 23 states observed convenience fees, and that "[s]ome housing providers no longer accept payment in person or by check, meaning that tenants have to pay their rent online," and often times, must do so "through third-party companies that charge fees."[12]

30.    The failure to include these rental junk fees in the total cost of the advertised monthly rental rate is problematic—"While a renter may be able to manage and plan for high rents if they know about them in advance, they may not be expecting an array of junk fees, which could push them over their budgets."[13]

31.    Indeed, FTC recently issued a warning to rental management software companies, including RentCafe, that its practices may be unfair and deceptive. Specifically, the FTC stated:

> The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market. Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.
>
> Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.[14]

---

[11] *Too Damn High, How Junk Fees Add to Skyrocketing Rents*, National Consumer Law Center, March 2023, available at *https://www.nclc.org/wp-content/uploads/2023/03/JunkFees-Rpt.pdf*.

[12] *Id.* at pp. 17-18.

[13] *Id.* at p. 6.

[14] *See* **Exhibit 1** (footnotes omitted).

CLASS ACTION COMPLAINT

32. Thus, the FTC warned property management software providers, including Defendants, to comprehensively review their practices to ensure consumers are provided "with transparent rental prices."[15]

33. But RentCafe's Service Fees impede that effort.

34. The consequences are significant. As RentCafe recently acknowledged in a July 31, 2025, blog post, "[a]lmost half (49.7%) of renters spend over 30% of their income on housing, and nearly a quarter are severely burdened, paying more than half. That's a lot of people and money. The overall cost of renting, including utilities and other basic housing costs, has increased by 3.8% year-over-year—the largest annual real increase in rental costs since at least 2011. That, alongside an increase in grocery, gas, and utility expenses, makes it nearly impossible to have any financial breathing room—but rent waits for no one. Unfortunately, this could mean late fees, overdraft charges, or even falling behind on rent."[16]

35. Despite its acknowledgment of the financial hardships consumers face in order to meet their monthly rental obligations, RentCafe nevertheless charges these same consumers, like Plaintiffs and Class members, a Service Fee to make their monthly rental payments.

C. **RentCafe Charges Consumers Service Fees for Processing Rent Payments**

36. RentCafe charges consumers a pay-to-pay Service Fee on rent payments in an amount beyond the price of their monthly rent obligation.

37. RentCafe's Service Fee is deceptive because RentCafe fails to inform consumers that it is not providing an additional "service" that is not already included in their residential leases.

38. RentCafe's Service Fee is not tethered to any actual processing or expense. Instead, the Service Fee is a profit generator for RentCafe.[17]

---

[15] *See id.*

[16]  https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Dec. 17, 2025).

[17] *See Williams v. Pennymac Loan Services, LLC*, No. 1:25-cv-00276, 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) (upholding similar claim).

8

39.    Reasonable consumers like Plaintiffs understand the advertised cost for monthly rent to be the total cost of their rent obligation as represented—not the total cost of monthly rent *plus* an additional, undisclosed charge. In other words, RentCafe's Service Fee amounts to additional unexpected rent for tenants over and above the amount that was contracted for.

40.    Consumers who, as RentCafe acknowledges, are "severely burdened, paying more than half [of their income] participating in the costly rental market"—which RentCafe admits "makes it nearly impossible to have any financial breathing room"[18]—are paying this additional, unexpected rent to RentCafe, which serves only to line the pockets of RentCafe at a great expense to consumers.

**D.    RentCafe's Service Fee is a Junk Fee that Violates Federal Guidance and State Consumer Protection Laws**

41.    RentCafe's Service Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[19]

42.    As the Federal Trade Commission said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[20]

---

[18]    https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed Dec. 17, 2025).

[19] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/

[20] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

9

43. In a press release, FTC Chair Lina M. Khan articulated the financial harm to consumers arising from "service fees" like Defendants' in particular:

> It's beyond frustrating to end up spending more than you budgeted because of random, arbitrary fees. No one has ever felt that a 'Service fee' was convenient. Companies should compete to provide the best quality at the best price, not to see who can squeeze the most added expenses out of consumers. That's especially true at a time when families are struggling with the effects of inflation.[21]

44. In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") by amending to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.[22] Under the new California law, dubbed the "Honest Pricing Law," it is now illegal to advertise a price for a product, only for that produce to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay."[23] As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.[24]

45. Effective September 2, 2025, the State of Massachusetts passed a similar regulation that strictly prohibits businesses from charging unfair or deceptive "junk fees" like RentCafe's

---

[21] Federal Trade Commission, *Federal Trade Commission Explores Rule Cracking Down on Junk Fees*, October 20, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/10/federal-trade-commission-explores-rule-cracking-down-junk-fees.

