**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

(additional counsel on signature page)

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>        Defendants. | Case No: 2:26-cv-03318-WLH-BFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Phaness Mosley, William Foxx and Karen Picardi ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendants Yardi Systems, Inc. and RentCafe, LLC (collectively, "RentCafe" or "Defendants"), and state:

## NATURE OF THE ACTION

1. There is a cost-of-living crisis in our country, one that is especially acute in the housing market. One reason is the relentless imposition of add-on fees in excess of advertised rental rates—including "pay to pay" fees like those at issue in this Amended Class Action Complaint—wherein consumers are charged add-on junk fees by third-party middlemen merely for doing what they are required to do under the terms of their residential leases: make their rent payments.

2. RentCafe is a middleman foisted onto consumers well after they decide to lease an apartment. The existence of RentCafe is a surprise to consumers who, at the time they decide to rent an apartment, have no idea they will need to make their lease payments through this surprise middleman—or that they will have to pay this surprise middleman for the privilege of making their lease payments. Without authorization or warning, RentCafe inserts itself into the relationship between renters and their landlords, then in effect extracts additional, unauthorized rent payments from renters.

3. Plaintiffs Mosley and Foxx, for example, paid *between $40.00 and $80.00 extra each month* in unauthorized rent to RentCafe, a massive additional burden for households already struggling to make ends meet.

4. Plaintiffs bring this putative class action lawsuit seeking monetary damages, punitive damages, restitution and injunctive relief arising from Defendants' deceptive and unfair imposition of junk "Service Fees" on rent payments completed through RentCafe's website and Resident app.

5. RentCafe's addition of the Service Fee is improper for five reasons. First, it is unfair and deceptive under State consumer protection laws to charge renters fees to make their lease payments, especially when they are not informed of such fees prior

FIRST AMENDED CLASS ACTION COMPLAINT

to leasing an apartment. Just as an advertised hotel rate reasonably implies there will not be additional fees for using a bed, an advertised lease rate reasonably implies a consumer may pay the amount of a lease without additional charges or the assessment of additional, unauthorized rent.

6. RentCafe contracts with thousands of apartment owners, and in each case fails to put processes in place at the time of leasing that would require apartment owners who use its service to procure authorization from consumers to use RentCafe or to pay extra fees or rent to RentCafe.

7. Second, at the time Plaintiffs signed their leases, they were never informed they would be assessed "pay to pay" fees for making their rent payments—and in fact, were promised the opposite. Their lease agreements did not expressly authorize the assessment of "pay to pay" fees. Because Defendants knew or should have known the lease agreements did not authorize additional fees for payments of amounts owed under the lease, the assessment of such fees tortiously interferes with tenants' contracts, which bar pay to pay fees unless expressly authorized by the original agreement.

8. Third, RentCafe's payment interface is deceptive and violates state consumer protection laws—which require prominent and accurate disclosure of add-on fees—and state honest pricing laws, which require the *first* price displayed to a consumer to be the *total* price. Instead, the RentCafe adds percentage-based Service Fees at the last step in the checkout process. Worse, RentCafe provides no fair disclosure on how to avoid the Service Fees.

9. Fourth, RentCafe's imposition of the Service Fees upon consumers violates the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), and numerous state laws including California's Fair Debt Collection Practices Act, California Civil Code §§ 1788.13, *et seq.* ("Rosenthal Act") and the Massachusetts Debt Collection Statute, Mass. Gen. Laws Ch. 93 § 49 ("MDCPA"). Such laws prohibit servicers from imposing fees on payment methods unless those fees are expressly authorized or permitted by law. RentCafe's Services Fees are neither.

FIRST AMENDED CLASS ACTION COMPLAINT

10. No law affirmatively permits RentCafe to charge the Service Fees. And numerous state and federal governmental agencies condemn pay-to-pay fees, like the Service Fee, as unfair. Plaintiffs did not and could not choose their apartment's payment processor, and thus, they must pay RentCafe's unfair fees and cannot elect to utilize other payment processing entities or other means to pay their rent that comply with the law.

11. Nor are RentCafe's Services Fees "expressly authorized" by the lease agreements. Not only do the lease agreements lack any express authorization of the right to charge a pay-to-pay fee, but they prohibit the charging of fees that are in violation of the law.

12. <u>Fifth</u>, any information RentCafe provides consumers about the Service Fees is wholly inadequate. By way of example, while RentCafe's inadequate and deceptive disclosures represent in fine print that the Service Fee "covers bank…and network fees," in actuality, the Service Fee is not a pass-through payment processing fee as represented, but is instead larded with profit for RentCafe.

13. Plaintiffs and Class members are injured by RentCafe's deceptive, unfair and illegal practices. Plaintiffs bring this action on behalf of themselves and the putative Class and seek actual damages, punitive damages, restitution and injunctive relief to prevent RentCafe from continuing to engage in its illegal practices described herein.

## **<u>PARTIES</u>**

14. Plaintiff Phaness Mosley is a citizen and resident of Chula Vista, California. At all relevant times alleged herein, she was a tenant of a property in California and was assessed a Service Fee for paying rent payments through RentCafe.

15. Plaintiff William Foxx is a citizen and resident of Pelham, New York. At all relevant times alleged herein, he was a tenant of a property in New Jersey and was assessed a Service Fee for paying rent payments through RentCafe. His lease is attached hereto as **Exhibit 1**.

FIRST AMENDED CLASS ACTION COMPLAINT

16. Plaintiff Karen Picardi is a citizen and resident of Medford, Massachusetts. At all relevant times alleged herein, she was a tenant of a property in Massachusetts and was assessed a Service Fee for paying rent payments through RentCafe. Her lease is attached hereto as **Exhibit 2**.

17. Defendant Yardi Systems, Inc. is a California corporation headquartered in Santa Barbara, California. Yardi Systems provides property management software and services in the real estate industry. Yardi Systems offers several products to residential and commercial clients worldwide, including the RentCafe platform.

18. Defendant RentCafe, LLC is a Delaware limited liability company headquartered in Santa Barbara, California. RentCafe is a real estate listing platform and property management software that streamlines leasing and living functions for prospective and current renters including, application and lease signing tools, actionable move-in checklists, work order submissions, rewards programs, and an online rent payment portal.

### JURISDICTION, VENUE AND GOVERNING LAW

19. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

    a.     the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B);

    b.     at least one member of the proposed class is a citizen of a State other than California, § 1332(d)(2)(A); and

    c.     the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

FIRST AMENDED CLASS ACTION COMPLAINT

21.    Unless otherwise alleged herein, each of Plaintiffs' claims brought on behalf of the Nationwide Class are governed by the laws of the State of California in accordance with RentCafe's Governing Law provision set forth in RentCafe's Terms of Service.[1]

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.    The Rise of Junk Fees in Renting

22.    Where housing affordability is a significant concern across the country, particularly consumers who rent their homes,[2] the proliferation of rental housing junk fees like RentCafe's Service Fee negatively impacts millions of renter households nationwide.[3]

23.    Service fees for rent payments pose a real threat to consumers' financial stability, particularly considering that they force tenants to spend significant and unbudgeted sums of money each month on top of rent.[4]

24.    "Commonly referred to as 'junk fees', these [Service] fees can be undisclosed, unpredictable, and arbitrary and can quickly accumulate for tenants, putting safe and decent rental housing even more out of reach."[5] These "surprise fees are imposed for services with little to no value to tenants, such as…Service fees. Such

---

[1] https://resources.yardi.com/legal/rentcafe-terms-of-service/ (last accessed June 4, 2026).

