RACHEL E. K. LOWE (State Bar No. 246361)
JONATHAN J. KIM (State Bar No. 312145)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:  213-576-1000
Facsimile:   213-576-1100
rachel.lowe@alston.com
jonathan.kim@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC (erroneously sued as**
**YARDI SYSTEMS, INC.) and**
**RENTCAFE, LLC**

(Additional Counsel Listed on Next Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>Defendants. | Case No. 2:26-cv-03318-WLH-BFM<br><br>(Santa Barbara Superior Court Case No. 26CV00952)<br><br>**DEFENDANTS YARDI SYSTEMS, LLC'S AND RENTCAFE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:          August 21, 2026<br>TIME:          1:30 p.m.<br>PLACE         Courtroom 9B<br>                     350 West First Street<br>                     Los Angeles, CA 90071<br><br>(Concurrently filed with Declaration of Rachel E. K. Lowe; Declaration of Alexa Bermudez; Request for Judicial Notice; and [Proposed] Order)<br><br>Filing Date:      February 9, 2026<br>Removal Date:  March 27, 2026 |

---

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

E. SCOTT SCHIRICK
(*Admitted Pro Hac Vice*)
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Scott.schirick@alston.com

DAVID B. CARPENTER
(*Admitted Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone:   404-881-7000
Facsimile:   404-881-7777
David.carpenter@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC and
RENTCAFE, LLC**

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 21, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 9B, before the Honorable Wesley L. Hsu of the above-entitled Court, located at First Street United States Courthouse, 350 West First Street, Los Angeles, California 90012, Defendants Yardi Systems, LLC ("Yardi") and RentCafe, LLC ("RentCafe") (collectively, "Defendants"), by and through their undersigned counsel, will and hereby do move this Court, pursuant to Rules 12(b)(6), 8, and 9(b) of the Federal Rules of Civil Procedure, to dismiss the First Amended Class Action Complaint (the "FAC") filed by Plaintiffs Phaness Mosley, William Foxx, and Karen Picardi (collectively, "Plaintiffs"). This Motion is made on the grounds that each of the eight purported causes of action, and the FAC as a whole, fail to state a claim upon which relief can be granted, Plaintiffs' fraud-based claims are not pled with particularity, and the FAC's new debt-collection theories fail as a matter of law. In short, Plaintiffs' amendments do not cure the defects Defendants identified in their prior motion to dismiss Plaintiffs' original Complaint and instead repackage the same disclosed fee as now "unauthorized rent," a debt-collection violation, and "hidden profit," without pleading sufficient facts to support any of those theories.

As set forth in the Declaration of Rachel E. K. Lowe, pursuant to Local Rule 7-3, prior to filing this Motion, counsel for Defendants met and conferred with counsel for Plaintiffs by videoconference on June 18, 2026, but were unable to informally resolve Plaintiffs' claims.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, Request for Judicial Notice, Declaration of Rachel E. K. Lowe, Declaration of Alexa Bermudez and exhibits thereto, and upon such other and further matters and argument as may be presented at the time of hearing of this Motion.

Dated:  June 26, 2026

E. SCOTT SCHIRICK, *Pro Hac Vice*
DAVID B. CARPENTER, *Pro Hac Vice*
RACHEL E. K. LOWE
JONATHAN J. KIM

**ALSTON & BIRD LLP**

By:  _____/s/ Rachel E. K. Lowe_____
              Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................1

II.    FACTUAL BACKGROUND ............................................................2

       A.    The RentCafe Platform and App............................................2

       B.    Plaintiffs' Unsupported Allegations Regarding the RentCafe Payment Process............................................................................3

       C.    The FAC's New "Debt Collection," "Hidden Profit" and "Lease-Based" Theories of Liability. ..................................................9

III.   LEGAL STANDARD .......................................................................10

IV.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS.........................11

       A.    Plaintiffs Fail to Properly Plead Any Claim Asserted in the Complaint. ..............................................................................11

             1.    The Complaint fails to allege well-pleaded facts necessary to support any theory of liability...........................................11

             2.    The FAC's fraud-based claims fail under Rule 9(b). ...................11

             3.    Plaintiffs fail to plausibly plead any deception. .........................12

                   a.    *The FAC does not plausibly allege any actionable misrepresentation.* ............................................. 12

                   b.    *Plaintiffs do not plead any actionable omission.* ............... 12

                   c.    *Plaintiffs' "hidden profit" theory is conclusory.* ................ 13

       B.    Plaintiffs' Claims Also Independently Fail for Failure to State Any Claim Upon Which Relief Can Be Granted..............................14

             1.    Plaintiffs' tortious interference claim fails because Plaintiffs do not identify any lease term, breach, or intentional inducement (First Cause of Action)...............................................14

             2.    Plaintiffs' FDCPA claim fails because routine rent-payment processing is not debt collection and are time-barred (Second Cause of Action). ...........................................................14

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

3.    Plaintiffs' Rosenthal Act claim fails because ordinary rent payments are not consumer credit transactions (Third Cause of Action). ...................................................................................16

4.    Mosley lacks statutory standing under the UCL (Fourth Cause of Action) and CLRA (Fifth Cause of Action). .................17

5.    Mosley's UCL claim fails because the FAC does not plead any viable UCL theory under the unlawful, unfair, or fraudulent prongs (Fourth Cause of Action)..................................18

   a.    The "unlawful" prong falls with Plaintiffs' defective predicate claims................................................. 18

   b.    The FAC does not plausibly allege that a disclosed optional payment fee is "unfair."........................................ 18

   c.    The FAC does not plead any statement or omission likely to deceive a reasonable consumer.............................. 19

   d.    Mosley fails to plead entitlement to equitable relief. .......... 20

6.    Mosley's CLRA claim fails because the FAC does not plead a covered deceptive consumer transaction (Fifth Cause of Action). ...................................................................................20

7.    Plaintiff Foxx's NJCFA claim fails because the FAC does not plead unlawful conduct, ascertainable loss, or causation (Sixth Cause of Action). ...........................................................22

8.    Picardi's 93A Claim fails because she did not serve a pre-suit demand letter, or allege an applicable regulatory predicate or deceptive conduct (Seventh Cause of Action)...........23

9.    Plaintiffs' Unjust Enrichment claim fails because it is not a standalone claim and is duplicative of Plaintiffs' other remedies (Eighth Cause of Action)...............................................24

