**KALIELGOLD PLLC**
Sophia G. Gold (SBN: 307971)
sgold@kalielgold.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., and RENTCAFE, LLC,<br><br>Defendants. | Case No: 2:26-cv-03318-WLH-BFM<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hon. Wesley L. Hsu<br><br>Date: August 28, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br>350 West First Street<br>Los Angeles, CA 90071 |

# TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 2

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

- I. The Service Fees Violate the UCL, CLRA, NJCPA and Mass. 93A .......... 3
  - A. Defendants' Service Fees Are Deceptive .......... 3
  - B. Plaintiffs adequately allege actionable omissions .......... 6
  - C. Plaintiff Mosley States Viable Claims Under All Three Prongs of the UCL .......... 7
    - 1. Plaintiff Mosely adequately alleges the "fraudulent" prong .......... 7
    - 2. Plaintiff Mosley adequately alleges Defendants' conduct is "unlawful" .......... 8
    - 3. Plaintiff Mosley adequately alleges Defendants' conduct is "unfair" .......... 8
    - 4. Plaintiff Mosley adequately alleges entitlement to equitable relief .......... 9
  - D. Plaintiff Mosley Adequately Alleges Her CLRA Claim .......... 10
  - E. Plaintiff Foxx Adequately Alleges His NJCFA Claim .......... 11
  - F. Plaintiff Picardi Adequately Alleges Her 93A Claim .......... 12
- II. Defendants Tortiously Interfere With Plaintiffs' Contracts .......... 14
- III. Defendants' Service Fee Violates the FDCPA and California's Rosenthal Act .......... 15
  - A. Defendants' Service Fee violates the FDCPA as the collections of an amount unauthorized by Plaintiffs' lease agreements and not allowed by law .......... 15
  - B. Because Defendants' Service Fee violates the FDCPA, Defendants also violate the Rosenthal Act .......... 18
- IV. Plaintiffs Adequately Plead Their Unjust Enrichment/Quasi-Contract Claims .......... 20

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 3

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 2

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ... 11

*Best v. Ocwen Loan Servicing, LLC*,
64 Cal. App. 5th 568 (2021) 18

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ... 7

*Blessing v. Sirius XM Radio Inc.*,
756 F. Supp. 2d 445 (S.D.N.Y. 2010) ... 5

*Block v. Seneca Mortg. Servicing*,
221 F. Supp. 3d 559 (D.N.J. 2016) ... 12

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ... 8

*Bruton v. Gerber Prods. Co.*,
703 F. App’x 468 (9th Cir. 2017) ... 20

*Campbell v. MBI Assoc., Inc.*,
98 F. Supp. 3d 568 (2015) ... 16

*Casavant v. Norwegian Cruise Line, Ltd.*,
919 N.E.2d 165 (Mass. App. 2009) ... 12

*Caudillo v. Portfolio Recovery Assocs., LLC*,
No. 12-CV-200-IEG, 2013 WL 4102155 (S.D. Cal. Aug. 13, 2013) .............. 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 9

*Chowning v. Tyler Techs., Inc.*,
No. 4:25-cv-04009-YGR, 2025 WL 3496690 (N.D. Cal. Dec. 5, 2025) ......... 11

*Clark v. Cap. Credit & Collection Svcs. Inc.*,
460 F.3d 1162 (2006) .......... 15

*DeSimone v. Select Portfolio Servicing, Inc.*,
748 F. Supp. 3d 136 (E.D.N.Y. 2024) .......... 16, 20

*Ehret v. Uber Tech., Inc.*,
68 F. Supp. 3d 1121 (2014) .......... 5

*EyeBuyDirect, Inc.*,
No. 8:25-cv-00539-JVS-DFM, 2025 WL 2633103
(C.D. Cal. Aug. 27, 2025) .......... 5

*Flores v. Collection Consultants of California*,
No. SA CV 14-0771-DOC (RNBx) 2015 WL 4254032
(C.D. Cal. Mar. 20, 2015) .......... 17

*Giordano v. Saxon Mortg. Servs., Inc.*,
No. CIV.A. 12–7937 MAS, 2014 WL 4897190 (D.N.J. Sept. 30, 2014) ........ 12

*Gonzalez v. Wilshire Credit Corp.*,
207 N.J. 557 (2011) .......... 12

*Harvey v. World Market, LLC*,
No. 25-cv-01242-CRB, 2025 WL 1359066 (N.D. Cal. May 9, 2025) ........ 4, 10

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) .......... 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .......... 11

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) ........................................................ 10

*Jeong v. Nexo Fin. LLC*,
No. 21-cv-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022)............. 10

*Johnson v. Wal-Mart Stores, Inc.*,
544 Fed. Appx. 696 (9th Cir. 2013)............................................................. 5

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ................................................................................ 10

*Lembeck v. Arvest Cent. Mortg. Co.*,
498 F. Supp. 3d 1134 (N.D. Cal. 2020) ...................................................... 19

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ........................................................................ 6

*Lindblom v. Santander Consumer USA Inc.*,
No. 1:15-CV-0990-BAM, 2018 WL 500347 (E.D. Cal. Jan. 22, 2018).......... 16

*Lindblom v. Santander Consumer USA, Inc.*,
No. 15-CV-990 (LJO) (BAM), 2016 WL 2841495
(E.D. Cal. May 9, 2016)........................................................................ 16, 19

*Mann, et al. v. Yardi Systems, Inc.*,
No. 23STCV14050 (Sup. Ct. Cal. June 26, 2026).................................... 19, 20

*Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*,
552 F.3d 47 (1st Cir. 2009)......................................................................... 21

*Mirabadi v. Select Portfolio Servicing, Inc.*,
No. CV 23-06809 PSG (SP), 2024 WL 1151673 (C.D. Cal. Feb. 13, 2024) .. 11

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (1989)...................................................................................... 3

*Morgan v. Penske Logistics, LLC*,
No. 8:23-cv-01750-JWH, 2024 WL 4800486 (C.D. Cal. July 8, 2024).......... 10

*Moronta v. Nationstar Mortg., LLC*,
476 Mass. 1013 (2016) ................................................................................ 12

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881 (N.D. Cal. 2022) ........................................................ 9

*O'Connor v. Nantucket Bank*,
992 F. Supp. 2d 24 (D. Mass. 2014) ........................................................ 13