[22] California Civil Code Section 1770(a)(29).

[23] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions,* available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024).

[24] *Id.* at p. 4 (emphasis added).

CLASS ACTION COMPLAINT

Service Fee.[25] In pertinent part, the express terms of this regulation requires businesses to disclose, at both the initial and final presentation of the price of any product or service, including dwelling units for rent or lease, "any fees, charges, or other expenses . . . that are optional to the consumer or waivable by the seller, the fact that such fees, charges, or other expenses are optional to the consumer or waivable by the seller, as well as readily available instructions regarding how to avoid such fees, charges, or other expenses."[26]

46.    In an article, Massachusetts Attorney General Andrea Joy Campbell expounded upon the rollout of the new "junk fee" regulations and explained how "these new rules will require businesses to disclose the full price of their goods and services upfront" in the apartment rental market:

> It's move-in season in Massachusetts, and you may have just seen an ad for a studio apartment for $2,500 per month. That amount is going to stretch your budget, but recognizing how competitive the housing market is, you know you need to jump on that rental quickly.
>
> So, you head to the management office the very next day to sign your lease. Just before signing, you notice the amount you'd have to pay every month will actually be $2,750 – beyond what you have budgeted for rent. The extra $250 comes from a mandatory "trash pick-up" fee combined with a vague "amenities" fee. You don't want to start the daunting apartment search process over again, so you sign the lease. But the entire process leaves you feeling misled and paying more than you originally anticipated.
> . . .
> These fees are not simply an inconvenience – they're a widespread, costly problem impacting all of us. Every year, Americans spend tens of billions of dollars on hidden or surprise "junk fees" that deceptively raise costs beyond advertised prices. As consumers face rising costs of living, these pesky fees quietly drain consumers' wallets.[27]

---

[25] *See* Unfairness and Deception in Connection with Marketing/Solicitation/Sale, 940 C.M.R. 38.04; 38.09.

[26] *Id.* at 38.04(2)(b); (3)(c); 38.03.

[27] *'Junk Fees' unfairly rob consumers. New Regulations banning them go into effect today.*, CommonWealth Beacon, Andrea Joy Campbell, September 2, 2025, available at https://commonwealthbeacon.org/opinion/junk-fees-unfairly-rob-consumers-new-regulations-banning-them-go-into-effect-today/.

11

CLASS ACTION COMPLAINT

47. Defendants violate federal guidance and state consumer protection laws by charging the Service Fee for processing rent payments on the RentCafe platform.

**E.      Plaintiffs' Experiences**

Plaintiff Mosley

48. Since approximately June 2024, Plaintiff Mosley rented an apartment in Chula Vista, California and pays her rent each month via the RentCafe Resident app.

49. For example, on August 27, 2024, Plaintiff Mosley paid her monthly rent of $1,800.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $39.60. Similarly, on May 28, 2025, Plaintiff Mosley paid her monthly rent of $1,912.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $42.06. These fees were automatically added to Plaintiff's totals.

50. Based on RentCafe's representations and omissions on the Resident app, Plaintiff Mosley reasonably believed the Service Fee was a mandatory fee that she was required to pay in order to pay her monthly rent.

51. At no time during the payment transaction did RentCafe adequately or transparently present alternative forms of payment to avoid the Service Fee, leading Plaintiff Mosely to believe that the Service Fee was mandatory.

52. Plaintiff Mosley relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

53. Therefore, Plaintiff Mosely was unlawfully and deceptively charged a junk "Service Fee" that she should not have paid.

Plaintiff Foxx

54. From approximately September 1, 2022, through September 30, 2023, Plaintiff Foxx rented an apartment in Newark, New Jersey and paid rent through the RentCafe Resident app.

55. For example, on October 2, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $65.00. Similarly, on November 12, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was

charged a Service Fee from RentCafe totaling $71.90. These fees were automatically added to Plaintiff's totals.

56. Based on RentCafe's representations and omissions on the Resident app, Plaintiff Foxx reasonably believed the Service Fee was a mandatory fee that he was required to pay in order to pay his monthly rent.

57. At no time during the payment transaction did RentCafe adequately or transparently present the Service Fee as an optional charge.

58. Plaintiff Foxx relied on Defendants' misrepresentations and omissions about the Service Fee in making his rent payments.