[2] Peyton Whitney, Housing Unaffordability Soared to New Highs in 2024, Joint Ctr. for Hous. Stud. of Harvard Univ. (Feb. 4, 2026), https://www.jchs.harvard.edu/blog/housing-unaffordability-soared-new-highs-2024

[3] *"What the Heck, Dude!", How States Can Fight Rental Housing Junk Fees,* National Consumer Law Center, Sept. 2024, available at https://www.nclc.org/wp-content/uploads/2024/09/202409_Report_What-the-Heck-Dude.pdf at pp. 5-7.

[4] *Junk Fees Toolkit,* National Low Income Housing Coalition ("NLIHC") State and Local Tenant Protection Series: A Primer on Renters' Rights, available at https://nlihc.org/sites/default/files/2022-07/SLI_Rental_Fees_Toolkit.pdf at p. 7.

[5] *Id.* at p. 3.

FIRST AMENDED CLASS ACTION COMPLAINT

fees can add up quickly, rendering advertised rental prices inaccurate and sometimes forcing tenants to spend hundreds of dollars each month on top of rents."[6]

25.    In 2022, the National Consumer Law Center ("NCLC") conducted a survey of legal services and nonprofit attorneys throughout the country which examined various types of rental junk fees charged to renters in the rental housing market.[7] The survey revealed that 60% of respondents from 23 states observed convenience fees, and that "[s]ome housing providers no longer accept payment in person or by check, meaning that tenants have to pay their rent online," and often times, must do so "through third-party companies that charge fees."[8]

26.    The failure to include these rental junk fees in the total cost of the advertised monthly rental rate is problematic—"While a renter may be able to manage and plan for high rents if they know about them in advance, they may not be expecting an array of junk fees, which could push them over their budgets."[9]

27.    Indeed, the FTC recently issued a warning to rental management software companies, including RentCafe, that its practices may be unfair and deceptive. Specifically, the FTC stated:

> The FTC is committed to rooting out anticompetitive, unfair and deceptive acts or practices in the rental housing market. Consumers who search for potential rental housing units cannot meaningfully compare alternative choices without understanding the total price required to rent the advertised properties. When consumers do not know the total price of the advertised properties—or any product—they cannot make informed decisions, and the market cannot operate as efficiently as it otherwise would. And unfair and deceptive acts in the rental housing market in a

---

[6] *Id.* at p. 6.

[7] *Too Damn High, How Junk Fees Add to Skyrocketing Rents,* National Consumer Law Center, Mar. 2023, available at *https://www.nclc.org/wp-content/uploads/2023/03/JunkFees-Rpt.pdf*.

[8] *Id.* at pp. 17-18.

[9] *Id.* at p. 6.

FIRST AMENDED CLASS ACTION COMPLAINT

time when hard-working Americans continue to suffer the effects of the Biden Administration's cost-of-living crisis are especially harmful to consumers and markets.

Available information suggests that property management software providers are limiting the ability of rental property managers and owners to accurately advertise the total monthly rental price, inclusive of all mandatory fees. Property management software programs may cause consumer harm and harm to competition in the rental housing market when they do not accurately display complete pricing information across websites hosted on their platforms, or where they restrict property owners' and managers' ability to aggregate or convey accurate cost information to consumers on third-party listing sites.[10]

28.     Thus, the FTC warned property management software providers, including RentCafe, to comprehensively review their practices to ensure consumers are provided "with transparent rental prices."[11]

29.     But RentCafe's Service Fees impede that effort.

30.     The consequences are significant. As RentCafe acknowledged in a July 31, 2025, blog post:

[a]lmost half (49.7%) of renters spend over 30% of their income on housing, and nearly a quarter are severely burdened, paying more than half. That's a lot of people and money. The overall cost of renting, including utilities and other basic housing costs, has increased by 3.8% year-over-year—the largest annual real increase in rental costs since at least 2011. That, alongside an increase in grocery, gas, and utility expenses, makes it nearly impossible to have any financial breathing room—but rent waits for no one. Unfortunately, this could mean late fees, overdraft charges, or even falling behind on rent.[12]

31.     Despite its acknowledgment of the financial hardships consumers face in order to meet their monthly rental obligations, RentCafe nevertheless charges these

---

[10] *See* **Exhibit 3** (footnotes omitted).

[11] *See id.*

[12]     https://www.rentcafe.com/blog/apartmentliving/tips-tricks-renters/managing-flexible-rent-payments/ (last accessed June 4, 2026).

8

FIRST AMENDED CLASS ACTION COMPLAINT

same consumers, like Plaintiffs and Class members, a Service Fee to make their monthly rental payments.

**B.    Consumers Don't Agree to Pay RentCafe Anything at the Time of Leasing**

32.    RentCafe contracts with property management companies throughout the country to provide various marketing, leasing and resident services, including collecting rent payments from consumers through its Resident app and online payment processing platform.[13]

33.    In 2025, approximately 3,000 landlords contracted with RentCafe as a property management tool, constituting a market share of 2.46% in the property-management market.[14]

34.    When consumers like Plaintiffs enter into lease agreements, the amount they are to pay each month under the lease is a material term of the lease agreements.

35.    The lease agreements explicitly list the monthly cost of rent as well as the costs of other services that are included in the cost of rent.[15] However, the lease agreements do not specifically authorize the assessment of RentCafe's Service Fee. Furthermore, RentCafe's payment platform lists the amount consumers like Plaintiffs are to pay for their rent under their lease agreements and are not informed of any Service Fee in addition to their monthly cost of rent until the final payment screen.

---

[13] https://www.yardi.com/product/rentcafe-living-resident/ (last accessed Jan. 26, 2026).

[14] https://6sense.com/tech/property-management/yardi-rentcafe-market-share (last accessed Jan. 26, 2026).

[15] *See e.g.*, Mass. Code. Regs. 38.00 (requiring the disclosure of all mandatory and optional fees prior to requiring tenant screening information, a tenant signing the lease or submitting payment).

FIRST AMENDED CLASS ACTION COMPLAINT

36. As a result, consumers and Plaintiffs wind up paying an additional monthly charge in the form of the Service Fee, merely for the opportunity to pay their rent.

37. In short, Plaintiffs reasonably understood the advertised lease rates to mean they could pay the amount of that lease by any means provided, and without additional charges or the assessment of additional, unauthorized rent.

38. RentCafe contracts with thousands of apartment owners, and in each case fails to put processes in place at the time of leasing that would require apartment owners who use its service to procure authorization from consumers to use RentCafe or to pay extra fees or rent to RentCafe.

39. RentCafe charges consumers a "pay to pay" Service Fee on rent payments in an amount beyond the price of their monthly rent obligation.

40. RentCafe's Service Fee amounts to additional unexpected rent for tenants over and above the amount that was contracted for.

**C.     RentCafe Charges Consumers Service Fees for Processing Rent Payments Over and Above the Amounts Allowed by Lease Agreements**

41. As described above, at the time tenants sign their leases, they are not informed they will be assessed "pay to pay" fees for making monthly rent payments.

42. In fact, tenants are promised the opposite. The lease agreements bar the assessment of "pay to pay" fees.

43. Because the lease agreements did not authorize additional fees for payments of amounts owed under the lease, the assessment of such fees violates state debt collection practices acts, which bar pay to pay fees unless expressly authorized by the original agreement.

44. And while all of Plaintiffs' leases expressly denote many other fees or charges that may be assessed, they never once state that fees for making rent payments may be assessed.