V.    CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                                                      **PAGE(S)**

*Alvantor Indus. Co. v. Shenzhen Jorda Trading Co., Ltd.*,
     No. 2:22-CV-04844-DOC-JPRx, 2023 WL 6783280 (C.D. Cal. Sept. 7, 2023).... 13

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ................................................................................................. 11, 12

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ................................................................................................. 11, 12

*Berryman v. Merit Prop. Mgmt., Inc.*,
     152 Cal. App. 4th 1544 (2007) .................................................................................... 22

*Cole v. Laughrey Funeral Home*,
     869 A.2d 457 (N.J. Super. Ct. App. Div. 2005) ......................................................... 23

*Connor v. First Student, Inc.*,
     5 Cal. 5th 1026 (2018) ................................................................................................. 18

*Coto Settlement v. Eisenberg*,
     593 F.3d 1031 (9th Cir. 2010) ....................................................................................... 3

*Cox v. Sears Roebuck & Co.*,
     647 A.2d 454 (N.J. 1994) ............................................................................................. 23

*Daugherty v. Am. Honda Motor Co., Inc.*,
     144 Cal. App. 4th 824 (2006) .................................................................................. 13, 19

*Davis v. HSBC Bank*,
     691 F.3d 1152 (9th Cir. 2012) ..................................................................................... 20

*Doe v. CVS Pharm., Inc.*,
     982 F.3d 1204 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2882 (2021) ........ 19

*Gennari v. Weichert Co. Realtors*,
     691 A.2d 350 (N.J. 1997) ............................................................................................. 23

*Glass v. BMW of North America, LLC*,
     2011 WL 6887721 (D.N.J. Dec. 29, 2011) ................................................................. 24

*Gonzalez v. Planned Parenthood of L.A.*,
     759 F.3d 1112 (9th Cir. 2014) ..................................................................................... 12

*Hansen v. Saxon Mortg. Servs., Inc.*,
    No. 1:11-CV-11128-JLT, 2012 WL 3686448 (D. Mass. Aug. 23, 2012)...............24

*Hassler v. Sovereign Bank*,
    374 F. App'x 341 (3d Cir. 2010)...................................................................23

*Hill v. Roll Int'l. Corp.*,
    195 Cal. App. 4th 1295 (2011)....................................................................25

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018).......................................................................14

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011).................................................................................19

*Lish v. Amerihome Mortgage Co., LLC*,
    No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597 (C.D. Cal. Nov. 10,
    2020) .............................................................................................................13

*Martinez v. Ford Motor Co.*,
    2022 WL 14118926 (S.D. Cal. Oct. 24, 2022)...........................................19

*Mirabadi v. Select Portfolio Servicing, Inc.*,
    2024 WL 1151673 (C.D. Cal. Feb. 13, 2024)............................................22

*Murphy v. Hartford Acci. & Indem. Co.*,
    177 Cal. App. 2d 539 (1960).......................................................................12

*Novation Sols., Inc. (O/A Dealmaker) v. Issuance Inc.*,
    No. 2:23-cv-00696-WLH-KSx, 2023 WL 5505908 (C.D. Cal. June 27,
    2023) .............................................................................................................15

*Olson v. La Jolla Neurological Assocs.*,
    85 Cal. App. 5th 723 (2022)........................................................................17

*Ortiz v. Lyon Management Group, Inc.*,
    157 Cal. App. 4th 604 (2007)......................................................................18

*Reed v. Zipcar, Inc.*,
    883 F. Supp. 2d 329 (D. Mass. 2012).........................................................25

*Ruiz v. Bradford Exch., Ltd.*,
    153 F.4th 907 (9th Cir. 2025)......................................................................21

*Schertzer v. Bank of America, N.A.*,
    445 F. Supp. 3d 1058 (S.D. Cal. Mar. 4, 2020).........................................22

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
   97 Cal. App. 5th 192 (2023) ...................................................................... 25

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................... 21

*Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*,
   No. 17-CV-03871-LHK, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ............... 26

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ..................................................................... 13

*Valley Children's Hosp. v. Athenahealth, Inc.*,
   No. 22-cv-10689-DJC, 2023 WL 6065800 (D. Mass. Sept. 18, 2023) .................. 25

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................... 12

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................... 11

Federal Rule of Civil Procedure 8 ............................................................... 12, 13

Federal Rule of Civil Procedure 9(b) ........................................................ 11, 12, 13

**STATUTES**

15 U.S.C. § 1692a(6) ............................................................................... 16

15 U.S.C. § 1692a(6)(F) ............................................................................ 16

15 U.S.C. § 1693o-2 ................................................................................ 14

Cal. Bus. & Prof. Code § ................................................................... 19, 20, 21

Cal. Civ. Code § 1770(a) ........................................................................... 22

Cal. Civ. Code § 1780(a) ........................................................................... 19

Cal. Civ. Code § 1782 .............................................................................. 21

Cal. Civ. Code § 1788.2(c) ......................................................................... 17

Cal. Civ. Code § 1788.2(f) ......................................................................... 17

Cal. Civ. Code § 1788.2(e) ......................................................................... 18

California Rosenthal Fair Debt Collections Practices Act .........................17, 18, 19, 25

Mass. Gen. Laws ch. 93A, § 9(3) ...................................................................................24

Mass. Gen. Laws ch. 93A, § 49 .....................................................................................25

New Jersey Consumer Fraud Act ...................................................................................... 1

**OTHER AUTHORITIES**

12 CFR part 235...............................................................................................................14

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Yardi's RentCafe online payment portal lets tenants make rental payments using their phones or other mobile devices.  Landlords and property managers license RentCafe software from Yardi, set rent obligations, and choose what payment options to make available to their tenants.  Landlords may elect to use Yardi's payment service for credit and debit card transactions.  If the service option is activated and tenants pay by card, Yardi determines the related service fee, which is paid only to Yardi.

The FAC acknowledges that RentCafe's service fee for card transactions is disclosed *before* a tenant authorizes payment.  It also acknowledges that no one—not Yardi, RentCafe or the landlords—required tenants to pay rent online using a card.  Documents incorporated by reference in the FAC further establish that there are fee-free payment alternatives, including ACH and check.