*Olson v. La Jolla Neurological Associates*,
85 Cal. App. 5th 723 (2022) ........................................................ 19

*Pac. Gas & Elec. Co. v. Bear Stearns & Co*.,
50 Cal. 3d 1118 (1990) ........................................................ 14

*Patterson v. WEX, Inc.*,
No. 25-cv-08557-RS, 2026 WL 370183
(N.D. Cal. Feb. 10, 2026)........................................................ 4, 6, 11, 19, 21

*Ramirez v. Sti Prepaid LLC*,
644 F. Supp. 2d 496 (D.N.J. 2009) ........................................................ 12

*Riding v. Cach LLC*,
992 F. Supp. 2d 987 (C.D. Cal. 2014) ........................................................ 15, 19

*Riggs v. Prober & Raphael*,
681 F.3d 1097 (9th Cir. 2012) ........................................................ 18

*Robinson v. Managed Accounts Receivable Corp*.,
654 F. Supp. 2d 1051 (C.D. Cal. 2009) ........................................................ 19

*Robledo v. Yardi Systems, Inc*.,
741 F. Supp. 3d 617 (W.D. Tex. June 26, 2024) ........................................................ 16

*Ruiz v. Bradford Exch., Ltd*.,
153 F.4th 907 (9th Cir. 2025) ........................................................ 10

*Russ v. Apollo Grp., Inc.*,
No. CV 09-904-VBF(FMOX), 2009 WL 10674112
(C.D. Cal. Sept. 23, 2009)........................................................ 11

*Sandoval v. M1 Auto Collisions Centers*,
309 F.R.D. 549 (N.D. Cal. 2015)........................................................ 18

*Schertzer v. Bank of Am., N.A.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020)........................................................ 11

*Shipley v. Meta Platforms, Inc.*,
No. 25-CV-03324-WHO, 2025 WL 3683868 (N.D. Cal. Dec. 18, 2025)......... 9

*Simmet v. Collection Consultants of California*,
No. CV1602273BROPLAX, 2016 WL 11002359
(C.D. Cal. July 7, 2016) .................................................................. 15, 16, 17, 19

*Sonner v. Premier Nutrition Corp*.,
971 F.3d 834 (9th Cir. 2020) ...................................................................... 9, 10

*Stewart v. Beam Global Spirits & Wine, Inc*.,
877 F. Supp. 2d 192 (D.N.J. 2012) ............................................................... 21

*Thompson v. Navient Solutions, LLC*,
No. 1:24-cv-12664-IT, 2026 WL 926137 (D. Mass. Apr. 6, 2026)................. 13

*Torliatt v. Ocwen Loan Servicing, LLC*,
No. 19-cv-04303-WHO, 2020 WL 1904596 (N.D. Cal. Apr. 17, 2020)......... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................... 3

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ......................................................................... 3

*Wade v. Regional Credit Ass'n*,
87 F.3d 1098 (9th Cir. 1996) ......................................................................... 15

*Walters v. Fidelity Mortgage of California*,
730 F. Supp. 2d 1185 (E.D. Cal. 2010)........................................................... 14

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ...................................................................... 7, 8

*Williams v. Pennymac Loan Servs., LLC*,
No. 1:25-cv-00276, 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025)............ 3, 4, 6

**STATUTES**

15 U.S.C. § 1692f(1) .......... 9

15 U.S.C.A. § 1692a(5) .......... 20

15 U.S.C.A. § 1692a(6) .......... 17

15 U.S.C.A. § 1692f .......... 15

Cal. Civ. Code § 1788.1, subd. (b) .......... 18

Cal. Civ. Code § 1770 (a)(14) .......... 10

Cal. Civ. Code § 1770 (a)(29) .......... 10

Cal. Civ. Code § 1770(a)(5) .......... 10

FDCPA Section 1692f(1) .......... 15

Mass. Gen. Laws Ch. 93 § 49 .......... 13

Code Mass.Reg. Title 940 .......... 13

**OTHER AUTHORITIES**

2023 Cal. Legis. Serv. Ch. 400 (S.B. 478) .......... 19

Mass. Gen. Laws ch. 93A, § 2(a) .......... 12

Mass. Gen. Laws ch. 93A, § 2(b) .......... 13

N.J.S.A 56:8–2 .......... 12

**RULES**

F.R.Civ.P. Rule 12(b)(6) .......... 2

## INTRODUCTION

Defendants Yardi Systems, Inc. and RentCafe, LLC (collectively, "Defendants" or "RentCafe") charge cash-strapped apartment renters a fee to pay their rent due under already-signed leases (the "Service Fee"). These "pay to pay" fees are not trivial—Plaintiffs paid up to $71.90 *per month* just to pay their rent—and add to the significant rental price burden afflicting working Americans. Worse, they come as a surprise to renters, whose leases neither authorize such fees nor mention the existence of a third-party middleman who will assess fees to make rental payments. Then, when renters go to pay their rent for the first time, they encounter a deceptive RentCafe platform designed to extract extra fee income with a deceptive screenflow; misrepresentations about the purpose and avoidability of the fees; and omissions about the fees.

As explained in the Opposition to Defendant's Request for Judicial Notice, the screenflows Defendants attach to their Motion should not be considered at this stage—in part because the cherry-picked screens Defendants rely on are not even accurate representations of what Plaintiffs saw on the website at the time of their transaction, or when they used the RentCafe mobile app. But even if considered, the screens are not exculpatory and in fact show key pieces of the deception and unfairness at issue. First, the *existence* of the Service Fee is hidden—and *only* viewable if a consumer finds and clicks on a collapsed banner—evidenced by the "show less" indicator in the top right of each of RentCafe's screenshots. As a result, when Plaintiffs and other consumers make payments through the RentCafe portal, they are only told about the Service Fee if they find and click on a "show more" button. Second, the *amount* of the Service Fee is undisclosed until the very final payment screen, when RentCafe knows consumers are unlikely to cancel the transaction. Third, RentCafe never informs consumers of how to avoid the Service Fee, instead presenting it as mandatory. Finally, RentCafe misrepresents the nature of the Service Fee as an authorized pass-through cost, instead of a profit center barred by the original lease.

///

For these reasons and as further described below, Defendants' Service Fees violate state consumer protection law; amount to a tortious interference with contract; and violate state and federal debt collection laws. The Motion should be denied.