59. Therefore, Plaintiff Foxx was unlawfully and deceptively charged a junk "Service Fee" that he should not have paid.

Plaintiff Picardi

60. From approximately September 1, 2023, through January 16, 2025, Plaintiff Picardi rented an apartment in Malden, Massachusetts and paid her rent each month via the RentCafe Resident app.

61. For example, on October 1, 2023, Plaintiff Picardi paid a portion of her monthly rent with her debit card in the amount of $340.00 and was charged a Service Fee from RentCafe totaling $8.50. This fee was automatically added to Plaintiff's total.

62. Based on RentCafe's representations and omissions on the Resident app, Plaintiff Picardi reasonably believed the Service Fee was a mandatory fee that she was required to pay in order to pay her monthly rent.

63. At no time during the payment transactions did RentCafe adequately or transparently present the Service Fee as an optional charge.

64. Plaintiff Picardi relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

65. Therefore, Plaintiff Picardi was unlawfully and deceptively charged a junk "Service Fee" that she should not have paid.

CLASS ACTION COMPLAINT

## V.   PLAINTIFFS' CLAIMS SOUNDING IN FRAUD ARE ALLEGED WITH SPECIFICITY

66.   Defendants are in the best position to know what content they placed on their RentCafe Resident app during the relevant timeframe, and the knowledge they had regarding the Service Fee and related disclosures, to the extent necessary, Plaintiffs satisfy the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

a.   **WHO**: Defendants unlawfully, unfairly, deceptively and/or misleadingly imposed the Service Fee on consumers paying their rent.

b.   **WHAT**: Defendants' conduct was, and continues to be, fraudulent because they hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying their rent. Defendants' conduct deceived Plaintiffs and Class members into believing that the Service Fee is mandatory when paying their rent, when in reality the Service Fee is untimely disclosed, misleadingly disclosed, excessive and unlawfully charged. At all times relevant to this action, Plaintiffs and Class members utilized the RentCafe Resident app to make rental payments where RentCafe then imposed the Service Fee. Defendants charged the Service Fee to all consumers paying their rent using a one-time electronic payment method. Defendants failed to post, display or otherwise adequately disclose the Service Fee to consumers during the signing of their lease agreements or during the rental payment process. Defendants knew, or should have known, that they failed to adequately disclose the Service Fee and that this fee is material to reasonable consumers, including Plaintiffs and Class members. The Service Fee is a sham, a classic "junk fee." The "service" purportedly provided by RentCafe, which is allowing consumers to pay for their rent, is a core part of the aspect of the service RentCafe is required to provide. The Service Fee is merely a second payment—in the form of a junk fee—for the service that consumers are already paying for.

c.   **WHEN**: Defendants engaged in these unlawful, unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiffs and Class members signed their lease agreements and made rental payments through Defendants'

14

CLASS ACTION COMPLAINT

Resident app, prior to and at the time Plaintiffs and Class members made claims after realizing the unlawful junk fee, and continuously throughout the applicable Class periods.

d.    **WHERE**: Defendants' unlawful, unfair and deceptive junk fee was uniformly applied to consumers who made rental payments through the RentCafe Resident app. Defendants' website, advertising and other marketing materials similarly failed to explain or otherwise disclose the Service Fee being charged.

e.    **HOW**: Defendants hid, obfuscated or otherwise concealed from consumers the imposition of the Service Fee by describing the junk fee as an "Service Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Service Fee through their own investigation, Defendants failed to explain or adequately disclose the nature of the Service Fee or reasonable alternatives to paying this fee, or why it was imposed.

f.    **WHY**: Defendants engage in their unlawful, unfair and deceptive junk fee scheme in order to induce Plaintiffs, Class members and all reasonable consumers to pay the undisclosed and unlawful Service Fee, resulting significant revenues for Defendants.

g.    **INJURY**: Plaintiffs and Class members paid a premium or otherwise paid more for their rent when they otherwise would not have absent Defendants' misrepresentations.

## VI.    TOLLING AND ESTOPPLE OF STATUTE OF LIMITATIONS

67.    For years Defendants had actual knowledge that they hid, obfuscated or otherwise concealed from consumers the imposition of the Service Fee by describing the junk fee as an "Service Fee" in order to prevent consumers from discovering the additional charges. Even if consumers were to discover the Service Fee through their own investigation, Defendants failed to explain or adequately disclose the nature of the Service Fee or reasonable alternatives to paying this fee, or why it was imposed.

68.    Defendants have a duty to accurately disclose the fees it charges to consumers. Yet despite their duty and knowledge, Defendants misrepresented the Service Fee, knowing that they had no basis to do so.