FIRST AMENDED CLASS ACTION COMPLAINT

45.     The lease agreements therefore bar the assessment of "pay to pay" fees.

**D.     RentCafe's Service Fee is a Junk Fee that Violates Federal Guidance and State Consumer Protection Laws**

46.     RentCafe's Service Fee is precisely the type of "junk fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.[16]

47.     As the FTC said recently in its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.[17]

48.     In a press release, FTC Chair Lina M. Khan articulated the financial harm to consumers arising from "service fees" imposed on "captive consumers," such as those who are dealing with a company that has "exclusive rights" like Defendants' in particular:

> It's beyond frustrating to end up spending more than you budgeted because of random, arbitrary fees. No one has ever felt that a 'Service fee' was convenient. Companies should compete to provide the best quality at the best price, not to see who can squeeze the most added

---

[16] The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/

[17] Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

FIRST AMENDED CLASS ACTION COMPLAINT

expenses out of consumers. That's especially true at a time when families are struggling with the effects of inflation.[18]

49.    The CFPB has taken steps to address junk fees like RentCafe's pay-to-pay Service Fee. In June 2022, it issued an advisory opinion in which it "affirm[ed]" its position that imposition of "pay-to-pay or 'convenience' fees, such as fees imposed for making a payment online or by phone," where those fees are not contractually or legally authorized, is an "unfair or unconscionable means to collect or attempt to collect any debt" prohibited by Section 808(1) of the FDCPA and the CFPB's regulations implementing that provision.[19]

50.    This advisory opinion comes on the heels of other efforts by the CFPB to respond to the problems caused by pay-to-pay fees. In October 2021, the CFPB filed an amicus brief in a matter before the Ninth Circuit agreeing that the FDCPA prohibits the charging of any amount not expressly authorized by the agreement creating the debt or otherwise affirmatively permitted by state law. The CFPB explained:

> The FDCPA was designed to rein in unethical debt collectors, and Section 1692f(1) specifically was designed to limit the amounts that debt collectors could try to collect from consumers. But under the district court's interpretation, debt collectors can collect additional fees, like the pay-to-pay fees at issue here, whenever no other law specifically prohibits them—leaving debt collectors with the power and discretion to try to collect additional fees during the collection process. This is particularly problematic given that consumers have no ability to shop around for a better deal. And it's not as if these pay-to-pay fees are necessary for debt collectors to offer phone or online payment options that consumers might want, as it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail

---

[18] Federal Trade Commission, *Federal Trade Commission Explores Rule Cracking Down on Junk Fees*, Oct. 20, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/10/federal-trade-commission-explores-rule-cracking-down-junk-fees.

[19] *See* 12 CFR part 1006.

FIRST AMENDED CLASS ACTION COMPLAINT

(which is typically the fee-free option). Pay-to-pay fees are thus most often just a way for debt collectors to take advantage of consumers by trying to extract more money than they originally bargained for or reasonably expected to pay.[20]

51.    Similarly, the states have taken action to stop pay-to-pay fees. For example, in the past decade, New York's Department of Financial Services has entered into five consent orders or agreements with entities charging unlawful pay-to-pay fees.[21]

52.    In July of 2024, California expanded its Consumers Legal Remedies Act ("CLRA") by amending to make "drip pricing" illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service.[22] Under the new California law, dubbed the "Honest Pricing Law," it is now illegal to advertise a price without advertising it may be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay."[23] As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that

---

[20] *Thomas-Lawson v. Carrington Mort. Servs.*, 9th Cir. No. 21-55459, Dkt. 22 (*Brief of Amicus Curiae Consumer Financial Protection Bureau in Support of Plaintiffs-Appellants*) at 11.

[21] *See* Consent Order to Ocwen Financial Corporation, Ocwen Loan Servicing LLC for the following dates: March 27, 2017, Dec. 22, 2014, Dec. 5, 2012 and Dec. 15, 2011, available at https://www.dfs.ny.gov/industry_guidance/enforcement_actions_mortgage.

[22] California Civil Code Section 1770(a)(29).

[23] *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed June 4, 2026).

FIRST AMENDED CLASS ACTION COMPLAINT

customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.[24]

53.     Effective September 2, 2025, the State of Massachusetts passed a similar regulation that strictly prohibits businesses from charging unfair or deceptive "junk fees" like RentCafe's Service Fee.[25] In pertinent part, the express terms of this regulation requires businesses to disclose, at both the initial and final presentation of the price of any product or service, including dwelling units for rent or lease, "any fees, charges, or other expenses . . . that are optional to the consumer or waivable by the seller, the fact that such fees, charges, or other expenses are optional to the consumer or waivable by the seller, as well as readily available instructions regarding how to avoid such fees, charges, or other expenses."[26]

54.     In an article, Massachusetts Attorney General Andrea Joy Campbell expounded upon the rollout of the new "junk fee" regulations and explained how "these new rules will require businesses to disclose the full price of their goods and services upfront" in the apartment rental market:

> It's move-in season in Massachusetts, and you may have just seen an ad for a studio apartment for $2,500 per month. That amount is going to stretch your budget, but recognizing how competitive the housing market is, you know you need to jump on that rental quickly.
>
> So, you head to the management office the very next day to sign your lease. Just before signing, you notice the amount you'd have to pay every month will actually be $2,750 – beyond what you have budgeted for rent. The extra $250 comes from a mandatory "trash pick-up" fee combined with a vague "amenities" fee. You don't want to start the daunting apartment search process over again, so you sign the lease. But the entire

---

[24] *Id*. at p. 4 (emphasis added).

[25] *See* Unfairness and Deception in Connection with Marketing/Solicitation/Sale, 940 C.M.R. 38.04; 38.09.

[26] *Id*. at 38.04(2)(b); (3)(c); 38.03.

FIRST AMENDED CLASS ACTION COMPLAINT

process leaves you feeling misled and paying more than you originally anticipated.

. . .

These fees are not simply an inconvenience – they're a widespread, costly problem impacting all of us. Every year, Americans spend tens of billions of dollars on hidden or surprise "junk fees" that deceptively raise costs beyond advertised prices. As consumers face rising costs of living, these pesky fees quietly drain consumers' wallets.[27]

55.     RentCafe violates federal guidance and state consumer protection laws by charging the Service Fee for processing rent payments on the RentCafe platform.

**E.     RentCafe's Pay-to-Pay Service Fee is Prohibited by the FDCPA and Analogous State Statutes**

56.     In addition to RentCafe's imposition of the pay-to-pay Service Fee violating federal junk fee guidance and state consumer protection laws, the Service Fee also violates the FDCPA and analogous state statutes as an unlawful debt collection practice.

57.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

58.     The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id*. § 1692a(3).

59.     The FDCPA defines "debt collector" as "any person who uses . . . any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id*. § 1692a(6).

---

[27] *'Junk Fees' unfairly rob consumers. New Regulations banning them go into effect today*, CommonWealth Beacon, Andrea Joy Campbell, Sept. 2, 2025, available at https://commonwealthbeacon.org/opinion/junk-fees-unfairly-rob-consumers-new-regulations-banning-them-go-into-effect-today/.

FIRST AMENDED CLASS ACTION COMPLAINT

60.    The FDCPA defines communication as "conveying of information regarding a debt directly or indirectly to any person through any medium." *Id*. § 1692a(2).

61.    The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that] are primarily for personal, family, or household purposes." *Id*. § 1692a(5).

62.    The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id*. § 1692e.

63.    The FDCPA also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," including "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id*. § 1692f(1).