Nevertheless, the FAC alleges that the service fee was inadequately disclosed and deceptive, and that Plaintiffs believed paying by card was mandatory.  According to Plaintiffs, this violates numerous state consumer protection statutes, the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collections Practices Act ("Rosenthal Act"), California common law and the leases themselves.  The FAC should be dismissed for several reasons.

Most importantly, the FAC lacks basic supporting facts.  It identifies no specific statements, omissions, contractual terms, or defendant-specific conduct that would support an inference that the fee disclosure was deceptive in any way.  Instead, the pleading relies on generic allegations and labels such as  "junk," "surprise," "pay-to-pay," "unauthorized rent," and "hidden profit."

The individual claims also fail: the Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") lack any actionable misrepresentation, omission, or equitable basis; tortious interference lacks an affected contract term, breach, disruption, or damage; unjust enrichment is not a standalone cause of action in

California; and the New Jersey Consumer Fraud Act ("NJCFA") and Chapter 93A claims lack particularized facts showing unlawful conduct, loss, causation, or statutory prerequisites.

Likewise with respect to the FAC's newfound legal theories, while Yardi provides the technology that makes payment more convenient for tenants, that service neither transforms Yardi into a debt collector, nor converts it into a tenant's lease counterparty. Processing routine online rental payments is not debt collection as a matter of law, and two courts have dismissed similar Yardi-as-debt-collector suits. And the lease-liability theory fails because Defendants are not signatories to Plaintiffs' residential leases and are not otherwise alleged to be responsible for the leases' terms. Nor, critically, do Plaintiffs point to a single lease provision that prohibits charging a service fee to make online rental payments. Both because the FAC failed to cure the original complaint's pleading defects, and because its new claims are deficient as a matter of law, the FAC should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    The RentCafe Platform and App.

Yardi offers property-management software and services, including RentCafe, an online rent-payment portal and "Resident app" (the "App"). (FAC, ¶¶ 17-18.) Landlords and property managers—not Defendants—license the software, set rent obligations, enable payments, choose available payment options, and customize the interface. (Declaration of Alexa Bermudez ("Bermudez Decl."), ¶ 2.) Plaintiffs do not allege Defendants are their landlords.

Plaintiffs allege that "all Plaintiffs and Class members" paid rent and incurred the challenged "Service Fee" through RentCafe. (FAC, ¶ 77.) They allege users learn of the fee on the final "Confirm" screen before finalizing payment. They also allege in conclusory fashion that users are not told about fee-free alternatives, making the fee seem mandatory. (*Id.*, ¶¶ 79-80.)

**B.     Plaintiffs' Unsupported Allegations Regarding the RentCafe Payment Process.**

But documents referenced in the FAC and submitted with the RJN show payment alternatives are available and that the Service Fee is fully disclosed.

For example, Picardi alleges that she rented in Malden, Massachusetts from September 1, 2023, through January 16, 2025, and paid rent monthly via RentCafe. (FAC, ¶ 107.) On the first screen she saw on the RentCafe platform, Picardi was notified under a banner labeled "Important Information" that paying by credit card required payment of a service fee, as displayed below. [1]



---

[1] Because Plaintiffs' theory turns on what the RentCafe platform displayed during the payment flow, the Court may consider materials incorporated by reference in the FAC or properly subject to judicial notice. *See, e.g., Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

(*See* Bermudez Decl., at Ex. A; RJN at Ex. A.)

After Picardi confirmed the amount of her payment, the platform offered three payment methods—bank account, debit card or credit card:



(*Id.*)  Choosing "credit card" triggered a second notification about the Service Fee, this time including a separate line item specifying the amount:



MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

(*Id.*)  By contrast, choosing to pay by "bank account" did not require a service fee:



(*Id.*)   Picardi's flow shows two Service Fee notices, the fee amount, and fee-free alternatives before the final "Confirm" screen.  (*Id.*)[2]   Critically, Picardi's payment history establishes that she paid by both bank account (ACH) and check ***over 25 times***, avoiding the Service Fee she now claims was mandatory.  (Bermudez Decl., at Ex. D [Plaintiff Picardi Payment Ledger]; RJN, at Ex. D.)

Mosley's payment flow process is similar: she  was notified at the outset—under an "Important Information" banner, that credit and debit card payments carried a Service Fee:

[Screenshot on Next Page]

---

[2] *Compare* FAC, ¶ 80 ("Moreover, at no point during the payment process are consumers informed of alternative means to pay their rent to avoid the Service Fee, leading consumers to believe the fee is mandatory and unavoidable.").

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT



(*See id.*, at Ex. B.)   The platform also offered three payment options—bank account, debit card or credit card:



(*See id.*, at Ex. B.)   As with Picardi, choosing to pay by "bank account" triggered a disclosure that no service fee would be charged:

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT



(*See id.*)   Thus, before the final "Confirm" screen, Mosley was told a card payment would carry a service fee and shown fee-free alternatives.

Foxx's flow process is also similar: the first RentCafe screen linked to a "Frequently Asked Questions" page:



MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

(*Id.*, Ex. C.)   That page disclosed fees for card payments and no fee for bank account payments:



(*Id.*) By contrast, the FAQ disclosed that a fee ***would*** be charged for using a credit card:



MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

(*Id.*)  To pay by credit card, Foxx had to scroll past the bank account option:



(*Id.*)  Thus, before the final "Confirm" screen, Foxx was told through the FAQ that a service fee applied and that fee-free alternatives existed.  He also added banking details to RentCafe and paid by ACH, a fee-free method, multiple times.  (*See* Bermudez Decl., at Ex. F [Foxx Payment Ledger].)

Even apart from these documents, the remaining allegations are conclusory, formulaic, or generic.  Paragraphs 22-31 and 46-55 are generalized "junk fee" allegations unrelated to this matter[3]; Paragraphs 56-76 merely describe the FDCPA and state equivalents; and Paragraphs 114-121—the FAC's fraud-specificity section—fails adequately to plead the who, what, where, how and when of fraud.  These allegations cannot sustain any claim.

C.     **The FAC's New "Debt Collection," "Hidden Profit" and "Lease-Based" Theories of Liability.**

Although it pleads new theories of liability, the FAC alleges no meaningful new facts.  It simply just now recasts the Service Fee as: (1) an unlawful debt-collection

---

[3] Along these lines, the generic FTC letter that Plaintiffs attached to the FAC is a red herring.  The FTC's concern was disclosure of the total price required to rent advertised properties, not fees charged by payment processors for certain payment types.  (FAC, at Ex. 3.)