## FACTUAL BACKGROUND

RentCafe is a middleman rent-collector surreptitiously foisted onto consumers after they decide to lease an apartment. FAC, ¶ 2. RentCafe imposes unauthorized "pay to pay" Service Fees on thousands of unsuspecting renters, resulting in millions of dollars in profit each year. *Id*. at ¶ 90. Plaintiffs entered into lease agreements wherein they each agreed to a specific amount of monthly rent. *Id*. at ¶¶ 94, 101, 108. Plaintiffs were not informed of the existence of RentCafe, let alone RentCafe's Service Fees, at the time they signed their leases.

RentCafe's payment portal is also deceptive. RentCafe hides the existence of the Service Fee behind small-print and difficult-to-find disclaimers; does not disclose the amount of the Service Fee until the final payment screen; defaults to a payment method that includes the Service Fee; and fails to adequately inform tenants of free payment alternatives, leading tenants to believe that the fee is mandatory and unavoidable. *Id.* at ¶¶ 77-82. Further, RentCafe misrepresents the nature of the Service Fee—presenting it as a legitimate and authorized pass-through charge—when the fee actually far exceeds any processing costs incurred and is barred under tenants' leases. *Id.* at ¶¶ 84-92.

Plaintiffs each were charged Defendants' unlawful, unfair and deceptive Service Fee, from which Defendants benefited. *Id*. at ¶¶ 99, 106, 113.

## LEGAL STANDARD

A complaint may only be dismissed under Rule 12(b)(6) for one of two reasons: (1) it lacks a cognizable legal theory; or (2) it alleges insufficient facts to support a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

### I. The Service Fees Violate the UCL, CLRA, NJCPA and Mass. 93A[1]

#### A. Defendants' Service Fees Are Deceptive

Plaintiffs entered into leases—agreeing to pay a rate certain for the right to live in a dwelling—with no notice or agreement to pay additional "pay to pay" Service Fees to Defendants, who they did not even know existed. FAC, ¶¶ 95, 96, 102, 103, 109, 110. Defendants had no authority to surprise Plaintiffs with Service Fees. Such conduct is deceptive and unfair under the four statutes at issue here: charging unauthorized fees to a captive audience is *per se* an unfair and deceptive practice.

*Williams v. Pennymac Loan Servs., LLC*, No. 1:25-cv-00276, 2025 WL 3443489 (M.D.N.C. Dec. 1, 2025) is analogous. There, the court upheld the plaintiff's consumer protection claims on a motion to dismiss arising from the defendant loan servicer's $6.75 "pay to pay" fee charged on mortgage payments, where the consumer was unable to choose their loan servicer. *Id.* at *5 ("The plaintiff emphasizes that borrowers cannot choose their loan servicer, and so borrowers who prefer to pay using methods for which Pennymac or its agents charge an excessive fee cannot select a loan servicer that accepts their preferred payment method for no additional cost"). The court held

[1] The FAC also sufficiently provides the particularized details of Defendants' fraud. FAC, ¶¶ 115-21. Such allegations explain the "who, what, when, where and how" of the misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Because the FAC's comprehensive allegations permit Defendants to "prepare an adequate answer," Rule 9(b) is satisfied. *Moore*, 885 F.2d at 540. Further, Defendants' group-pleading objection lacks merit. Defendants' own evidence establishes that Yardi is the "sole member/manager of RentCafe, LLC," Bermudez Decl., ¶ 2, and the FAC alleges the two entities operate a single, integrated payment platform through which all Class members pay rent and are assessed the Service Fee. FAC, ¶ 77.

plaintiff adequately alleged the fees were "unfair" because they "far exceed the actual costs of processing online payments." *Id.* at *5. The same is true here.

But the deception only begins there. RentCafe's disclosures of the fee are also designed to mislead. As an initial matter, RentCafe tacks on the Service Fee at check-out, failing to inform consumers of the amount of the fee until the final payment screen, and hiding even the fact of the fee's existence until then in fine print disclaimers.[2]

On this point, *Patterson v. WEX, Inc.*, is instructive. No. 25-cv-08557-RS, 2026 WL 370183 (N.D. Cal. Feb. 10, 2026). There, defendant added a $20 processing fee to pay health insurance premiums—an amount that was not disclosed in the underlying health insurance policy—and failed to inform consumers of the amount of the fee until the final payment screen. There, Judge Seeborg held:

> Defendant's OPP Fee disclosures appear only after a user has signed up for COBRA, created a profile, seen the due date and the amount of their next payment, which does not include the OPP Fee, and selected "Make Payment"…Advertising the payment amount without the OPP Fee plausibly alleges a claim under the CLRA (citing cases). In sum, Plaintiff has plausibly alleged a consumer is likely to be deceived by Defendant's OPP Fee based on *either* Defendant's characterization of the OPP Fee or delayed disclosure.

2026 WL 370183, at *4 (emphasis added); *see also Harvey v. World Market, LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *7 (N.D. Cal. May 9, 2025) (motion to dismiss denied where an online seller engaged in "drip pricing" by omitting mandatory fees from its advertised prices).

Moreover, as in *WEX*, RentCafe further mischaracterizes its Service Fee as a legitimate and authorized pass-through charge, when the fee actually far exceeds any

---

[2] Defendants' excerpted screenshots of its fine print in its Motion are themselves a form of trickery. As discussed further in the Opposition to the Request for Judicial Notice, Defendants omit any evidence of the RentCafe app, which Plaintiffs and Class Members used, and which obscured the existence of the Service Fee even further.

processing costs incurred and is barred under tenants' leases. *Id.* at ¶¶ 84-92.[3] This, too, has been repeatedly upheld as a valid claim of deception by courts. *See Ehret*, 68 F. Supp. 3d at 1137 (ride share fee represented as a "gratuity" that was "automatically added for the driver" was misleading, when in reality a significant portion of the fee was retained by defendant as profit); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 450 (S.D.N.Y. 2010) (defendant's "royalty fee" charged with its subscription service was deceptively described as a pass-through cost when it was actually a hidden profit).