15

CLASS ACTION COMPLAINT

69. Defendants made, and continue to make, affirmative misrepresentations to consumers to continue to profit off the pay-to-pay Service Fee scheme.

70. Defendants misrepresented material facts that are important to Plaintiffs and Class members in deciding the manner in which they pay their rent. Defendants' misrepresentations were knowing, and they intended to, and did, deceive reasonable consumers, including Plaintiffs and Class members.

71. As a result, Plaintiffs and Class members reasonably relied upon Defendants' affirmative misrepresentations of these material facts and suffered injury as a proximate result of that justifiable reliance.

72. The true extent and nature of the Service Fee as a junk fee was not reasonably detectible to Plaintiffs and Class members.

73. At all times, Defendants actively and intentionally misrepresented the Service Fee and failed to inform Plaintiffs and Class members of its true nature as well as alternative ways to avoid incurring the Service Fee. Plaintiffs' and Class members' lack of awareness was thus not attributable to a lack of diligence on their part.

74. The statements, words and acts by Defendants were made for the purpose of misrepresenting the truth about the Service Fee.

75. Defendants misrepresented the Service Fee and alternative means of payment to avoid the Service Fee for the purpose of delaying Plaintiffs and Class members from filing a complaint on their causes of action.

76. Due to Defendants' active misrepresentation to Plaintiffs and Class members of the true nature of the Service Fee and alternative means to pay rent without subjecting them to the Service Fee, any and all applicable statutes of limitations that may otherwise be applicable to the allegations are tolled. Moreover, Defendants are estopped from relying on any statute of limitations in light of their active misrepresentation regarding the Service Fee.

77. Furthermore, the causes of action alleged herein did not occur until Plaintiffs and Class members discovered the true nature of the Service Fee and/or alternative means to avoid the payment of the Service Fee. Plaintiffs and Class members had no realistic ability to discern that the Service

Fee was not mandatory or that it was just a junk fee. In either event, Plaintiffs and Class members were hampered in their ability to discover their causes of action because of Defendants' active misrepresentation regarding the true nature of its Service Fee.

## VII.    CLASS ACTION ALLEGATIONS

78.    Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated. The proposed class includes:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe when making a rent payment through the Resident app (the "Nationwide Class").

79.    Plaintiff Mosley further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of California when making a rent payment through the RentCafe Resident app (the "California Subclass").

80.    Plaintiff Foxx further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of New Jersey when making a rent payment through the RentCafe Resident app (the "New Jersey Subclass").

81.    Plaintiff Picardi further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of Massachusetts when making a rent payment through the RentCafe Resident app (the "Massachusetts Subclass").

82.    The Nationwide Class, California Subclass, New Jersey Subclass and Massachusetts Subclass are collectively referred to herein as the "Class."

83.    Excluded from the Class are Defendants, their subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which Defendants have a

17

CLASS ACTION COMPLAINT

controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

84.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

85.    **Numerosity (Rule 23(a)(1)).** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to RentCafe's records. The proposed Class is also sufficiently ascertainable because RentCafe has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiffs.

86.    **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because RentCafe acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a.    Whether RentCafe's Service Fee is unfair, unlawful, deceptive or misleading;

b.    Whether RentCafe's Service Fee constitutes violations of the laws asserted herein;

c.    Whether Plaintiffs and members of the Class are harmed by RentCafe's alleged misconduct;

d.    Whether RentCafe is unjustly enriched;

e.    Whether RentCafe tortiously interfered with Class members' lease agreements;

f.    Whether Plaintiffs and the Class are damaged and if so, the proper measure of damages; and

18

CLASS ACTION COMPLAINT

g.      Whether an injunction is necessary to prevent RentCafe from continuing to engage in the wrongful conduct described herein.

87.    **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by RentCafe, as described herein.

88.    Plaintiffs are more than adequate representatives of the proposed Class in that they suffered damages because of RentCafe's improper business practices. Additionally:

a.      Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and retained competent counsel experienced in the prosecution of consumer class actions;

b.      There is no conflict of interest between Plaintiffs and the unnamed Class members;

c.      Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d.      Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

89.    **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning RentCafe's liability to all Class members for charging the Service Fee on rent payments through the Resident app predominate over any questions affecting only individual Class members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual Class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs

know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

90.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

91.    **Particular Issues (Rule 23(c)(4)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violations of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
***(By Plaintiffs, individually, and on behalf of the Nationwide Class; Alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass)***

92.    Plaintiffs, individually, and on behalf of the Nationwide Class, or alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

93.    California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language.

94.    RentCafe's conduct related to charging the Service Fee on rent payments violates each of the statute's "unfair," "unlawful" and "fraudulent" prongs.