64.    Courts have interpreted § 1692f(1) as prohibiting the charging of any amount not expressly authorized in the agreement creating the debt or affirmatively permitted by some state or federal law, including pay-to-pay fees like RentCafe's Service Fee. *See e.g.*, *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022); *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136 (E.D.N.Y. 2024); *see also Tuttle v. Equifax Check*, 190 F.3d 9, 11, 15 (2d Cir. 1999) (applying FDCPA to $20.00 service charge imposed to defray collection costs); *Schwartz v. I.C. System, Inc.*, No. 16-CV-5173 (DLI)(LB), 2018 WL 1582224, at *3 (E.D.N.Y. Mar. 30, 2018) (holding that the processing fee associated with using online debt payment method is an "amount" under FDCPA); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 582 (E.D.N.Y. 2015) ("Collection of this [processing] fee fits within the scope of conduct described in [Section] 1692f(1) [of FDCPA] and, by operation of that provision, would be deemed a violation of [Section] 1692f.") (granting summary

FIRST AMENDED CLASS ACTION COMPLAINT

judgment in part); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014) (concluding that the $5.00 credit card processing fee for any debt payments made over the phone is "incidental to the principal obligation" under FDCPA); *Shami v. Nat'l Enter. Sys.*, No. 9-CV-722 (RRM) (VVP), 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010) (holding that FDCPA applies to the pay-by-phone fees that were incidental to the plaintiff's purported actual debt); *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020) ("Any separate contract to pay an incidental fee is prohibited unless 'permitted by law'—that is, by some state or federal statute or regulation. Because no such law exists, the contract and the [pay-to-pay] fee remain unlawful."), *Simmet v. Collection Consultants of Cal.*, No. 16-CV-2273 (BRO), 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (rejecting arguments that convenience fees do not violate the FDCPA because they were optional, considered a separate agreement, and were not connected with the debt), *Lindblom v. Santander Consumer USA, Inc.*, No. 15-CV-990 (LJO) (BAM), 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016) (joining the "overwhelming majority of courts" and determining that fees assessed for debt payments made online or via telephone violated Section 1692f(1) of the FDCPA), *Wittman v. CB1, Inc.*, No. 15-CV-105 (BLG) (SPW) (CSO), 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016), *R. & R. adopted*, No. 15-CV-105 (BLG) (BMM), 2016 WL 3093427 (D. Mont. June 1, 2016) (following "the majority of courts" and holding that a "transaction fee imposed for using a certain payment method" was impermissible under Section 1692f(1) of the FDCPA); *Thomas v. John A. Youderian Jr. LLC*, 232 F. Supp. 3d 656 (D.N.J. 2017) (finding convenience fee charged was covered by the FDCPA).

65.    Many other states have adopted debt collection statutes that contain language mirroring the FDCPA, 15 U.S.C. § 1692f(1).

66.    California's Rosenthal Act is a remedial statute that should be interpreted broadly in order to effectuate its purpose. It defines "debt collector" as "any person

17

FIRST AMENDED CLASS ACTION COMPLAINT

who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c).

67. The Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f).

68. The Rosenthal Act defines "consumer credit transaction" as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

69. The Rosenthal Act makes it illegal for any entity covered by it to violate the federal FDCPA. Cal. Civ. Code § 1788.17. Thus, because RentCafe's pay-to-pay Service Fee violates section 1692f(1) of the FDCPA, such fees violate section 1788.17 of the Rosenthal Act.

70. The Rosenthal Act prohibits, "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b).

71. RentCafe's pay-to-pay Service Fees is a fee for a service offered by the debt collector.

72. The Rosenthal Act also makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

73. Another such state is Massachusetts. In Massachusetts, the MDCPA provides that "[n]o one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner." Mass. Gen. Laws Ch. 93 § 49.

FIRST AMENDED CLASS ACTION COMPLAINT

74.    The MDCPA defines "creditor," in part, as "any person and his or her agents, servants, employees, or attorneys engaged in collecting a debt owed or alleged to be owed to him or her by a debtor...." 940 C.M.R. § 7.03.

75.    The MDCPA defines "debt" as "money or its equivalent which is, or is alleged to be, more than 30 days past due and owing, unless a different period is agreed to by the debtor, under a single account as a result of a purchase, lease, or loan of goods, services, or real or personal property, for personal, family or household purposes or as a result of a loan of money which is obtained for personal, family or household purposes whether or not the obligation has been reduced to judgment." *Id*.

76.    Where a party violates the FDCPA, a *per se* violation of the MDCPA is found. *See Espinosa v. Metcalf*, 575 F. Supp. 3d 250, 261 (D. Mass. 2021).

**F.    RentCafe's Deceptive Rental Payment Process**

77.    The RentCafe payment platform is how all Plaintiffs and Class members paid their rent and were assessed the Service Fee.[28]

78.    The RentCafe payment platform is deceptive and violates state law insofar as it fails to disclose the total price consumers will pay until the final payment screen and fails to reasonably inform consumers how to avoid the Service Fee.

79.    Consumers making their rental payments through the RentCafe payment platform are not informed of the amount RentCafe charges for the Service Fee until the final "Confirm" payment screen.

80.    Moreover, at no point during the payment process are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe the fee is mandatory and unavoidable.

---

[28]    *See*    https://apps.apple.com/us/app/rentcafe-resident/id541403633    ("The RentCafe Resident app has been designed for communities that use the RentCafe platform as their Resident Portal.") (last accessed June 4, 2026).

FIRST AMENDED CLASS ACTION COMPLAINT

81.    RentCafe's inadequate and untimely disclosure of the Service Fee, as well as RentCafe's failure to adequately inform consumers of alternative ways to pay their rent to avoid the Service Fee, violates states' honest pricing laws and is unlawful.

82.    What's worse, RentCafe programs payment platform to automatically default to a payment method with added Service Fees. Upon information and belief, RentCafe is aware that by programming its payment platform with a "negative option" to automatically opt-in consumers to pay Service Fees, most consumers will pay them. On information and belief, RentCafe is further aware that had it programmed its payment platform to offer an *optional* Service Fee (requiring an opt-in or providing fairly disclosed options to remove or avoid such fees, the vast majority of consumers would not pay the Service Fee).

83.    As the FTC notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that "[a] 'pre-checked box' does not constitute affirmative consent."[29] Here too. By automatically opting consumers into a default payment method that includes fees, RentCafe tricks consumers into paying additional and unnecessary fees.

**G.    RentCafe's Service Fees Are Hidden Profit**

84.    RentCafe's Service Fees are also deceptive, unfair and unlawful insofar as they constitute hidden profit.

85.    While RentCafe claims in fine print that the Service Fees "covers bank . . and network fees," that is false. Instead, the Service Fees constitute profit.

86.    Payments by check can cost payment processors like RentCafe and landlords and/or property managers anywhere between $1.01 and $2.00 per transaction in processing and other fees, per 2022 report by the Association for Financial

---

[29] https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

FIRST AMENDED CLASS ACTION COMPLAINT

Professionals.[30] Every check needs to be opened, reviewed, keyed into the computer system to apply to the loan and deposited. Delays in postal operations and the high risk of human error generate customer service calls and require internal checkpoints and increased oversight. Tenants who are concerned about the timeliness of their rental payment may call to ensure it was received and properly credited, adding to the customer service work associated with this routine part of rent collection.

87.    Because it is so expensive to process check transactions, most landlords and/or property managers in the country mandate that their tenants make their monthly rental payments online via electronic means (*e.g.*, credit card, debit card or ACH transfer). While offered under the auspice of improving services for tenants, the cost of electronic payment methods range from a few cents (ACH and debit cards) to 1.97% of the total transaction amount (credit cards).[31] As a result, promoting payment of rent via electronic means reduces landlords' and/or property managers' overhead costs enormously.