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

charge; (2) an improper "hidden profit"; and (3) an "unauthorized" lease charge.  (*See* FAC ¶¶ 7, 11–12, 56–76, 84–92, 138, 145–166, 176, 180, 193, 200, 203, 220, 222.)

The debt-collection theory rests on tenants' routine use of RentCafe to pay rent. (*See, e.g., id.*, ¶¶ 89, 94, 101, 108.)  Plaintiffs allege RentCafe collected rent through its App and online platform, and assert that those payments are "debts," RentCafe is a "debt collector," and the Service Fee is unauthorized.   (*See, e.g.*, FAC ¶¶ 32, 56-77, 93-94, 100-101, 107-108.)  But the FAC does not allege delinquent or defaulted rent, collection activity, or facts showing RentCafe or Yardi is in the debt-collection business.

The "hidden profit" theory likewise alleges that RentCafe misrepresented the Service Fee as covering bank, network, payment-agent, or processing fees.  (*See* FAC ¶¶ 12, 84–92, 176, 180, 193, 203, 222.)  But Plaintiffs plead only average or alleged fee ranges, not actual costs, allocations, or processing charges for any named Plaintiff's transaction. (*See* FAC ¶¶ 86–90.)  Moreover, Plaintiffs cite to disclaimer language from an entirely different case involving a different payment flow process, without quoting the entire disclaimer in context.

The lease theory fares no better.  Although the FAC attaches two leases and alleges the Service Fee is not "expressly authorized" (*see, e.g.*, FAC ¶¶ 15–16), it does not allege Defendants were parties to, drafted, set rent under, knew, or violated any lease provision prohibiting a disclosed processing fee.  Nor does the FAC point to any lease provision that prohibits the Service Fee.

## III.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating plausibility, the Court need not accept legal conclusions cast as factual allegations.  Moreover, Rule 9(b) applies to all claims that sound in fraud, including statutory and quasi-contract theories to the extent they are

premised on the same alleged deceptive course of conduct.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003).

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS

### A. Plaintiffs Fail to Properly Plead Any Claim Asserted in the Complaint.

#### 1. The Complaint fails to allege well-pleaded facts necessary to support any theory of liability.

The FAC fails Rule 8, Rule 9(b), and plausibility for three overarching reasons. First, the FAC—like the now-withdrawn Complaint—does not plead how the payment flow is deceptive.  Rather, it alleges that alternatives were inadequately disclosed and the Service Fee was disclosed late, but does not quote the RentCafe platform, describe how the fee appeared, or identify misleading text or context. (FAC, ¶¶ 8, 79-80.) Indeed, the payment flow documents show the fee was disclosed before payment and that free alternatives existed.  (*See, e.g.*, RJN, at Exs. A-C.)  The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citation omitted).

Second, the FAC identifies no lease term making the Service Fee misleading, unlawful or tortious.  Defendants are not landlords; Mosley's lease is not attached; and no lease provision is identified as breached, violated, or intentionally induced to be breached.  *See Murphy v. Hartford Acci. & Indem. Co.*, 177 Cal. App. 2d 539, 543 (1960).  Finally, labels such as "junk fee," "pay-to-pay," "unauthorized rent," "hidden profit," and debt-collection charge are conclusory under *Iqbal* and *Twombly*. (*See, e.g.*, FAC, ¶¶ 1, 3-4, 7, 9.)

#### 2. The FAC's fraud-based claims fail under Rule 9(b).

Plaintiffs' fraud-based claims also fail Rule 9(b).  They allege Defendants "hid," "concealed," "obfuscated," or "disguised" the Service Fee, but do not plead the statement each Plaintiff saw, when, which Defendant made it, why it was false, or how it caused injury. (*See* FAC, ¶¶ 114-121); *see, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756,

765 (9th Cir. 2007). A "who, what, when, where, and how" checklist is no substitute for particularity.[4]  *See Alvantor Indus. Co. v. Shenzhen Jorda Trading Co., Ltd.*, No. 2:22-CV-04844-DOC-JPRx, 2023 WL 6783280, at *4 (C.D. Cal. Sept. 7, 2023).

### 3. Plaintiffs fail to plausibly plead any deception.

Every deception-based claim in the FAC depends on the same threshold premise: Defendants either made a material misrepresentation about the Service Fee or wrongfully omitted material information concerning it. (*See, e.g.*, FAC, ¶ 78.) The FAC plausibly alleges neither.

#### a. The FAC does not plausibly allege any actionable misrepresentation.

The FAC alleges the "Service Fee" was a misleading hidden profit but pleads no facts showing the term was objectively false. (*See, e.g.*, FAC, ¶¶ 12, 176, 180, 193.) Nor does timing establish deception: Plaintiffs allege disclosure *before* payment, and do not allege Defendants promised free card payments, represented that rent was the total due regardless of payment method, or prevented payment method changes. (*See* Compl., *passim*); *see Lish v. Amerihome Mortgage Co., LLC*, No. 2:20-cv-07147-JFW-JPRx, 2020 WL 6688597, at *3-4 (C.D. Cal. Nov. 10, 2020).

#### b. Plaintiffs do not plead any actionable omission.

The omission theory likewise fails because the FAC identifies no duty—contractual, statutory, regulatory, or relationship-based—requiring Defendants to disclose the Service Fee at lease signing or further explain alternatives. *See, e.g.*, *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006). Nor does the alleged omission concern central functionality: Plaintiffs allege only "inadequate and untimely disclosure," not that the alleged omission rendered the RentCafe platform unusable. (FAC, at ¶ 81); *see Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018).

---

[4] The FAC also group-pleads "Defendants" or "RentCafe" without explaining each entity's role in the alleged misconduct, which is insufficient under Rule 8, much less Rule 9(b).

c.      Plaintiffs' "hidden profit" theory is conclusory.

The FAC also alleges the Service Fee is not a pass-through because it includes a profit for RentCafe.  (See FAC, at ¶¶ 84-92.)  But its comparison to average processing costs and service-fee ranges do not support that claim.  Plaintiffs allege that "the cost of electronic payment methods range from a few cents (ACH and debit cards) to 1.97% of the total transaction amount (credit cards)," (FAC, at ¶ 87), while RentCafe charged Service Fees of approximately 2.2% to 2.7% on credit card payments and 2.5% on debit card payments (id., at ¶ 89).  These averages and limits do not allege actual costs for Plaintiffs' transactions, payment processors, or Defendants.[5]  That mismatch is fatal.[6] *Cf. Graham v. VCA Antech, Inc.*, 2:14-cv-08614-CAS-JC, 2016 WL 5958252, at *9-10 (C.D. Cal. Sept. 12, 2016).