Finally, the platform is designed to make the Service Fee seem mandatory. RentCafe programs its platform to "automatically default to a payment method with added Service Fees" through a "negative option" that the FTC has condemned. *Id.* at ¶¶ 82-83. And RentCafe does not adequately inform tenants of free alternatives, leading tenants to believe that the fee is mandatory and unavoidable. *Id.* at ¶¶ 77-82. Courts have upheld claims of deception based upon presenting a fee as mandatory when it is optional. *See, e.g., EyeBuyDirect, Inc*., 2025 WL 2633103, at *8-10 (reasonable consumers were misled by the addition of a package protection fee because the checkout page did not clearly disclose that the fee was optional); *Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. Appx. 696, 697 (9th Cir. 2013) (Wal-Mart's $9 recycling fee was disclosed but was nonetheless an actionable misrepresentation because Wal-Mart implicitly advertised the fee as mandatory under California law when it was not).[4]

---

[3] Defendants argue that Plaintiffs quoted the wrong explanation of its Service Fee in the Complaint. *See* Mot. at 10 ("Plaintiffs cite to disclaimer language from an entirely different case involving a different payment flow process, without quoting the entire disclaimer in context."). Defendants are mistaken. The language from the Complaint explaining the Service Fee is taken from Defendants' portal, and Plaintiffs will provide the screenshot to prove it in discovery.

[4] RentCafe argues that payment of the Service Fee is not actually mandatory. This misses the point, given that consumers are led to believe it is. In any event, the

For each of these reasons, RentCafe's Service Fee is unfair and deceptive under state consumer protection law.[5]

### B. Plaintiffs adequately allege actionable omissions

Plaintiffs also plausibly allege that Defendants omitted material information concerning the existence and nature of the Service Fee. Under California law, a duty to disclose exists when the defendant, among other things, "actively conceals a material fact" or "makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

Defendants did just that, in at least three ways. First, RentCafe's deceptive payment interface actively concealed the Service Fees from consumers, as consumers making their rental payments through the RentCafe payment platform are not adequately informed of the amount RentCafe charges for the Service Fee until the final "Confirm" payment screen. FAC, ¶¶ 77-83. Second, Defendants omitted crucial information on whether and/or how to avoid the Service Fees. *Id.* at ¶ 80. Third, Defendants characterized the Service Fees as lawful payment-processing fees but failed to disclose that the fees "are materially higher than the costs incurred by RentCafe, can add up to hundreds of dollars over the life of a lease agreement, and provide millions of dollars in profits for RentCafe." *Id.* at ¶ 90. Defendants "misle[d] consumers into believing the Service Fees are a legitimate pass-through cost, when

---

processing fee was likewise not mandatory in *Patterson v. WEX* (consumers could pay by check to avoid the fee) or in *Williams v. Pennymac* ("Pennymac argues that the Pay-to-Pay fees do not constitute unfair debt collection because free payment methods are offered") but the courts in those cases upheld state law consumer claims nevertheless.

[5] RentCafe's argument that the Complaint identifies "no specific statements" or conduct that would support an inference of deception is belied by this Section. *Cf* Mot. at 1.

they are not."[6] *Id.* at ¶ 92. Defendants did so knowing that the imposition of added fees on monthly rent payments is material to reasonable tenants. *Id.* at ¶ 116. Such omissions are actionable.[7] *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 923-24 (N.D. Cal. 2013) (court denied dismissal of UCL claim where assessed fees were "significantly marked-up from the third-party vendors' actual fees" for the underlying services, while "[n]owhere" disclosing "that the servicer may mark-up the actual cost of those services to make a profit.").

### C. Plaintiff Mosley States Viable Claims Under All Three Prongs of the UCL

1. Plaintiff Mosely adequately alleges the "fraudulent" prong

A practice is fraudulent under the UCL if members of the public are "likely to be deceived," and the inquiry is governed by the effect the practice would have on a reasonable consumer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). For all the reasons discussed *supra* at I.A and I.B, Defendants' conduct is fraudulent under the UCL. Although Defendants disagree, whether the imposition of the Service Fee is fraudulent is a "question of fact" that *Williams* reserves for the factfinder.

---

[6] Whether Defendants' conduct rendered RentCafe "unusable," Mot. at 12, is irrelevant. As explained above, Plaintiffs' injury resulted from Defendants' junk Service Fee, not their inability to submit payments.

[7] Defendants characterize Plaintiffs' hidden-profit allegations as relying on "averages" that do not allege "actual costs" for Plaintiffs' specific transactions. Mot. at 13. But all Plaintiffs must do at this stage is provide a plausible basis for the inference of a false or misleading fee representation. The FAC supplies one: it grounds its hidden-profit allegations in cited, publicly available benchmarks—namely, the Federal Reserve's interchange-fee data, the Durbin Amendment's regulatory caps on debit interchange fees, and industry cost surveys by NACHA and the Association for Financial Professionals, *see* FAC, ¶¶ 86-87 & nn.30-31, and compares those benchmarks to RentCafe's Service Fees, which materially exceed them. *See id.* at ¶¶ 89-90.

Moreover, *Williams* squarely forecloses Defendants' premise that a fine print disclosure defeats a deception claim as a matter of law: a defendant may not "mislead consumers and then rely on the [fine print] to correct those misinterpretations and provide a shield…for the deception." *Williams*, 552 F.3d at 939. A reasonable consumer is not required to hunt past the displayed rent for a buried fee in order to avoid being misled.

2. <u>Plaintiff Mosley adequately alleges Defendants' conduct is "unlawful"</u>

Plaintiff Mosley adequately alleges Defendants violate the "unlawful" prong via their violations of the FDCPA, Rosenthal Act and CLRA. *See infra.*

3. <u>Plaintiff Mosley adequately alleges Defendants' conduct is "unfair"</u>

Courts in the Ninth Circuit determine whether conduct is "unfair" under the UCL by applying two tests: (1) the balancing test, which weighs "the harm to the consumer against the utility of the defendant's practice" and (2) the tethering test, which considers whether the alleged unfairness is "tethered to some legislatively declared policy." *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *7, *9 (N.D. Cal. Aug. 16, 2021).

RentCafe assessed Service Fees on monthly rent payments that were never disclosed at the time Plaintiffs signed their leases, and exceed RentCafe's actual processing costs. Because they "are forced to complete their rental payments through RentCafe" and "cannot choose another payment processor or shop around for a better deal," Class Members are a captive audience with no market mechanism to avoid the charge—precisely the harm the FTC has identified in condemning service fees imposed on "captive consumers." *Id.* at ¶¶ 48, 91. The harm to Plaintiff Mosley and the Class "outweighs the utility of Defendants' practices" because there were "reasonably available alternatives to further Defendants' legitimate business interests" other than imposing its for-profit Service Fee. FAC, ¶ 178. "These facts, taken in the aggregate,

plausibly show that [RentCafe] was engaging in "immoral, unethical, oppressive, unscrupulous or substantially injurious" conduct" sufficient to support an "unfair" claim under the UCL. *Shipley v. Meta Platforms, Inc.,* No. 25-CV-03324-WHO, 2025 WL 3683868, at *9 (N.D. Cal. Dec. 18, 2025).