95.    The UCL imposes strict liability. Plaintiffs need not prove that RentCafe intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

20

CLASS ACTION COMPLAINT

96. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

97. A business act is "fraudulent" under the UCL if it is likely to deceive members of the public.

98. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

99. RentCafe commits unfair business acts and practices by charging the junk Service Fee, which serves no legitimate purpose except profit for RentCafe at the expense of consumers.

100. RentCafe's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

101. The harm to Plaintiffs and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

102. RentCafe's conduct also constitutes an unlawful business practice in violation of Cal. Bus. & Prof. Code § 17200 because, as alleged herein, it also constitutes a violation of sections 1770(a)(5) and (a)(29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code sections 1750, *et seq.*

103. RentCafe commits fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200 by deceptively naming and describing the Service Fee, charging a fee that provides no added value to consumers and by representing the Service Fee as mandatory without adequately and transparently disclosing payment options to avoid the Service Fee. The financial harm to consumers because of RentCafe's wrongful business practice is substantial.

104. RentCafe's business practices misled Plaintiffs and the proposed Class and unless enjoined, will continue to mislead them in the future.

105.    Plaintiffs relied on Defendants' misrepresentations and omissions in making rent payments and paying the Service Fee, believing the fee to be mandatory.

106.    As a direct and proximate result of RentCafe's misconduct, Plaintiffs and the Class suffered and will continue to suffer actual harm.

107.    Plaintiffs and the Class are entitled to restitution of all funds wrongfully obtained by RentCafe through its unlawful, fraudulent and unfair business practices as described herein.

108.    Defendants' wrongful conduct is ongoing and is part of a pattern of generalized course of conduct repeated on thousands of occasions yearly.

109.    Plaintiffs may be subject to the same wrongful conduct in the future unless RentCafe is enjoined. Plaintiffs have no adequate remedy at law, in part, because RentCafe continues to automatically add Service Fees to rent payments made through its Resident app. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs therefore seek an injunction on behalf of the general public enjoining Defendants from continuing to engage in the unfair, fraudulent and unlawful business practices described herein, or any other act prohibited by law.

110.    Additionally, Plaintiffs and the Class seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SECOND CAUSE OF ACTION

**Violations of California's Consumers Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
***(By Plaintiffs, individually, and on behalf of the Nationwide Class; Alternatively, by Plaintiff***
***Mosley, individually, and on behalf of the California Subclass)***
***(for injunctive relief only)***

111.    Plaintiffs, individually, and on behalf of the Nationwide Class, or alternatively, by Plaintiff Mosley, individually, and on behalf of the California Subclass, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

112.    Plaintiffs and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code section 1761(d). RentCafe's assessment of the Service Fee on consumers' rent payments are "transactions" within the meaning of Cal. Civ. Code section 1761(e). RentCafe's rent payment

processing service utilized by Plaintiffs and the Class are "services" within the meaning of Cal. Civ. Code section 1761(b).

113. RentCafe violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, rent payment services:

   a. "Representing that. . . services have . . . characteristics . . . that they do not have" (a)(5); and

   b. "Advertising, displaying, or offering a price for a . . . service that does not include all mandatory fees or charges" (a)(29).

114. Specifically, RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiffs' and Class members' rent obligations.

115. Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendants in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fail to respond to Plaintiffs' letter and/or fails to agree to rectify the problems associated with the actions detailed herein, Plaintiffs will amend this cause of action to seek actual and statutory damages, as appropriate, against Defendants. At this time as to this cause of action, Plaintiff seeks only public injunctive relief as described above.

116. Pursuant to Cal. Civ. Code § 1780(d), a declaration of venue is attached to this Complaint.

### THIRD CAUSE OF ACTION

**Tortious Interference with Contract**
*(By Plaintiffs, individually, and on behalf of the Nationwide Class)*

117. Plaintiffs, individually, and on behalf of the Nationwide Class, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

118.    Plaintiffs and members of the Class entered into valid lease agreements with rental property management companies and/or landlords based on their economic necessity for rental housing services.

119.    RentCafe knew or should have known about this business relationship when it acted as the third-party platform through which Plaintiffs and Class members were required to make monthly rental payments to those rental property management companies and landlords.