88.    For many tenants, the automatic ACH system is impractical as it requires a tenant to agree to a fixed amount and date for the debit each month out of a pre-determined bank account, and increases a tenant's vulnerability to banking errors. Tenants may have budgetary needs or personal preferences that cause them to want more control over their finances. Some may wish to choose their payment method on

---

[30] *See* https://www.nacha.org/news/ach-costs-are-fraction-check-costs-businesses-afp-survey-shows; https://www.afponline.org/docs/default-source/registered/2022-afp-payments-cost-survey-highlights.pdf

[31] *See* https://www.federalreserve.gov/paymentsystems/regii-average-interchange-fee.htm (Following the 2011 passage of the Durbin Amendment, debit card interchange fees in the U.S. are capped at $0.21 plus 0.05% of the transaction value); https://wallethub.com/edu/credit-card-interchange-fees-by-country/129627 (Average credit card interchange fee in the U.S.: 1.97% (Visa) and 1.79% (Mastercard)).

21
FIRST AMENDED CLASS ACTION COMPLAINT

a monthly basis. Others may be sharing responsibility for paying the rent with another person, and funds to pay it come from multiple financial accounts.

89.    As evidenced by Plaintiffs' experience below, each time Plaintiffs paid their rent through RentCafe, they were charged Service Fees of approximately 2.2-2.7% on credit card payments and 2.5% on debit card payments.

90.    These Service Fees are materially higher than the costs incurred by RentCafe, can add up to hundreds of dollars over the life of a lease agreement, and provide millions of dollars in profits for RentCafe. Such profit is unlawful.[32]

91.    RentCafe gets away with its illegal pay-to-pay Service Fees because tenants are forced to complete their rental payments through RentCafe, cannot choose another payment processor or shop around for a better deal. Tenants are forced to have RentCafe as their rental payment processor.

92.    In short, RentCafe misleads consumers into believing the Service Fees are a legitimate pass-through cost, when they are not. They are an undisclosed source of profit for RentCafe.

**C.    Plaintiffs' Experiences**

<u>Plaintiff Mosley</u>

93.    Since approximately June 2024, Plaintiff Mosley rented an apartment in Chula Vista, California and paid rent via RentCafe.

94.    For example, on August 27, 2024, Plaintiff Mosley paid her monthly rent of $1,800.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $39.60. Similarly, on May 28, 2025, Plaintiff Mosley paid her monthly rent of

---

[32] *See e.g.*, Mass. Gen. Laws Ch. 140D, §28A (prohibition on the imposition of a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash check or similar means); 15 U.S.C. § 1693o-2 (for debit card transactions capped the interchange rate paid to non-exempt card issuers at 0.05 percent plus twenty-one cents.), 12 CFR part 235.

FIRST AMENDED CLASS ACTION COMPLAINT

$1,912.00 with her Visa credit card and was charged a Service Fee from RentCafe totaling $42.06. These fees were automatically added to Plaintiff's totals at the last step in the payment process.

95. None of these fees were allowed by her lease agreement.

96. Plaintiff Mosley was not informed of the fee until she first paid it.

97. Moreover, RentCafe did not adequately or transparently disclose how to avoid the Service Fee.

98. Plaintiff Mosley relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

99. Therefore, Plaintiff Mosely was unlawfully, unfairly and deceptively charged Service Fees that she should not have paid.

Plaintiff Foxx

100. From approximately September 1, 2022, through September 30, 2023, Plaintiff Foxx rented an apartment in Newark, New Jersey and paid rent through RentCafe.

101. For example, on October 2, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $65.00. Similarly, on November 12, 2022, Plaintiff Foxx paid his monthly rent of $2,600.00 with his credit card and was charged a Service Fee from RentCafe totaling $71.90. These fees were automatically added to Plaintiff's totals at the last step in the payment process.

102. None of these fees were allowed by his lease agreement.

103. Plaintiff Foxx was not informed of the fee until he first paid it.

104. Moreover, RentCafe did not adequately or transparently disclose how to avoid the Service Fee.

105. Plaintiff Foxx relied on Defendants' misrepresentations and omissions about the Service Fee in making his rent payments.

FIRST AMENDED CLASS ACTION COMPLAINT

106.   Therefore, Plaintiff Foxx was unlawfully, unfairly and deceptively charged Service Fees that he should not have paid.

Plaintiff Picardi

107.   From approximately September 1, 2023, through January 16, 2025, Plaintiff Picardi rented an apartment in Malden, Massachusetts and paid her rent via RentCafe.

108.   For example, on October 1, 2023, Plaintiff Picardi paid a portion of her monthly rent with her debit card in the amount of $340.00 and was charged a Service Fee from RentCafe totaling $8.50. This fee was automatically added to Plaintiff's total at the last step in the payment process.

109.   None of these fees were allowed by her lease agreement.

110.   Plaintiff Picardi was not informed of the fee until she first paid it.

111.   Moreover, RentCafe did not adequately or transparently disclose how to avoid the Service Fee.

112.   Plaintiff Picardi relied on Defendants' misrepresentations and omissions about the Service Fee in making her rent payments.

113.   Therefore, Plaintiff Picardi was unlawfully, unfairly and deceptively charged Service Fees that she should not have paid.

///

///

///

///

**PLAINTIFFS' CLAIMS SOUNDING IN FRAUD**

**ARE ALLEGED WITH SPECIFICITY**

114.   Defendants are in the best position to know what content they placed on their RentCafe payment platform during the relevant timeframe, and the knowledge they had regarding the Service Fee and related disclosures, to the extent necessary,

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs satisfy the pleading requirements for claims sounding in fraud by alleging the following facts with particularity:

115. **WHO**: Defendants unlawfully, unfairly, deceptively and/or misleadingly imposed the Service Fee on consumers paying their rent.

116. **WHAT**: Defendants' conduct was, and continues to be, fraudulent because they hid, concealed, obfuscated or otherwise disguised additional charges to consumers paying their rent (1) which is in violation of their lease agreements; (2) without disclosing the fee until the final step in the payment process, and without disclosing how to avoid the fee; and (3) included hidden profit disguised as a pass-through cost. Defendants' conduct deceived Plaintiffs and Class members insofar as the Service Fee is untimely and misleadingly disclosed and unlawfully charged. RentCafe knew, or should have known, that the Service Fee is undisclosed at the time consumers sign their leases and is in fact barred by them. Moreover, Defendants knew, or should have known, that they failed to adequately disclose the Service Fee, and how to avoid it and that this fee is material to reasonable consumers, including Plaintiffs and Class members. Moreover, the Service Fee is a for-profit "junk fee" disguised as a pass-through cost.

117. **WHEN**: Defendants engaged in these unlawful, unfair, deceptive or otherwise misleading practices during the putative Class periods and at the time Plaintiffs and Class members signed their lease agreements and made rental payments through Defendants' payment platform, prior to and at the time Plaintiffs and Class members made claims after realizing the unlawful junk fee and continuously throughout the applicable Class periods.

118. **WHERE**: Defendants' unlawful, unfair and deceptive junk fee was uniformly applied to consumers who made rental payments through the RentCafe payment platform. Defendants' website, advertising, other marketing materials and communications with Plaintiffs and other tenants similarly failed to explain or otherwise disclose the Service Fee being charged.

FIRST AMENDED CLASS ACTION COMPLAINT

119. **HOW**: Defendants hid, obfuscated or otherwise concealed from consumers the imposition of the Service Fee by failing to disclose it until the last step in the payment process, and without disclosing how to avoid it. Consumers are never informed of the fee at the time they sign their lease agreements. Even if consumers were to discover the Service Fee, they may reasonably believe it is a pass-through cost, when it is not.