Plaintiffs' premise that RentCafe represented the Service Fee as covering only "bank . . . and network fees" is both inadequately pled and false.  Plaintiffs appear to quote a disclosure from a different plaintiff in a different case.  (*See* RJN, at Ex. I [Arcangel Complaint].)  That disclosure stated that the convenience fee "covers banks fees, *Yardi fees* and processing network fees."  (*See id.*, at ¶ 17.)  Expressly identifying "Yardi fees" defeats any notion that there was "hidden profit" to Yardi.  Nor does *Arcangel* establish what Plaintiffs here saw, because property managers can craft user-facing disclaimer language.  (Bermudez Decl., at ¶ 2.)  Plaintiffs thus rely on an inapplicable, selectively quoted payment flow—from another case—without even identifying where the disclosure allegedly appeared.

---

[5] Plaintiffs also mischaracterize interchange fees by limiting them to the base amount payable to the issuing bank.  Card acceptance costs also may include merchant processor, acquiring bank, and network amounts, and interchange rates vary by card type, transaction method, transaction size, and processing mechanics.

[6] The Durbin Amendment, cited by Plaintiffs in footnote 32 to suggest that the Service Fee is unlawful profit, has no bearing on Defendants', or any merchant's, ability to charge a Service Fee in connection with a payment transaction. The Durbin Amendment, and Regulation II which implements it, merely cap the amount of interchange that a covered issuing bank (i.e., a bank with more than $10 billion in assets) may collect in connection with a debit card transaction. 15 U.S.C. § 1693o-2, 12 CFR part 235.

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**B.      Plaintiffs' Claims Also Independently Fail for Failure to State Any Claim Upon Which Relief Can Be Granted.**

**1.      Plaintiffs' tortious interference claim fails because Plaintiffs do not identify any lease term, breach, or intentional inducement (First Cause of Action).**

Plaintiffs' tortious interference claim fails because the FAC identifies no lease terms allegedly interfered with; and no intentional inducement of breach. Tortious interference requires "acts designed to induce a breach or disruption of the contractual relationship" and an "actual breach or disruption of the contractual relationship." *Novation Sols., Inc. (O/A Dealmaker) v. Issuance Inc.*, No. 2:23-cv-00696-WLH-KSx, 2023 WL 5505908, at *11 (C.D. Cal. June 27, 2023). Plaintiffs allege only payment of a Service Fee for a chosen payment method, not disruption of any lease relationship. And the Complaint is wholly devoid of allegations establishing that Defendants intentionally induced any breach of Plaintiffs' contracts. Thus, as a matter of law, the Complaint fails to state a cause of action for tortious interference.

**2.      Plaintiffs' FDCPA claim fails because routine rent-payment processing is not debt collection and are time-barred (Second Cause of Action).**

The FDCPA claim fails at the threshold because the FAC does not plausibly allege Defendants are "debt collectors" or that routine rent payments through RentCafe are debt-collection. (FAC, ¶¶ 143-153.) Plaintiffs' theory would turn every rent-payment platform into a debt collector, which the FDCPA does not do. The FDCPA applies only to entities that meet the statute's definition of "debt collectors," and Plaintiffs plead no facts showing RentCafe qualifies. *See Schlegel v. Wells Fargo Bank*, 720 F.3d 1204, 1208 (9th Cir. 2013) (citation omitted). Indeed, the FDCPA covers businesses whose "principal purpose of which is the collection of any debts," that is "owed or due or asserted to be owed or due another." *Id.* (quoting 15 U.S.C. § 1692a(6)). The FAC merely recites that RentCafe "regularly attempts to collect, and collects debts for another. (FAC, at ¶ 145.) However, that conclusion is contradicted by the allegations describing Defendants as property-management software and payment platform

providers, not debt collectors.  (*See* FAC, at ¶¶ 17-18.)  Further, the FDCPA excludes collection activity concerning debt that is not in *default* when obtained.  *See* 15 U.S.C. § 1692a(6)(F).  The FAC alleges no unpaid arrears, or defaulted rent when the Service Fee was assessed.

Second, routine rent payments are not debt-collection activity.  "The FDCPA imposes liability only when an entity is attempting to collect debt."  *Vien-Phuong Thi Ho v. Reconstruct Co., NA*, 858 F.3d 568, 571 (9th Cir. 2017).  Plaintiffs allege ordinary rent payments, not default notices, collection calls, delinquency efforts, or attempts to collect past-due obligations.  (*See* FAC, at ¶¶ 93-94, 100-101, 107-108.)  In *Robledo v. Yardi Systems, Inc.*, 741 F. Supp. 3d 617 (W.D. Tex. June 26, 2024), a court rejected a similar challenge to RentCafe Service Fees under the Texas Debt Collection Act, holding that recurring monthly rent payments through RentCafe were not "consumer debt" in the relevant sense and that Yardi was not a debt collector.  *See id.*, at 623-625.  That same reasoning applies here. *See Brandon v. Wells Fargo Bank, N.A.*, 2011 WL 6338832, at *11, n.3 (E.D. Tex. Nov. 30, 2011) ("The TDCA is modeled on the FDCPA.").

Third, Plaintiffs' Section 1692e theory is derivative and conclusory.  Section 1692e applies only to false or misleading representations made "in connection with the collection of any debt," and Plaintiffs have not plausibly pled that threshold predicate.  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).  It is not enough to recast the alleged lack of authorization under Section 1692f as a misrepresentation under Section 1692e.  The Ninth Circuit requires a materially false or misleading representation—one that could frustrate the consumer's ability to intelligently choose how to respond to a collection effort.  *See id.*, at 1034.  Because Plaintiffs do not plead any specific materially false statement about a debt, their Section 1692e theory fails.