The FAC independently satisfies the unfair prong's tethering test, which asks whether the challenged practice is "tethered to some legislatively declared policy." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999). The Service Fee is tethered to at least three distinct policies detailed in the FAC. *First*, California's Honest Pricing Law prohibits "drip pricing," that is, "advertising a price that is less than the actual price that a consumer will have to pay." FAC, ¶ 52. *Second*, the Service Fee is tethered to the policy embodied in California's Rosenthal Act, as described *infra*. *Third*, and as described further *infra*, the FDCPA declares a parallel policy against "the collection of any amount…unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); FAC, ¶ 63. Defendants' conduct violates each of these legislative policies.

4. Plaintiff Mosley adequately alleges entitlement to equitable relief

Consistent with F.R.C.P. 8, Plaintiff Mosley seeks damages resulting from Defendants' conduct and equitable relief in the alternative, in case damages prove unavailable or inadequate. FAC, ¶ 186. *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020) permits this pleading decision. There, the Ninth Circuit held that a plaintiff could not reassert a damages claim she dropped before trial to seek only equitable restitution under the UCL. *Id.* at 841. *Sonner* therefore merely "teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action." *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895 (N.D. Cal. 2022) (declining to dismiss UCL claim). Post-*Sonner*, courts in this Circuit permit plaintiffs to plead UCL claims in conjunction with their monetary claims. *See, e.g.*, *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL

174236, at *27 (N.D. Cal. Jan. 19, 2022); *Morgan v. Penske Logistics, LLC*, No. 8:23-cv-01750-JWH, 2024 WL 4800486, at *3 (C.D. Cal. July 8, 2024).

Moreover, *Sonner* concerns backward-looking restitution for "past harm"; the Ninth Circuit expressly noted that "[i]njunctive relief [was] not at issue." *Sonner*, 971 F.3d at 842, 844. Here, by contrast, Plaintiff Mosley and the California Class seek forward-looking injunctive relief to stop Defendants' continuing practice of assessing the Service Fee—relief not obtainable through damages. FAC ¶¶ 185–86.

Lastly, even if Plaintiff Mosley has not plausibly alleged the absence of an adequate remedy at law (she has), the proper disposition is dismissal without prejudice, as Defendants' own authority acknowledges. *See Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 914 (9th Cir. 2025).

**D. Plaintiff Mosley Adequately Alleges Her CLRA Claim**[8]

Defendants' unfair and fraudulent conduct discussed *supra* also violates the CLRA. RentCafe may not tack on surprise Service Fees at the end of a transaction, misrepresent such fees as authorized pass-through costs, or trick consumers into paying Service Fees by defaulting them into payment methods that require it without adequately disclosing free alternatives. *See* Cal. Civ. Code §§ 1770(a)(5), (a)(14), (a)(29).[9] Indeed, the CLRA explicitly bans "drip pricing" like RentCafe's in "all industries" including RentCafe's rent processing platform. *Harvey*, 2025 WL 1359066, at *1-2 n.2 ("Section 1770(a)(29)'s legislative history explicitly states that the bill is

---

[8] Plaintiff Mosley alleges that she was charged and paid Defendants' unlawful pay-to-pay Service Fee. FAC, ¶¶ 93-99. This is sufficient to provide standing. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 324 (2011).

[9] RentCafe's fee misrepresentations and omissions injure California Class members in the form of unauthorized premiums on rent payments. FAC ¶¶ 82, 97, 121. Plaintiff Mosley thus plausibly establishes reliance and resulting injury. *See In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 765-66 (C.D. Cal. 2022); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 317, 323 (2011).

designed to prohibit drip pricing in all industries, rather than solely in the context of ticket pricing…”).

Despite assessing a “Service Fee,” Defendants ironically argue that it does not provide a “service” as that term is defined under the CLRA. Mot. at 21. The premise fails. RentCafe’s public-facing platform for processing payments is a “service.” *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1142 (N.D. Cal. 2018) (public-facing, web-based platform under defendant’s ongoing control is a CLRA “service”); *Chowning v. Tyler Techs., Inc.*, No. 4:25-cv-04009-YGR, 2025 WL 3496690, at *4–5 (N.D. Cal. Dec. 5, 2025) (online reservation platform charging checkout fee provides a “service”); *see also Patterson*, 2026 WL 370183 (holding CLRA applied to platform that charged fees to enroll in COBRA); *Russ v. Apollo Grp., Inc.,* No. CV 09-904-VBF(FMOX), 2009 WL 10674112, at *2 (C.D. Cal. Sept. 23, 2009) (finding CLRA applied to claims involving deceptive conduct relating to college loan payments). RentCafe’s imposition of the Service Fee is wholly inconsistent with the purpose of the CLRA and Defendant fails to provide any persuasive authority showing otherwise.[10]

**E. Plaintiff Foxx Adequately Alleges His NJCFA Claim**

The NJCFA “provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace.” *Gonzalez v. Wilshire Credit Corp.*, 207

---

[10] RentCafe’s cases are distinguishable. *Mirabadi*, which involved mortgage loan services, has no relevance here, as it specifically relied on a line of cases holding mortgage loans, and ancillary services thereto, to be excluded from the CLRA’s ambit. *See Mirabadi v. Select Portfolio Servicing, Inc.*, No. CV 23-06809 PSG (SP), 2024 WL 1151673, at *7 (C.D. Cal. Feb. 13, 2024). In *Schertzer*, the court relied on an exception to the CLRA pertaining to overdraft fees. *See Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1096 (S.D. Cal. 2020). And in *Berryman*, the plaintiff paid fees through escrow to a third party, not the defendant. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1558 (2007). Here, no similar exception exists. To the contrary, this is precisely the type of “drip pricing” conduct the CLRA has been designed to prevent.