120.    RentCafe intentionally and/or wrongfully interfered with those lease agreements to Plaintiffs' and Class members' detriment by charging the Service Fee, which amounted to undisclosed rent costs.

121.    RentCafe's act of charging the Service Fee on Plaintiffs' and Class members' rent payments was designed to induce and did induce breach and/or disruption of their contractual relationship with those entities.

122.    RentCafe's intentional interference caused Plaintiffs and members of the Class actual harm in the form of the wrongfully collected Service Fee.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment
*(By Plaintiffs, individually, and on behalf of the Nationwide Class)*

123.    Plaintiffs, individually, and on behalf of the Nationwide Class, reallege and incorporate paragraphs 1 through 98 as if fully set forth herein.

124.    To the detriment of Plaintiffs and the Class, Defendants were, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

125.    Plaintiffs and the Class conferred a benefit on Defendants.

126.    Defendants unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

127.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

24

CLASS ACTION COMPLAINT

128.    Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained Service Fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

## FIFTH CAUSE OF ACTION

**Alternative Cause of Action for Violation of
New Jersey Consumer Fraud Act (the "NJCFA")
N.J. Stat. Ann. §§ 56:8-1, *et seq.*
*(By Plaintiff Foxx, individually, and the New Jersey Subclass)***

129.    Plaintiff Foxx, individually, and on behalf of the New Jersey Subclass, realleges and incorporates paragraphs 1 through 98 as if fully set forth herein.

130.    Plaintiff Foxx and the other New Jersey Subclass members are "persons" under the NJCFA, N.J. Stat. Ann. § 56:8-1(d).

131.    Defendants engaged in "sales" and/or "advertisement" of "merchandise" within the meaning of N.J. Stat. Ann. §§ 56:8-1(a), (c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce and Defendants' foregoing acts and practices, including its omissions, were directed at consumers.

132.    The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." *Id.* § 56:8-2.

133.    RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiff Foxx's and New Jersey Subclass members' rent obligations.

134.    Contrary to these representations and omissions, the Service Fee is a junk fee in the form of a pay-to-pay scheme.

25

CLASS ACTION COMPLAINT

135.    Defendants intentionally and knowingly misrepresented material facts regarding the Service Fee with the intent to mislead Plaintiff Foxx and the other New Jersey Subclass members. Defendants knew or should have known that their conduct violated the NJCFA.

136.    Defendants' misrepresentations and omissions were material to Plaintiff Foxx's and the other New Jersey Subclass members' decision to utilize the form of payment to pay their rental obligations.

137.    Defendants' misrepresentations and omissions regarding the Service Fee were and are directed at consumers in a uniform manner.

138.    Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Foxx and the other New Jersey Subclass members relied upon Defendants' misrepresentations and omissions regarding the Service Fee to their detriment in paying the Service Fee.

139.    Defendants' violations described herein present a continuing risk to Plaintiff Foxx and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

140.    Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Foxx and the other New Jersey Subclass members who were unaware they would be charged a useless Service Fee for making their rent payments, or that the Service Fee was avoidable.

141.    Defendants had an ongoing duty to all of consumers to refrain from unfair and deceptive practices under the NJCFA in the course of their business.

142.    Defendants' violations present continuing violations to Plaintiff Foxx, the other New Jersey Subclass members and the general public. Defendants' wrongful acts and practices complained of herein affect the public interest.

143.    As a direct and proximate result of Defendants' deceptive acts and practices, including their representations and omissions, Plaintiff Foxx and the other New Jersey Subclass members are damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

26

CLASS ACTION COMPLAINT

144.    In addition, Plaintiff Foxx and the other New Jersey Subclass members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

**Alternative Cause of Action for Violation of**
**Massachusetts Consumer Protection Act ("MCPA")**
**Mass. Gen. Laws Ann. Ch. 93A §§ 1, *et seq.***
*(By Plaintiff Picardi, individually, and the Massachusetts Subclass)*

145.    Plaintiff Picardi, individually, and on behalf of the Massachusetts Subclass, realleges and incorporates paragraphs 1 through 98 as if fully set forth herein.

146.    Plaintiff Picardi and each member of the Massachusetts Subclass is a "person," as that term is used in Section 9(1) of Chapter 93A.

147.    RentCafe is a "person engaged in the conduct of trade or commerce," as those terms are used in Sections 2(a) and 9(1) of Chapter 93A.

148.    Plaintiff Picardi's and Class members' rental dwelling units are "products," as that term is used in Section 38.03 of Code of Massachusetts Regulation Title 940.