120. **WHY**: Defendants engage in their unlawful, unfair and deceptive junk fee scheme in order to induce Plaintiffs, Class members and all reasonable consumers to pay the undisclosed and unlawful Service Fee, resulting significant revenues for Defendants.

121. **INJURY**: Plaintiffs and Class members paid a premium or otherwise paid more for their rent when they otherwise would not have absent Defendants' misrepresentations.

## CLASS ACTION ALLEGATIONS

122. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated. The proposed class includes:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe when making a rent payment through RentCafe's payment platform (the "Nationwide Class").

123. Plaintiff Mosley further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of California when making a rent payment through RentCafe's payment platform (the "California Class").

124. Plaintiff Foxx further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of New Jersey when making a rent payment through RentCafe's payment platform (the "New Jersey Class").

FIRST AMENDED CLASS ACTION COMPLAINT

125. Plaintiff Picardi further brings this action individually and as a representative of all those similarly situated and the members of the following class:

> During the fullest period allowed by law, all persons who were charged a Service Fee by RentCafe in the State of Massachusetts when making a rent payment through RentCafe's payment platform (the "Massachusetts Class").

126. The Nationwide Class, California Class, New Jersey Class and Massachusetts Class are collectively referred to herein as the "Class."

127. Excluded from the Class are Defendants, their subsidiaries and affiliates, officers, directors and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

128. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add a Class(es), if necessary, before this Court determines whether certification is appropriate.

129. **Numerosity (Rule 23(a)(1)).** The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to RentCafe's records. The proposed Class is also sufficiently ascertainable because RentCafe has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiffs.

130. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because RentCafe acted on grounds generally

FIRST AMENDED CLASS ACTION COMPLAINT

applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether RentCafe's Service Fee is unfair, unlawful, deceptive or misleading;

b. Whether RentCafe's Service Fee constitutes violations of the laws asserted herein;

c. Whether Plaintiffs and members of the Class are harmed by RentCafe's alleged misconduct;

d. Whether RentCafe is unjustly enriched;

e. Whether RentCafe tortiously interfered with Class members' lease agreements;

f. Whether Plaintiffs and the Class are damaged and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent RentCafe from continuing to engage in the wrongful conduct described herein.

131. **Typicality (Rule 23(a)(3)).** Plaintiffs' claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by RentCafe, as described herein.

132. Plaintiffs are more than adequate representatives of the proposed Class in that they suffered damages because of RentCafe's improper business practices. Additionally:

a. Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiffs and the unnamed Class members;

FIRST AMENDED CLASS ACTION COMPLAINT

c.    Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d.    Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

133.    **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning RentCafe's liability to all Class members for charging the Service Fee on rent payments through the RentCafe payment platform predominate over any questions affecting only individual Class members. Plaintiffs' proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court, especially where, as here, individual Class members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

134.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

135.    **Particular Issues (Rule 23(c)(4)).** Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(c)(4). Plaintiffs' claims consist of particular

29

FIRST AMENDED CLASS ACTION COMPLAINT

issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance the litigation.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Tortious Interference with Contract**
***(By Plaintiffs, individually, and on behalf of the Nationwide Class, California Class, New Jersey Class and Massachusetts Class)***

136. Plaintiffs, individually, and on behalf of the Nationwide Class and alternatively, California Class, New Jersey Class and Massachusetts Class, reallege and incorporate paragraphs 1 through 133 as if fully set forth herein.

137. Plaintiffs and members of the Class entered into valid lease agreements with rental property management companies and/or landlords based on their economic necessity for rental housing services.

138. The lease agreements do not disclose—and in fact bar—the addition of Service Fees by requiring only the payment of specified rent payments each month. *See, e.g.,* Exs. 1-2.

139. RentCafe knew, or should have known, about this contractual relationship when it acted as the third-party platform through which Plaintiffs and Class members were required to make monthly rental payments to those rental property management companies and landlords.

140. RentCafe intentionally and/or wrongfully interfered with those lease agreements to Plaintiffs' and Class members' detriment by charging the Service Fee, which amounted to undisclosed rent costs.

141. RentCafe's act of charging the Service Fee on Plaintiffs' and Class members' rent payments was designed to induce and did induce breach and/or disruption of their contractual relationship with those entities.

142. RentCafe's intentional interference caused Plaintiffs and members of the Class actual harm in the form of the wrongfully collected Service Fee.

30

FIRST AMENDED CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

**Fair Debt Collections Practices Act**
**Violations of 15 U.S.C. §§ 1692, *et seq.***
***(By Plaintiffs, individually, and on behalf of the Nationwide Class, California***
***Class, New Jersey Class and Massachusetts Class)***

143. Plaintiffs, individually, and on behalf of the Nationwide Class, and alternatively, California Class, New Jersey Class and Massachusetts Class, reallege and incorporate paragraphs 1 through 133 as if fully set forth herein.

144. Plaintiffs and the Nationwide Class are "consumers" as defined by 15 U.S.C. § 1692a(3) because Plaintiffs and the Nationwide Class members entered into lease agreements primarily for personal, family, or household use.

145. RentCafe is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, *i.e.*, the holders of the lease agreements.

146. Pursuant to a contract with their landlords and/or property managers, to which Plaintiffs were not a party, RentCafe acquired the rights to service and collect the rental payments of Plaintiffs, which were due monthly.

**RentCafe Violated § 1692f of the FDCPA**

147. The FDCPA, 15 U.S.C. § 1692f provides, in relevant part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . .

148. RentCafe's pay-to-pay Service Fee is not "**expressly authorized by the agreement creating the debt**." As set forth in Plaintiffs' lease agreements, none of the lease agreements expressly authorize RentCafe's pay-to-pay Service Fee.

31

FIRST AMENDED CLASS ACTION COMPLAINT

149.   Pay to Pay fees **are not permitted by law** and are in fact prohibited by law. No law permits RentCafe to assess the pay-to-pay Service Fee. Rather, pay-to-pay fees, like RentCafe's pay-to-pay Service Fee, violate myriad laws.

150.   RentCafe violated 15 U.S.C. § 1692f when it collected its pay-to-pay Service Fee from Plaintiffs and from members of the Nationwide Class because their lease agreements do not expressly authorize such fees and no law permits their collection.

### RentCafe violated § 1692e(2)(A) of the FDCPA

151.   The FDCPA, 15 U.S.C. § 1692(e) provides, in relevant part:

False or misleading representations

A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) (10) The false representation of –

(A) the character, amount, or legal status of any debt; . . .

(10)The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . .

RentCafe violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character and status of Plaintiffs' and Nationwide Class members' rental obligations.

152.   RentCafe's violations of Section 1692f and false representations that it was entitled to collect pay-to-pay Service Fees from Plaintiffs and members of the Nationwide Class further violated 15 U.S.C. §§ 1692e(2) and e(10).

153.   As a result of RentCafe's violations of 15 U.S.C. §§ 1692e and 1692f, Plaintiffs and members of the Nationwide Class were harmed monetarily and are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692k, together with reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**The Rosenthal Fair Debt Collections Practices Act**
**Violations of California Civil Code §§ 1788.13, *et seq.***
***(By Plaintiff Mosley, individually, and on behalf of the California Class)***

154.   Plaintiff Mosley, individually, and on behalf of the California Class, realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

155.   The Rosenthal Act applies to RentCafe because it regularly engages in debt collection as defined by the statute. Cal. Civ. Code § 1788.2.

156.   RentCafe knew that its pay-to-pay Service Fees were not expressly set out in Plaintiff Mosley's lease agreement, or the lease agreements of the California Class members, yet it collected them anyway.

157.   The Rosenthal Act makes it illegal to represent that consumer debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e).