Fourth, Foxx's and Picardi's FDCPA claims are time-barred, and Mosley's FDCPA claim is time-barred to the extent it is based on payments made before February 9, 2025—one year before Plaintiffs filed their complaint.  The FDCPA has a one year statute of limitations.  *See, e.g., Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1046 (9th

Cir. 2023). Foxx challenges payments from September 1, 2022 through September 30, 2023, so he was required to file his FDCPA claim no later than September 30, 2024. (*See* FAC, at ¶ 100.) Picardi challenges payments from September 1, 2023 through January 16, 2025, so she was required to file her FDCPA claim no later than January 16, 2026. (*See id.*, at ¶ 107.) And although Mosley appears to challenge payments made from June 2024 to the present, any FDCPA claim based on payments made prior to February 9, 2025 is untimely.

### 3. Plaintiffs' Rosenthal Act claim fails because ordinary rent payments are not consumer credit transactions (Third Cause of Action).

Mosley's Rosenthal Act claim fails for the same reasons as Plaintiffs' FDCPA claim. First, the FAC does not plausibly allege that Defendants engaged in "debt collection" within the meaning of the Rosenthal Act. *See* Cal. Civ. Code § 1788.2(c), (f). Courts reject attempts to treat isolated or incidental rent-related notices as debt collection absent facts showing regular debt-collection activity. *See, e.g.*, *Olson v. La Jolla Neurological Assocs.*, 85 Cal. App. 5th 723, 735 (2022). Here, the FAC alleges that RentCafe is a property-management and resident-payment platform, not a debt-collection business. (FAC, ¶¶ 17–18, 32, 77.)

At least one California court has already rejected the assertion that RentCafe is subject to the Rosenthal Act. In *Mann, et al. v. Yardi Systems, Inc.*, Case No. 23STCV14050, Superior Court of California, County of Los Angeles, the plaintiff-tenants challenged RentCafe service fees under the Rosenthal Act, arguing that rent payments were "consumer debt" and that Yardi's service fees violated debt-collection restrictions. (*See* RJN, at Ex. H.) The Los Angeles Superior Court sustained Yardi's demurrer without leave to amend, holding that "consumer debt" under the Rosenthal Act does not include ordinary rent payments because rent is not a "consumer credit transaction." The court distinguished mortgage debt, explaining that rent payments are "direct payments for the right to access and inhabit the leased premises," while mortgage

payments are repayments of borrowed money.[7]

Second, and relatedly, Mosley fails to allege that her rent payment was a "consumer credit transaction," which is essential to plead a cognizable "consumer debt" under the Rosenthal Act. The statute defines "consumer credit transaction" as a transaction in which property, services, or money is acquired on credit primarily for personal, family, or household purposes. Cal. Civ. Code § 1788.2(e). But courts have made clear that "[r]enting an apartment is not truly a credit transaction." *Ortiz v. Lyon Management Group, Inc.*, 157 Cal. App. 4th 604, 618 (2007) (disapproved of on other grounds by *Connor v. First Student, Inc.*, 5 Cal. 5th 1026 (2018)). The FAC alleges that Mosley rented an apartment from a landlord or property manager and used RentCafe to make rent payments. (*See* FAC ¶¶ 93–94.) That allegation alone cannot be plausibly pleaded as a credit transaction with Defendants.

Third, Mosley's Rosenthal Act claim depends on the deficient lease-authorization theory. She alleges that RentCafe knew its pay-to-pay Service Fees were not expressly set out in lease agreements but collected them anyway. (FAC ¶¶ 156, 163–164.) But Mosley does not attach her lease, quote any lease provision, or identify any term barring a disclosed payment-processing fee charged by a non-party platform. The absence of an express RentCafe fee provision from an unidentified lease does not plausibly plead that Defendants collected an unlawful debt.

### 4.     Mosley lacks statutory standing under the UCL (Fourth Cause of Action) and CLRA (Fifth Cause of Action).

Mosley lacks statutory standing because the FAC does not plausibly plead economic injury caused by actionable deception. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 324 (2011); Cal. Civ. Code § 1780(a). Payment of a disclosed fee and alternative payment methods offered cannot plausibly meet that requirement. (FAC ¶ 79; Bermudez Decl., Exs. A–C.) Nor does the FAC plead how alleged hidden profit

---

[7] It also rejected reliance on FDCPA/back-rent authorities because the plaintiffs did not allege unpaid rent in arrears.

caused Mosley to pay a fee she knew about before authorizing payment. Because the FAC does not plausibly plead causation or reliance, Mosley lacks statutory standing under both the UCL and CLRA. *See Kwikset*, 51 Cal. 4th at 326.

**5.      Mosley's UCL claim fails because the FAC does not plead any viable UCL theory under the unlawful, unfair, or fraudulent prongs (Fourth Cause of Action).**

   a.      *The "unlawful" prong falls with Plaintiffs' defective predicate claims.*

Mosley's "unlawful" prong claim is derivative of her other failed statutory claims. The FAC predicates the UCL's unlawful prong on alleged violations of the CLRA, Rosenthal Act, and FDCPA. (*See* FAC ¶ 179.) Because the FAC does not plausibly plead a violation of any of those statutes, it likewise fails to state a UCL claim under the unlawful prong. *See Martinez v. Ford Motor Co.*, 2022 WL 14118926, at *3–4 (S.D. Cal. Oct. 24, 2022) ("A UCL claim stands or falls depending on the fate of antecedent substantive causes of action."). (citation modified); *Daugherty*, 144 Cal. App. 4th at 837 (no unlawful prong liability predicated on CLRA where CLRA claim failed). And to the extent Mosley may rely on other unspecified laws or policies, the FAC does not identify any alternative predicate violations.

   b.      *The FAC does not plausibly allege that a disclosed optional payment fee is "unfair."*

The Ninth Circuit has recognized three tests for the UCL's "unfair" prong: whether the challenged conduct is tethered to a constitutional, statutory, or regulatory provision; whether it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers; or whether the consumer injury outweighs the utility of the practice. *See Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020), *cert. granted in part*, 141 S. Ct. 2882 (2021), and *cert. dismissed*, 142 S. Ct. 480 (2021). Mosley satisfies none. The FAC claims the Service Fee is unfair because it serves no legitimate purpose except profit and imposes costs on consumers. (*See* FAC ¶¶ 176–178.) But those allegations are conclusions. The FAC does not plead facts showing that a disclosed, payment-method-dependent processing fee is tethered to any violated

constitutional, statutory, or regulatory policy. It also fails to establish that voluntary payment of a disclosed fee is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. And it does not plead any facts showing that the alleged consumer injury outweighs the utility of providing card-payment options, particularly where alternative payment methods were available, and the fee was disclosed before payment submission. (*See* FAC ¶¶ 79, 89, 94; RJN Exs. A–C.) A disclosed fee tied to a selected payment method is not "unfair" simply because Mosley would prefer not to pay it despite other payment options being available. Mosley's "unfair" prong therefore fails.