N.J. 557, 576 (2011). To state an NJCFA claim, a consumer must plead (1) an unlawful practice; (2) an ascertainable loss; and (3) a causal relationship between the two. *Id*. at 577. The Act prohibits affirmative acts and knowing omissions that rise to deceptive trade practices. N.J.S.A 56:8–2; *see also Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 593 (D.N.J. 2016).

Here, and for all the reasons discussed *supra* at I.A and I.B, Plaintiff Foxx explicitly alleges actionable and material misrepresentations and omissions as it relates to Defendants' Service Fee. FAC, ¶¶ 202-05. Plaintiff Foxx further alleges that he suffered ascertainable economic loss. *See e.g*., *Giordano v. Saxon Mortg. Servs., Inc.*, No. CIV.A. 12–7937 MAS, 2014 WL 4897190, at *6 (D.N.J. Sept. 30, 2014); *Ramirez v. Sti Prepaid LLC*, 644 F. Supp. 2d 496, 501 (D.N.J. 2009).[11]

### F. Plaintiff Picardi Adequately Alleges Her 93A Claim[12]

"Chapter 93A is a broad ... consumer protection statute," under which "[a] plaintiff must allege "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Casavant v. Norwegian Cruise Line, Ltd.*, 919 N.E.2d 165, 168-69 (Mass. App. 2009) (citing Mass. Gen. Laws ch. 93A, § 9); *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (quoting Mass. Gen. Laws ch. 93A, § 2(a)).

---

[11] Notably, even RentCafe does not argue Foxx received any affirmative disclosure about the existence of the Service Fee, and instead acknowledges he would have had to click on and hunt through the FAQ page to find out about it. *See* Mot. at 7-9.

[12] Pre-suit notice is not required under Massachusetts General Laws ch. 93A where a defendant does not maintain a place of business or does not keep assets within the Commonwealth. *See Moronta v. Nationstar Mortg., LLC*, 476 Mass. 1013, 1014-15 (2016); *DeCotis v. Specialized Loan Servicing LLC*, 642 F. Supp. 3d 181, 188 (D. Mass. 2022). Defendants do not assert, nor can they, that they maintain a place of business in Massachusetts or keep assets in Massachusetts. Plaintiff Picardi therefore had no duty to provide Defendants with pre-suit notice.

Here, and for all the reasons discussed *supra* at I.A and I.B, Plaintiff Picardi explicitly alleges actionable and material misrepresentations and omissions as it relates to Defendants' Service Fee. While 93A does not define "unfair or deceptive acts or practices," it provides that courts "will be guided" by the FTC's and federal courts' interpretations of the provisions of the FTC Act that also proscribe unfair or deceptive acts or practices. Mass. Gen. Laws ch. 93A, § 2(b). The FTC explicitly identified the harm that results from property management software providers like Defendants when they fail to provide consumers with transparent rental prices. FAC, ¶¶ 27-28. Furthermore, the FTC and CFPB have explicitly targeted "pay to pay" fees like Defendants' Service Fees as a deceptive practice. *Id*. at ¶¶ 46-50. This same concern was raised by Massachusetts Attorney General when she addressed the deception associated with junk fees charged in relation to rental payments.[13] *Id*. at ¶ 54. Plaintiff Picardi similarly identifies this deception in her 93A claim. *Id*. at ¶¶ 221, 223.[14]

---

[13] Plaintiff Picardi agrees that Sections 38.04, *et seq.* of Code of Massachusetts Regulations Title 940 were not in effect at the time she was charged the Service Fee. However, the enactment of Sections 38.04, *et seq*. further supports her claim that Massachusetts considers junk fees like Defendants' Service Fee to be deceptive and unfair. Similarly, Plaintiff Picardi asserts a violation of Mass. Gen. Laws Ch. 93 § 49 as a predicate wrong for her 93A claim, not as a standalone claim. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 34 (D. Mass. 2014); *Thompson v. Navient Solutions, LLC*, 2026 WL 926137, at *8 (D. Mass. Apr. 6, 2026). While Picardi does not dispute the MDCPA defines "debt" as money that is more than 30 days past due unless a different time is specified, Plaintiff Picardi asserts that her payment of the Service Fee was due at the time her rental obligations were due as she could not meet those obligations save for the payment of the Service Fee. As a result, Defendants' charge of the Service Fee at the time Plaintiff Picardi's rent was due meets the definition of "debt" under the MDCPA.

[14] To the extent that Defendants claim that the presence of alternative payment methods to avoid the Service Fee absolve them of liability, the case law does not suppor their argument. *Cf* n. 4 (citing *Patterson*, *Pennymac*). Furthermore, Plaintiff Picardi alleges that the Service Fee itself along with the alternative forms of payment to avoid the Service Fee were buried and hidden. These allegations are sufficient at the pleading stage.

Plaintiff Picardi further establishes the second and third element of her 93A claim by alleging that the Service Fee was imposed by Defendants and she sustained economic harm as a result of her payment of the Service Fee. As a result, Plaintiff Picardi adequately alleges her 93A claim.

## II. <u>Defendants Tortiously Interfere With Plaintiffs' Contracts</u>

Plaintiffs plausibly allege a claim for tortious interference with contract by alleging: (1) a valid contract between Plaintiffs and a third party; (2) Defendants' knowledge of this contract; (3) Defendants' intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co*., 50 Cal. 3d 1118, 1126 (1990). The FAC establishes that Defendants, aware of valid lease agreements between Plaintiffs and third-party landlords, intentionally and surreptitiously imposed Service Fees in excess of the fees or rent permitted under those lease agreements, thereby causing Plaintiffs to incur more fees and/or rent than was promised under the lease agreements and injuring them in the form of unauthorized and unlawful Service Fees. FAC, ¶¶ 2, 5, 7, 11, 32-40, 136-42.

*Walters v. Fidelity Mortgage of California*, 730 F. Supp. 2d 1185 (E.D. Cal. 2010), is instructive here. In *Walters*, a borrower alleged that her mortgage loan servicer induced breach of her contract with a third-party lender by "charging fees that exceeded contractually specified amounts." *Id.* at 1211. Because the borrower plausibly alleged the loan servicer induced a breach by failing to credit payments as contractually required by her contract with the lender and charging fees that exceeded what the contract specified, the court denied a motion to dismiss the borrower's intentional interference with contractual relations claim. *Id.* Here, just as the servicer's imposition of fees exceeding the contractually specified amounts sufficed to state a claim in *Walters*, Defendants' imposition of Service Fees in excess of the amounts permitted under Plaintiffs' lease agreements plausibly establishes an intentional act that disrupted the agreements and injured Plaintiffs.