149.    RentCafe's improper assessment of Service Fees is an unfair or deceptive act or practice, pursuant to Section 2 of the Chapter 93A and Sections 38.04, *et seq.* of Code of Massachusetts Regulations Title 940.

150.    RentCafe violated Section 38.04 when it failed to clearly and conspicuously disclose to Plaintiff Picardi and Massachusetts Subclass members that its Service Fee was not a mandatory charge required to make their monthly rent payment and that there were ways to avoid such fee.

151.    RentCafe deceptively named and described the Service Fee, charged the Service Fee that provided no added value to reasonable consumers, misrepresented the mandatory nature of the Service Fee and misrepresented the total cost of Plaintiff Picardi's and Massachusetts Subclass members' rent obligations.

152.    Defendants knew or should have known that their policy and practice of charging the Service Fee on rent payments was a deceptive and misleading practice to Plaintiff Picardi and the Massachusetts Subclass.

27

CLASS ACTION COMPLAINT

153. Defendants' implementation of their Service Fee policies and procedures injured Plaintiff Picardi and each member of the Massachusetts Subclass.

154. Defendants' ongoing implementation of their policy and practice of assessing the Service Fee on rent payments will harm Plaintiff Picardi and Massachusetts Subclass members by forcing them to pay fees that provide no added value to consumers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against RentCafe for themselves and the proposed Class members as follows:

a. Certifying the proposed Class(es), appointing Plaintiffs as representatives of the Class(es), and appointing Plaintiffs' counsel as class counsel for the proposed Class(es);

b. Declaring that RentCafe's Service Fee, policies and practices described herein are improper;

c. Enjoining RentCafe from the wrongful conduct as described herein on behalf of the general public;

d. For an order requiring RentCafe to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

e. Awarding actual damages and statutory damages in an amount according to proof;

f. Awarding treble damages, if permitted by law;

g. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

h. Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs and expenses, pursuant to applicable law and any other basis; and

i. Awarding such other relief as this Court deems just and proper.

///

///

///

///

28

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: February 9, 2026

KALIELGOLD PLLC

By: _Sophia Hoven Gold_

Sophia G. Gold
Amanda J. Rosenberg
Jeffrey D. Kaliel (SBN 238293)

PEARSON WARSHAW, LLP
Rachel Soffin*
Melissa S. Weiner*
Ryan T. Gott*

*Attorneys for Plaintiffs and the Putative Class*

*Pro Hac Vice* Motions to be filed

CLASS ACTION COMPLAINT

# EXHIBIT 1



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Office of the Director
Bureau of Consumer Protection

December 8, 2025

<u>Via E-Mail</u>

[NAME]
[ADDRESS]

Re: Deceptive or Unfair Acts or Practices Relating to the Marketing or Advertising of Residential Rental Units

Dear [NAME]:

The Federal Trade Commission ("FTC" or "Commission") is a federal agency whose mission is to protect Americans from unfair, deceptive, and anticompetitive business practices, without unduly burdening legitimate business activity. As part of that mission, we work to educate businesses about their rights and responsibilities, and where necessary, initiate investigations and enforcement actions.

The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market.[1] Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.[2]

---

[1] *See, e.g.*, Press Release, FTC, FTC Sues Zillow and Redfin Over Illegal Agreement to Suppress Rental Advertising Competition (Sep. 30, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/09/ftc-sues-zillow-redfin-over-illegal-agreement-suppress-rental-advertising-competition; Press Release, FTC, State of Colorado Take Action Against Greystar, Nation's Largest Multi-Family Rental Property Manager, for Deceiving Consumers About Rent Prices (Jan. 16, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-state-colorado-take-action-against-greystar-nations-largest-multi-family-rental-property-manager; Press Release, FTC, FTC Takes Action Against Invitation Homes for Deceiving Renters, Charging Junk Fees, Withholding Security Deposits, and Employing Unfair Eviction Practices (Sep. 24, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/09/ftc-takes-action-against-invitation-homes-deceiving-renters-charging-junk-fees-withholding-security.

[2] See Concurring Statement of Chairman Andrew N. Ferguson, *FTC v. Greystar Real Estate Partners*, Matter No. X250023 (Dec. 2, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/2025.12.02-greystar-chairman-ferguson-statement.pdf; see Presidential Mem., *Delivering Emergency Price Relief for American Families and Defeating the*

Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.