158.   By assessing pay-to-pay Service Fees, RentCafe represented that the monthly rental payments of Plaintiff Mosley and the California Class members may be increased by the addition of the pay-to-pay Service Fee, even though pay-to-pay fees may not be legally added to the existing obligation.

159.   This conduct violated the Rosenthal Act.

160.   The Rosenthal Act also prohibits "collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14.

161.   When RentCafe collected the pay-to-pay Service Fee from Plaintiff Mosely and the California Class members, it collected (or attempted to collect) fees or charges for services rendered that were not permitted by law. This conduct violated the Rosenthal Act.

FIRST AMENDED CLASS ACTION COMPLAINT

162. By charging the pay-to-pay Service Fee, a portion of which it retains, RentCafe acted in violation of the federal FDCPA, which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

163. The lease agreements of Plaintiff Mosley and the California Class members do not expressly authorize RentCafe to collect pay-to-pay fees.

164. Although the lease agreements of Plaintiff Mosely and the California Class members do not expressly authorize collection of the pay-to-pay Service Fee, RentCafe collected such fees anyway.

165. In so doing, RentCafe violated 15 U.S.C. § 1692f.

166. The Rosenthal Act makes it illegal for any entity covered by the Rosenthal Act to violate the federal FDCPA. Cal. Civ. Code § 1788.17. By violating the federal FDCPA, RentCafe violated the Rosenthal Act.

167. Plaintiff Mosley and the California Class members were harmed when RentCafe violated the Rosenthal Act through the above-described conduct.

168. As a result of each and every violation of the Rosenthal Act, Plaintiff Mosely and the California Class members are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation, pursuant to Cal. Civ. Code § § 1788.30(b), 1788.17 and 1788.32, to the full extent provided by law; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c).

///

///

## FOURTH CAUSE OF ACTION

**California's Unfair Competition Law (the "UCL")**
**Violations of California Business & Professions Code §§ 17200, *et seq.***
*(By Plaintiff Mosley, individually, and on behalf of the California Class)*

34

FIRST AMENDED CLASS ACTION COMPLAINT

169. Plaintiff Mosley, individually, and on behalf of the California Class, realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

170. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice." Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language.

171. RentCafe's conduct related to charging the Service Fee on rent payments violates each of the statute's "unfair," "unlawful" and "fraudulent" prongs.

172. The UCL imposes strict liability. Plaintiffs need not prove that RentCafe intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

173. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

174. A business act is "fraudulent" under the UCL if it is likely to deceive members of the public.

175. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

176. RentCafe commits unfair business acts and practices by charging the junk Service Fee, which serves no legitimate purpose except profit for RentCafe at the expense of consumers.

177. RentCafe's acts and practices offend an established public policy in the marketplace and constitute immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

FIRST AMENDED CLASS ACTION COMPLAINT

178. The harm to Plaintiffs and the Class outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

179. RentCafe's conduct also constitutes an unlawful business practice in violation of Cal. Bus. & Prof. Code § 17200 because, as alleged herein, it also constitutes a violation of sections 1770(a)(5) and (a)(29) of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code sections 1750, *et seq*. as well as the Rosenthal Act and the FDCPA.

180. RentCafe commits fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200 by deceptively naming and describing the Service Fee, charging a fee that provides no added value to consumers and by representing the Service Fee as mandatory without adequately and transparently disclosing payment options to avoid the Service Fee. The financial harm to consumers because of RentCafe's wrongful business practice is substantial.

181. RentCafe's business practices misled Plaintiffs and the proposed Class and unless enjoined, will continue to mislead them in the future.

182. Plaintiffs relied on Defendants' misrepresentations and omissions in making rent payments and paying the Service Fee, believing the fee to be mandatory.

183. As a direct and proximate result of RentCafe's misconduct, Plaintiffs and the Class suffered and will continue to suffer actual harm.

184. Plaintiffs and the Class are entitled to restitution of all funds wrongfully obtained by RentCafe through its unlawful, fraudulent and unfair business practices as described herein.

185. Defendants' wrongful conduct is ongoing and is part of a pattern of generalized course of conduct repeated on thousands of occasions yearly.

186. Plaintiffs may be subject to the same wrongful conduct in the future unless RentCafe is enjoined. Plaintiffs have no adequate remedy at law, in part, because

FIRST AMENDED CLASS ACTION COMPLAINT

RentCafe continues to automatically add Service Fees to rent payments made through its payment platform. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs therefore seek an injunction on behalf of the general public enjoining Defendants from continuing to engage in the unfair, fraudulent and unlawful business practices described herein, or any other act prohibited by law.

187.  Additionally, Plaintiffs and the Class seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## **FIFTH CAUSE OF ACTION**

**California's Consumers Legal Remedies Act (the "CLRA")**
**Violations of California Civil Code §§ 1750,** *et seq.*
*(By Plaintiff Mosley, individually, and on behalf of the California Class)*

188.  Plaintiff Mosley, individually, and on behalf of the California Class, realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

189.  Plaintiffs and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code section 1761(d). RentCafe's assessment of the Service Fee on consumers' rent payments are "transactions" within the meaning of Cal. Civ. Code section 1761(e). RentCafe's rent payment processing service utilized by Plaintiffs and the Class are "services" within the meaning of Cal. Civ. Code section 1761(b).

190.  RentCafe violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code section 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, rent payment services:

a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

b. "Representing that. . . services have . . . characteristics . . . that they do not have" (a)(5);

c. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law"

FIRST AMENDED CLASS ACTION COMPLAINT

(a)(14);

d.    "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

e.    "Advertising, displaying, or offering a price for a . . . service that does not include all mandatory fees or charges" (a)(29).

191.    RentCafe violated and continues to violate the CLRA. Specifically, RentCafe charged Service Fees that it was not allowed to charge under the underlying lease agreements and misrepresented such Service Fees as lawful and authorized.

192.    Additionally, RentCafe displayed the monthly charge for rent due without including the automatically-added Service Fees, and without disclosing how to avoid the Service Fees.

193.    Moreover, RentCafe misrepresented the true nature of the Service Fee, which was disguised as a pass-through cost but was in fact profit.

194.    Each of the foregoing constitutes independent violations of the CLRA, and harmed Plaintiffs and class members as described herein.

195.    Pursuant to section 1782(a) of the CLRA, Plaintiffs' counsel notified Defendants in writing by certified mail of the particular violations of section 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. Defendants failed to respond to Plaintiffs' letter and failed to rectify the problems associated with the actions detailed therein. Plaintiffs now seek actual and statutory damages, as appropriate, against Defendants, in addition to injunctive relief.

**SIXTH CAUSE OF ACTION**

FIRST AMENDED CLASS ACTION COMPLAINT

**New Jersey Consumer Fraud Act ("NJCFA")**
**Violation of New Jersey Statute Ann. §§ 56:8-1, *et seq.***
*(By Plaintiff Foxx, individually, and the New Jersey Class)*

196.   Plaintiff Foxx, individually, and on behalf of the New Jersey Class, realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

197.   Plaintiff Foxx and the other New Jersey Class members are "persons" under the NJCFA, N.J. Stat. Ann. § 56:8-1(d).

198.   Defendants engaged in "sales" and/or "advertisement" of "merchandise" within the meaning of N.J. Stat. Ann. §§ 56:8-1(a), (c), (e). Defendants' actions as set forth herein occurred in the conduct of trade or commerce and Defendants' foregoing acts and practices, including its omissions, were directed at consumers.

199.   The NJCFA makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby. . ." *Id*. § 56:8-2.

200.   RentCafe violated and continues to violate the NJCFA. Specifically, RentCafe charged Service Fees that it was not allowed to charge under the underlying lease agreements and misrepresented such Service Fees as lawful and authorized.