       c.      *The FAC does not plead any statement or omission likely to deceive a reasonable consumer.*

The fraudulent-prong claim fails because the FAC does not plausibly allege conduct likely to deceive a reasonable consumer. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (for UCL fraud claim, the "challenged conduct 'is judged by the effect it would have on a reasonable consumer.'"). The UCL fraud theory is based on the same allegations that Defendants deceptively named and described the Service Fee, represented it as mandatory, and failed to disclose payment options to avoid it. (*See* FAC ¶¶ 180–182.) But the FAC does not identify the payment-screen language Mosley saw, the full context of the disclosure, or any statement that was false when made. Nor could the label "Service Fee" plausibly deceive a reasonable consumer. The FAC pleads no facts showing that reasonable consumers would understand that term to exclude fees associated with processing card payments. And the alleged timing of the disclosure of the Service Fee—as Plaintiffs concede, before the transaction was finalized—also was not deceptive.[8] (FAC ¶ 79.) By definition, a disclosed fee is not hidden.

---

[8] Even if one credits the FAC, the Service Fee amount was disclosed on the final "Confirm" payment screen before payment submission. This is disproved, however, by the payment flow process for each Plaintiff described above. (*See* RJN, Exs. A-C.)

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

> ### d.    *Mosley fails to plead entitlement to equitable relief.*

Because Mosley seeks equitable relief for the same harm for which Plaintiffs also seek money damages, the UCL claim should be dismissed.  A plaintiff seeking equitable relief under the UCL must establish that they lack an adequate remedy at law.  *See Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 911 (9th Cir. 2025).  When a plaintiff does not make such a showing, claims for equitable relief under the UCL and CLRA must be dismissed.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020).  That is the case here.

> ### 6.    Mosley's CLRA claim fails because the FAC does not plead a covered deceptive consumer transaction (Fifth Cause of Action).

Mosley's CLRA claim likewise fails because the FAC does not plead a deceptive transaction causing actual injury.  The original complaint asserted the CLRA claim for injunctive relief only.  (*See* Dkt. 1-2, at Ex. A [Complaint], at ¶ 115.)  Although the FAC now seeks damages, it still lacks factual allegations to support the claim's elements.[9]  (FAC at ¶¶ 188-195.)  Specifically, Mosley must plead facts showing that Defendants engaged in conduct prohibited by the CLRA, that she relied on that conduct, and that the conduct caused her injury.  The FAC fails to do so.  It alleges only that RentCafe disclosed the Service Fee before submission of payment and that Mosley's chosen card payment method triggered the fee.  (*See* FAC, at ¶ 94.)  Moreover, the judicially noticed documents make clear that these fees were clearly disclosed to Mosley and that she had numerous fee-free payment options.  (*See* RJN, Exs. A-C.)

Further, the CLRA subsections Plaintiffs invoke do not fit.  (*See* FAC, at ¶ 190.)  The FAC identifies no misrepresentation of affiliation, connection, association, or certification under § 1770(a)(3); no facts showing that the "Service Fee" was inherently deceptive or that no service was provided under § 1770(a)(5); no representation

---

[9] Plaintiffs also failed to comply with the CLRA's pre-lawsuit 30-day notice and cure period.  *See* Cal. Civ. Code § 1782.  Plaintiffs served their CLRA demand letter on February 11, 2026, but filed their Complaint two days before on February 9.  (*See* Bermudez Decl., at Ex. G.)

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

conferring rights, remedies, or obligations under § 1770(a)(14); no price-plus-percentage advertising under § 1770(a)(2); and no advertisement, display, or offer omitting mandatory fees under § 1770(a)(29). (*See, e.g.*, FAC ¶¶ 17-18, 32, 77, 79–80, 84-92, 89, 93-99, 190-914.)

Finally, courts addressing similar payment access fees have held that such fees do not necessarily involve the sale of a separate "good" or "service" under the CLRA.  The CLRA expressly limits its scope to transactions "intended to result . . . in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Goods are statutorily defined as "tangible chattels" and services are defined as "work, labor, and services . . . including services furnished in connection with the sale or repair of goods." *Id.* § 1761(a), (b).

The fees at issue in this case plainly do not constitute "goods" or "services," and the courts that have considered this issue are in accord.  For example, in *Schertzer v. Bank of America, N.A.*, 445 F. Supp. 3d 1058 (S.D. Cal. Mar. 4, 2020), the court dismissed CLRA claims challenging out-of-network ATM balance-inquiry fees, holding that the alleged ATM-fee transactions were not covered "goods" or "services" within the meaning of the CLRA because they involved access to account information and banking functionality, not the purchase or lease of consumer goods or services.  The California Court of Appeals in *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1558 (2007) affirmed dismissal of a CLRA claim challenging fees for obtaining documents and transferring title because "the transaction [did] not involve the sale or lease of goods or services."  And in *Mirabadi v. Select Portfolio Servicing, Inc.*, 2024 WL 1151673, at *7 (C.D. Cal. Feb. 13, 2024), this court ruled, "Convenience fees are understood as ancillary services that fall outside the scope of the CLRA."  The same result should reach with the convenience fees here.  Plaintiffs' CLRA claims are not based on a transaction involving a sale or lease of goods or services.  They only allegedly incurred the fees when they transferred money electronically.  Such fees are no different than the fees

incurred in the numerous cases rejecting such CLRA claims, and Plaintiffs' CRLA claim should be dismissed.

### 7. Plaintiff Foxx's NJCFA claim fails because the FAC does not plead unlawful conduct, ascertainable loss, or causation (Sixth Cause of Action).

Foxx asserts an NJCFA claim on behalf of the proposed New Jersey Class, but the FAC does not plausibly plead the necessary unlawful conduct, ascertainable loss caused by unlawful conduct, or causation. (*See* FAC, ¶¶ 196-213.) To state a claim, a plaintiff must allege "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the two." *Hassler v. Sovereign Bank*, 374 F. App'x 341, 343 (3d Cir. 2010) (citation modified). Actionable unlawful conduct generally falls into one of three categories: affirmative acts, knowing omissions, and specific regulatory violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). But Foxx does not plausibly allege any of those categories. The FAC does not identify a specific New Jersey regulation that Defendants violated. Nor does it plead a particular affirmative misrepresentation or omission made to Foxx.