## III. <u>Defendants' Service Fee Violates the FDCPA and California's Rosenthal Act</u>

### A. Defendants' Service Fee violates the FDCPA as the collections of an amount unauthorized by Plaintiffs' lease agreements and not allowed by law

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1099 (9th Cir. 1996). The FDCPA "should be construed liberally in favor of the consumer." *Clark*, 460 F.3d at 1175-76 (quotation omitted).

As a preliminary matter, the majority of courts in the Ninth Circuit have held that pay-to-pay fees—like Defendant's Service Fee—violate the FDCPA. *Simmet v. Collection Consultants of California*, No. CV1602273BROPLAX, 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (collecting cases and rejecting arguments that convenience fee does not violate the FDCPA because it was optional, constituted a separate agreement and was not incidental to the debt).

Section 1692f(1) of the FDCPA specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C.A. § 1692f. "Where parties have not expressly agreed on charges to be collected with respect to a debt, state law determines whether additional charges are permitted." *Riding v. Cach LLC*, 992 F. Supp. 2d 987, 997-98 (C.D. Cal. 2014). Here, Plaintiffs allege that Defendants' Service Fee is not disclosed in their lease agreements, FAC, ¶¶ 95, 102, 109, and Defendants do not point to any

state law that permits such fees.[15] As a result, Plaintiffs sufficiently allege a violation of the FDCPA. *See Lindblom*, 2016 WL 2841495, at *6-7; *Lindblom v. Santander Consumer USA Inc*., No. 1:15-CV-0990-BAM, 2018 WL 500347, at *5-6 (E.D. Cal. Jan. 22, 2018).

Contrary to Defendant's argument (Mot. at 14-15), whether the Service Fee is a "debt" is irrelevant. Rather, the correct inquiry is whether a service fee is an "amount" charged in connection with Defendants' collection of Plaintiffs' payments under their lease agreements that is "incidental" to the principal obligation. *See DeSimone v. Select Portfolio Servicing, Inc*., 748 F. Supp. 3d 136, 158 (E.D.N.Y. 2024) ("[Defendant's] argument that pay-to-pay fees are not "debt" under the FDCPA is a red herring. Whether pay-to-pay fees constitute a "debt" is beside the point. Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."); *see also Simmet*, 2016 WL 11002359, at *6 ("it is unnecessary to determine whether the alleged $4.00 convenience fee is incidental to the underlying debt, because the alleged fee is necessarily an "amount.") (citing *Campbell*, 98 F. Supp. 3d at 582; *Lindblom*, 2016 WL 2841495, at *6).

Defendant's reliance upon *Robledo v. Yardi Systems, Inc*., 741 F. Supp. 3d 617 (W.D. Tex. June 26, 2024), is misplaced, given *Robledo*'s reliance on Texas law. Mot. at 15. There are material differences between the Texas Debt Collection Act ("TDCA") and the FDCPA—differences acknowledged by the court in *Robledo*. In particular, while the FDCPA applies to third parties who attempt to collect the debt owed or due to another, the TDCA is limited in application only to those seeking to collect their own debts. *See Robledo*, 741 F. Supp. 3d at 622-23 (discussing this difference between

---

[15] In fact, as it relates to the State of California, such fees are explicitly prohibited. *See* FAC, ¶ 52.

the TDCA and FDCPA). As a result, *Robledo* does not stand for the proposition that "routine rent payments are not debt-collection activity" as claimed by Defendants, but merely stands for the proposition that because the TDCA does not apply to third-party debt collectors, and the plaintiff's claim thereunder was functionally flawed. In contrast, the FDCPA applies to any person who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *See* 15 U.S.C.A. § 1692a(6). Furthermore, because Section 1692f(1) of the FDCPA specifically prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" Defendants' Service Fee is an independent violation of the FDCPA that is not expressly authorized by Plaintiffs' principal obligations under the lease agreements.

Defendants' claim that Plaintiffs' Section 1692e theory is derivative and conclusory fails to acknowledge the plethora of allegations within the FAC regarding Defendants' misrepresentations. Moreover, liability under Section 1692e turns on whether "the least sophisticated debtor would likely be misled" by the relevant debt collection practices. *Flores*, 2015 WL 4254032, at *4. Defendants' portal where Plaintiffs are obligated to pay their obligations under their lease agreements provides payment options that require payment of the Service Fee, which violate Section 1692e. *See Simmet*, 2016 WL 11002359, at *6 ("The [c]ourt finds that the hypothetical "least sophisticated debtor" would likely assume such a fee is permissible. Thus, because the hypothetical least sophisticated debtor would likely believe collection of the alleged fee to be lawful, [d]efendant's alleged collection practices—*i.e.*, representing, by requesting the fee, that charging the fee is lawful—are impermissible under § 1692e.").

Lastly, while Defendants are correct that the FDCPA is subject to a one-year statute of limitations, importantly, this same statute of limitations does not apply to the UCL "unlawful" prong or the Rosenthal Act claim, both of which may be premised on predicate FDCPA violations but are subject to four-year statutes of limitations. *See*

*Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177–78 (9th Cir. 2016) ("[A]s a general matter, the UCL statute of limitations will apply to a UCL claim, even when that claim is based on an underlying law with its own separate statute of limitations."); *see also* *Sandoval v. M1 Auto Collisions Centers*, 309 F.R.D. 549, 561 (N.D. Cal. 2015) (applying the four-year statute of limitations for the UCL claims rather than the three-year statute of limitations applicable to the underlying unlawful violation of federal law).

Moreover, the FDCPA statute of limitations is subject to tolling when a plaintiff "has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute [of limitations] does not begin to run until the fraud is discovered." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Here, the FAC contains allegations that Defendants were fraudulent in their representations of the Service Fee as lawful. Plaintiffs were diligent in pursuing their rights and upon discovery that they were charged and paid unlawful fees, Plaintiffs filed their suit. As a result, any applicable statute of limitations on Plaintiffs' FDCPA claims have been tolled.

**B. Because Defendants' Service Fee violates the FDCPA, Defendants also violate the Rosenthal Act**

The Rosenthal Act is modeled on, and applies more broadly than, the FDCPA. *Best v. Ocwen Loan Servicing, LLC*, 64 Cal. App. 5th 568, 576 (2021). Its purpose is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1, subd. (b). "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements ... and makes available the FDCPA's remedies for violations." *Caudillo v. Portfolio Recovery Assocs., LLC*, No. 12-CV-200-IEG, 2013 WL 4102155, at *4 (S.D. Cal. Aug. 13, 2013) (citing *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)). Indeed, "any conduct by a debt collector that violates the federal FDCPA necessarily violates the [Rosenthal Act]

as well." *Robinson v. Managed Accounts Receivable Corp*., 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009).

Here, Plaintiff Mosley's Rosenthal Act claim is premised upon her claim that Defendants violated Sections 1692f and 1692e of the FDCPA. FAC, ¶¶ 162-68. The majority of district courts in the Ninth Circuit have held that pay-to-pay fees like Defendants' Service Fee violate the FDCPA, as a matter of pleading, and accordingly, violate the Rosenthal Act. *Torliatt*, 2020 WL 1904596, at *2; *Simmet*, 2016 WL 11002359, at *5; *Lembeck v. Arvest Cent. Mortg. Co*., 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020); *Lindblom v. Santander Consumer USA, Inc*., No. 15-CV-990 (LJO) (BAM), 2016 WL 2841495, at *7 (E.D. Cal. May 9, 2016).

"Whether [pay-to-pay fees] are permissible within the meaning of the FDCPA turns on California law" because, as discussed earlier, Plaintiff Mosley did not expressly agree to pay-to-pay fees in her lease agreement. *Lindblom*, 2016 WL 2841495, at *6; *see also Riding v. Cach LLC*, 992 F. Supp. 2d 987, 997-98 (C.D. Cal. 2014). California law explicitly prohibits pay-to-pay fees under the UCL and specifically pursuant to the Honest Pricing Act. FAC, ¶ 52; *Patterson*, 2026 WL 370183, at * 4 (citing 2023 Cal. Legis. Serv. Ch. 400 (S.B. 478)). Therefore, Plaintiff Mosley sufficiently allege a violation of the Rosenthal Act.

Defendants' cited case law is inapposite. Indeed, neither *Olson v. La Jolla Neurological Associates*, 85 Cal. App. 5th 723 (2022), or *Mann, et al. v. Yardi Systems, Inc*., No. 23STCV14050 (Sup. Ct. Cal. June 26, 2026), addressed the fact that unauthorized pay-to-pay fees that violate California law are independent violations of the FDCPA, and by adoption, the Rosenthal Act. Furthermore, *Olson* does not stand for the proposition that "[c]ourts reject attempts to treat isolated or incidental rent-related notices as debt collection absent facts showing regular debt-collection activity." Mot. at 16. Instead, the decision contemplated the liability of a debt holder under the Rosenthal Act where it hired a separate entity to collect the debt owed. *See Olson*, 85 Cal. App. 5th at 736. Here, Plaintiff Mosley alleges a Rosenthal Act claim against

Defendants related to their imposition of a Service Fee in excess of the amount Plaintiff owes pursuant to her lease agreement. FAC, ¶¶ 93-99, 154-68. Lastly, the court in *Mann* fell for the "red herring" that the court in *DeSimone* cautioned against. *See DeSimone*, 748 F. Supp. 3d at 158. Indeed, the court in *Mann* made a error as equating the definitions of "debt" under the FDCPA and the Rosenthal Act. *See Mann*, No. 23STCV14050, at p. 3. The definition of "debt" under the FDCPA is not limited to "consumer credit transactions" and includes "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C.A. § 1692a(5). As a result, because Plaintiff Mosley adequately alleges a violation of the FDCPA, and Plaintiff Mosley's Rosenthal Act claim is premised upon a violation of the FDCPA, Defendants' reliance upon *Mann* is a "red herring." The issue here is not whether Defendants' pay-to-pay Service Fee is a "debt" rather, the issue is whether it is an "amount" charged in connection with Defendants' collection of Plaintiff Mosley's rental payments. As courts throughout this Circuit repeatedly and expressly hold, fees similar to Defendants' pay-to-pay Service Fee qualifies as an "amount" within the meaning of the FDCPA and thus prohibited by the FDCPA, and by extension, the Rosenthal Act.[16]

## IV. <u>Plaintiffs Adequately Plead Their Unjust Enrichment/Quasi-Contract Claims</u>

Plaintiffs' well-pleaded unjust enrichment/quasi-contract claims are standalone causes of action under California, Massachusetts and New Jersey law. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("[T]he California Supreme

---

[16] Defendants' argument that Plaintiff Mosley's failure to attach her lease agreement to the Complaint requires dismissal of her claims is incorrect under notice pleading standards.

Court … allow[s] an independent claim for unjust enrichment to proceed."); *Patterson*, 2026 WL 370183, at *5 ("an unjust enrichment claim may be construed as a quasi-contract claim, which is a viable claim for relief in California."); *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc*., 552 F.3d 47, 57 (1st Cir. 2009); *Stewart v. Beam Global Spirits & Wine, Inc*., 877 F. Supp. 2d 192, 196 (D.N.J. 2012). Defendants rely on outdated case law—or fail to cite any case in claiming quasi-contract is not a cause of action but a legal theory—in arguing otherwise.

Plaintiffs adequately allege unjust enrichment/quasi-contract by explaining how: (1) Defendants unjustly retained a benefit to Plaintiffs' detriment; and (2) the retention violated fundamental principles of justice, equity and good conscience.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

Dated: July 31, 2026

Respectfully submitted,

**KALIELGOLD PLLC**

By: */s/ Sophia Goren Gold*
Sophia G. Gold
Amanda J. Rosenberg
Jeffrey D. Kaliel

**PEARSON WARSHAW, LLP**
Rachel Soffin (FL Bar No. 18054)*
Melissa S. Weiner (MN Bar No. 0387900)*
Ryan T. Gott (MN Bar No. 0397978)*

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs and the Putative Class*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs and the Class, certifies that this brief contains 6,974 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 31, 2026

*/s/ Sophia G. Gold*
Sophia G. Gold
Attorneys for Plaintiffs and the Putative Class

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2026, I caused to have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

Dated: July 31, 2026

*/s/ Sophia G. Gold*
*Attorney for Plaintiffs and the Putative Class*