The FTC has authority under Section 5 of the FTC Act, 15 U.S.C. § 45(a), to investigate unfair or deceptive acts or practices in or affecting commerce.[3] In addition, the Gramm-Leach-Bliley Act, 15 U.S.C. § 6821(a)(2), makes it illegal to use false, fraudulent, or fictitious statements or representations to obtain, attempt to obtain, cause the disclosure of, or attempt to cause the disclosure of customer information of a financial institution.

Violations of the FTC Act and the Gramm-Leach-Bliley Act may be subject to legal action and federal district court injunctions. In addition, companies or individuals that violate the Gramm-Leach-Bliley Act may be subject to civil penalties of up to $53,088 per violation pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), and may be required to pay refunds to consumers or provide other relief pursuant to Section 19(b), 15 U.S.C. § 57b(b).

Recently, the FTC has pursued law enforcement actions to protect Americans from deceptive acts and practices in the rental housing market, in violation of the FTC Act and the Gramm-Leach-Bliley Act, including in:

- *FTC v. Invitation Homes*, N.D. Ga. No. 1:24-cv-04280: The FTC alleged that Invitation Homes, the largest single family home owner in the country, violated Section 5 of the FTC Act by, among other things, misrepresenting the total cost of renting homes by excluding mandatory monthly fees from the advertised price, failing to disclose all mandatory monthly fees consumers must pay to rent a home, and misrepresenting deductions against security deposits. The FTC further alleged that Invitation Homes violated the Gramm-Leach-Bliley Act by falsely representing the price of a rental home and thereby obtaining or attempting to obtain customer information of a financial institution. Invitation Homes was ordered to pay $48 million to the Commission for consumer redress.

- *FTC, et al, v. Greystar Real Estate Partners, LLC, et al*, D. Colo. No. 1:25-cv-00165: The FTC alleged that Greystar, the largest residential rental property owner and manager in the United States, violated Section 5 of the FTC Act by misrepresenting the true cost of renting an apartment, by excluding mandatory, fixed fees from the advertised rental price. The FTC further alleged that Greystar violated the Gramm-Leach-Bliley Act by using these false representations to induce consumers to provide their credit card or bank account information to pay nonrefundable application fees, thereby causing the disclosure

---

*Cost-of-Living Crisis* (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/delivering-emergency-price-relief-for-american-families-and-defeating-the-cost-of-living-crisis/.

[3] An act or practice is deceptive if there is a material representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances. *See, e.g., FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001).

2

of customer information of financial institutions. Greystar was ordered to pay $23 million to the Commission for consumer redress and $1 million to the State of Colorado.

Accordingly, I encourage you to conduct a comprehensive review of your practices, including your website hosting platforms and any software or coding controlling the flow of information from your software to internet listing sites, to ensure that you comply with applicable laws and do not impede the ability of property owners and managers to provide consumers with transparent rental prices. If your company is currently engaged in acts or practices that could be in violation of the FTC Act or other rules and statutes enforced by the FTC, I strongly encourage you to discontinue the practices immediately and to notify relevant employees of the discontinuance. Doing so could help ameliorate the detrimental effects of the Biden Administration's cost-of-living crisis currently suffered by American consumers and rental markets.

This letter is not intended to be a comprehensive statement of concerns that may exist in connection with property management software providers. Additionally, please note that I am distributing similar notifications to other property management software providers, and your receipt of this letter is not intended to suggest that you have engaged in illegal conduct. As always, it is your company's responsibility to comply with all requirements of federal law, including Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, and other laws and rules enforced by the Commission. We are monitoring the marketplace for potentially deceptive or unfair acts or practices relating to the marketing and advertising of rental housing and will take additional action as warranted.

Copies of the cases discussed in this letter are available on the Commission's website at www.ftc.gov. The Commission's website has other important resources designed to ensure that business know their responsibilities under the FTC Act and other laws and rules enforced by the Commission. *See, e.g.*, https://www.ftc.gov/business-guidance/advertising-marketing/advertising-marketing-basics.

Thank you for your attention to this matter. Please direct any inquiries concerning this letter to Katherine White at kwhite@ftc.gov, including any requests to meet with FTC staff regarding its subject matter.

Sincerely,

Christopher Mufarrige
Director
Bureau of Consumer Protection

3

9589 0710 5270 1721 1867 35

*Retail*



RDC 99

95833

U.S. POSTAGE PAID
FCM LG ENV
BEVERLY HILLS, CA 90210
FEB 09, 2026

**$12.98**

S2324M501186-10



**KalielGold**
490 43rd Street | No. 122
Oakland | CA 94609

Yardi Systems, Inc.
c/o 1505 Corporation CSC d/b/a Lawyers
Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California 95833