201.   RentCafe further violated the NJCFA due to its violation of the FDCPA.

202.   Additionally, RentCafe displayed the monthly charge for rent due without including the automatically-added Service Fees, and without disclosing how to avoid the Service Fees.

203.   Moreover, RentCafe misrepresented the true nature of the Service Fee, which was disguised as a pass-through cost but was in fact profit.

FIRST AMENDED CLASS ACTION COMPLAINT

204. Defendants intentionally and knowingly misrepresented material facts regarding the Service Fee with the intent to mislead Plaintiff Foxx and the other New Jersey Class members. Defendants knew or should have known that their conduct violated the NJCFA.

205. Defendants' misrepresentations and omissions were material to Plaintiff Foxx's and the other New Jersey Class members' decision to utilize the form of payment to pay their rental obligations.

206. Defendants' misrepresentations and omissions regarding the Service Fee were and are directed at consumers in a uniform manner.

207. Defendants' practices described herein were likely to deceive, and did deceive, consumers acting reasonably under the circumstances. Consumers, including Plaintiff Foxx and the other New Jersey Class members relied upon Defendants' misrepresentations and omissions regarding the Service Fee to their detriment in paying the Service Fee.

208. Defendants' violations described herein present a continuing risk to Plaintiff Foxx and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

209. Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Foxx and the other New Jersey Class members who were unaware they would be charged a Service Fee for making their rent payments, or that the Service Fee was avoidable.

210. Defendants had an ongoing duty to all of consumers to refrain from unfair and deceptive practices under the NJCFA in the course of their business.

211. Defendants' violations present continuing violations to Plaintiff Foxx, the other New Jersey Class members and the general public. Defendants' wrongful acts and practices complained of herein affect the public interest.

212. As a direct and proximate result of Defendants' deceptive acts and practices, including their representations and omissions, Plaintiff Foxx and the other

40

FIRST AMENDED CLASS ACTION COMPLAINT

New Jersey Class members are damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

213.   In addition, Plaintiff Foxx and the other New Jersey Class members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable and reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**

**Massachusetts Consumer Protection Act ("MCPA")**
**Violations of Massachusetts Laws Ann. Ch. 93A §§ 1, *et seq.***
***(By Plaintiff Picardi, individually, and the Massachusetts Class)***

214.   Plaintiff Picardi, individually, and on behalf of the Massachusetts Class, realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

215.   Plaintiff Picardi and each member of the Massachusetts Class is a "person," as that term is used in Section 9(1) of Chapter 93A.

216.   RentCafe is a "person engaged in the conduct of trade or commerce," as those terms are used in Sections 2(a) and 9(1) of Chapter 93A.

217.   Plaintiff Picardi's and Class members' rental dwelling units are "products," as that term is used in Section 38.03 of Code of Massachusetts Regulation Title 940.

218.   RentCafe's improper assessment of Service Fees is an unfair or deceptive act or practice, pursuant to Section 2 of the Chapter 93A, Section 49 of Chapter 93 and Sections 38.04, *et seq.* of Code of Massachusetts Regulations Title 940.

219.   Under Massachusetts law, the following shall constitute an unfair and deceptive practice under Chapter 93A, § 2: (1) misrepresenting or failing to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product; (2) misrepresenting or failing to disclose Clearly and Conspicuously, at the time of the initial presentation of the Total Price of any Product: (a) the nature, purpose, and

41
FIRST AMENDED CLASS ACTION COMPLAINT

amount of any fees, charges, or other expenses that would be imposed on the transaction due to the purchase of that Product (excluding Shipping Charges and Government Charges); (b) for any fees, charges, or other expenses disclosed pursuant to 940 CMR 38.04(2)(a) that are optional to the consumer or waivable by the seller, the fact that such fees, charges, or other expenses are optional to the consumer or waivable by the seller, as well as readily available instructions regarding how to avoid such fees, charges, or other expenses.

220. RentCafe violated and continues to violate the Chapter 93A. Specifically, RentCafe charged Service Fees that it was not allowed to charge under the underlying lease agreements and misrepresented such Service Fees as lawful and authorized.

221. Additionally, RentCafe displayed the monthly charge for rent due without including the automatically-added Service Fees, and without disclosing how to avoid the Service Fees.

222. Moreover, RentCafe misrepresented the true nature of the Service Fee, which was disguised as a pass-through cost but was in fact profit.

223. In addition, Defendants violated Chapter 93A through its unlawful debt collection pursuant to Mass. Gen. Laws Ch. 93 § 49.

224. Defendants knew or should have known that their policy and practice of charging the Service Fee on rent payments was a deceptive and misleading practice to Plaintiff Picardi and the Massachusetts Class.

225. Defendants' implementation of their Service Fee policies and procedures injured Plaintiff Picardi and each member of the Massachusetts Class.

226. Defendants' ongoing implementation of their policy and practice of assessing the Service Fee on rent payments will harm Plaintiff Picardi and Massachusetts Class members by forcing them to pay fees that provide no added value to consumers.

### EIGHTH CAUSE OF ACTION

**Unjust Enrichment**

FIRST AMENDED CLASS ACTION COMPLAINT

*(By Plaintiffs, individually, and on behalf of the Nationwide Class, California Class, New Jersey Class and Massachusetts Class)*

227.  Plaintiffs, individually, and on behalf of the Nationwide Class, and alternatively, California Class, New Jersey Class and Massachusetts Class reallege and incorporate paragraphs 1 through 133 as if fully set forth herein.

228.  To the detriment of Plaintiffs and the Class, Defendants were, and continue to be, unjustly enriched as a result of their wrongful conduct alleged herein.

229.  Plaintiffs and the Class conferred a benefit on Defendants.

230.  Defendants unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

231.  Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

232.  Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained Service Fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against RentCafe for themselves and the proposed Class members as follows:

a.    Certifying the proposed Class(es), appointing Plaintiffs as representatives of the Class(es), and appointing Plaintiffs' counsel as class counsel for the proposed Class(es);

b.    Declaring that RentCafe's Service Fee, policies and practices described herein are improper;

c.    Enjoining RentCafe from the wrongful conduct as described herein on behalf of the general public, including but not limited to the removal of charges incurred by Plaintiffs and Class members for Defendants' pay-to-pay Service Fee;

FIRST AMENDED CLASS ACTION COMPLAINT

d.     For an order requiring RentCafe to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth herein;

e.     Awarding actual damages and statutory damages in an amount according to proof;

f.     Awarding treble damages, if permitted by law;

g.     Awarding pre-judgment interest at the maximum rate permitted by applicable law;

h.     Reimbursing all costs, expenses and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs and expenses, pursuant to applicable law and any other basis; and

i.     Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: June 5, 2026                              **KALIELGOLD PLLC**

By:*/s/ Sophia Goren Gold*
Sophia Goren Gold
Amanda J. Rosenberg
Jeffrey D. Kaliel

FIRST AMENDED CLASS ACTION COMPLAINT

**PEARSON WARSHAW, LLP**
Mailing Address:
Rachel Soffin (FL Bar 18054)*
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91043
Telephone: (818) 205-2815
rsoffin@pwfirm.com

**PEARSON WARSHAW, LLP**
Melissa S. Weiner (MN Bar 038790)
Ryan T. Gott (MN Bar 0397978)*
328 Barry Avenue S, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
mwiner@pwfirm.com
rgott@pwfirm.com

*Attorneys for Plaintiffs and the Putative Class*

*Pro Hac Vice* Motions to be filed

45

FIRST AMENDED CLASS ACTION COMPLAINT