The NJCFA claim also fails because the alleged misrepresentation must be a material false statement of fact. In order to plead an actionable false and misleading statement under the NJCFA, "the [alleged] misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 462 (N.J. Super. Ct. App. Div. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997). The FAC does not plausibly allege that the phrase "Service Fee," standing alone, was false or misleading. It pleads no facts showing the term could not refer to processing the elected payment method. The FAC merely alleges that Foxx paid rent by credit card and was charged Service Fees after being previously notified that the fees were optional. (*See* FAC ¶¶ 100–101 *compare* RJN, Ex. C.)

The omission theory fares no better. A knowing omission claim under the NJCFA requires more than a generalized allegation that information was not disclosed; it

requires facts supporting a duty to disclose, knowledge, materiality, intent that consumers rely, and causation. *See Glass v. BMW of North America, LLC*, 2011 WL 6887721, at *5  (D.N.J. Dec. 29, 2011).  Foxx does not plead facts showing that Defendants owed him a duty to disclose every payment alternative at lease signing or that Defendants knew any specific statement he saw was false or incomplete.  Nor does he plead how any omitted information caused an ascertainable loss, particularly where the fee was disclosed before payment submission and the payment-flow materials show alternative methods were available.  Accordingly, Foxx's NJCFA claim should be dismissed.

### 8.    Picardi's 93A Claim fails because she did not serve a pre-suit demand letter, or allege an applicable regulatory predicate or deceptive conduct (Seventh Cause of Action).

Picardi asserts a Chapter 93A claim on behalf of the Massachusetts Class, but the FAC does not plead the statutory prerequisites or facts showing an unfair or deceptive act. (FAC, ¶¶ 214-226.)  First, Picardi did not serve the required pre-suit demand letter and does not allege that she did so.[10]  93A requires a demand letter at least thirty days prior to filing a lawsuit. M.G.L. ch. 93A, § 9(3).  That defect is fatal.  *Hansen v. Saxon Mortg. Servs., Inc.*, No. 1:11-CV-11128-JLT, 2012 WL 3686448, at *4 (D. Mass. Aug. 23, 2012).

Second, the specific section of the Code of Massachusetts Regulation on which Picardi relies was not in effect during the relevant period.  It applies only to alleged acts committed September 2, 2025, and after.  *See* 940 CMR 38.09 ("Enforcement Date." "940 CMR 38.00 shall apply to acts committed or practices in force as of September 2, 2025.").  Picardi alleges the relevant time period is between September 1, 2023 through January 16, 2025.  (FAC, ¶ 107.)  The FAC therefore does not plausibly plead a viable statutory predicate for Picardi's 93A claim.

---

[10] Picardi cannot rely on Plaintiffs' CLRA demand letter, because it makes no mention of a 93A claim.  (Bermudez Decl., ¶ 5; Ex. G [Feb. 9, 2026, Ltr.].)

Third, disclosed payment alternatives defeat any plausible inference that the challenged practice was extortionate, coercive, or otherwise unfair under Chapter 93A. *See, e.g.*, *Valley Children's Hosp. v. Athenahealth, Inc.*, No. 22-cv-10689-DJC, 2023 WL 6065800, at *4 (D. Mass. Sept. 18, 2023); *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 336 (D. Mass. 2012)), *aff'd*, 527 F. App'x 20 (1st Cir. 2013). Picardi's payment flow offered fee-free alternatives, including bank account and debit card options. (Bermudez Decl., Ex. A.) And any debt-collection predicate under Mass. Gen. Laws ch. 93, § 49 fails for the same reasons as the FDCPA and Rosenthal Act theories.[11]

### 9. Plaintiffs' Unjust Enrichment claim fails because it is not a standalone cause of action and is duplicative of Plaintiffs' other remedies (Eighth Cause of Action).

Plaintiffs' unjust enrichment claim fails for at least four independent reasons. First, Plaintiffs' unjust enrichment claim fails because there is no such standalone claim under California law. *Hill v. Roll Int'l. Corp.*, 195 Cal. App. 4th 1295, 1307 (2011). Second, Plaintiffs fail to plead that any unjust benefit accrued to each Defendant by virtue of the disclosed Service Fee. Third, it fails because Plaintiffs already seek restitution by way of their UCL claim. (FAC ¶ 184.) A duplicative claim for "restitution" is unnecessary and should be dismissed. *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 208 (2023). And fourth, it fails because Plaintiffs fail to plead that money damages—which Plaintiffs seek via their tortious interference claim—would not provide an adequate legal remedy. "[W]here [as here] an equitable relief claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-CV-03871-LHK, 2017 WL 4517111, at *12 (N.D. Cal. Oct. 10, 2017) (citation modified).

---

[11] Picardi's 93A claim also fails on the separate ground that the FAC specifically alleges that the MDCPA defines "debt" as money that is more than 30 days past due unless a different time is specified. (*See* FAC, at ¶ 75.) However, Picardi does not allege that her rent payments were more than 30 days past due.

## V.      CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' FAC with prejudice.

Dated:  June 26, 2026          E. SCOTT SCHIRICK, *Pro Hac Vice*
                               DAVID B. CARPENTER, *Pro Hac Vice*
                               RACHEL E. K. LOWE
                               JONATHAN J. KIM

                               **ALSTON & BIRD LLP**


                                By:  _____ */s/ Rachel E. K. Lowe* _____
                                          Rachel E. K. Lowe
                               Attorneys for Defendants Yardi Systems, LLC and
                               RentCafe, LLC

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**<u>LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE</u>**

The undersigned, counsel of record for Defendants Yardi Systems, LLC and RentCafe, LLC, certifies that this brief contains 6,961 words, which complies with the word limit of Local Rule 11-6.1.

DATED: June 26, 2026

By: _____*/s/ Rachel E. K. Lowe*_____
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

DATED:  June 26, 2026

By:   */s/ Rachel E. K. Lowe*
        Rachel E. K. Lowe
        Attorneys for Defendants Yardi Systems, LLC
        and RentCafe, LLC

MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT