RACHEL E. K. LOWE (State Bar No. 246361)
JONATHAN J. KIM (State Bar No. 312145)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: 213-576-1000
Facsimile: 213-576-1100
rachel.lowe@alston.com
jonathan.kim@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC (erroneously sued as YARDI SYSTEMS, INC.) and RENTCAFE, LLC**

(Additional Counsel Listed on Next Page)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PHANESS MOSLEY, WILLIAM FOXX, and KAREN PICARDI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

YARDI SYSTEMS, INC., and RENTCAFE, LLC,

Defendants.

Case No. 2:26-cv-03318-WLH-BFM

(Santa Barbara Superior Court Case No. 26CV00952)

**DEFENDANTS YARDI SYSTEMS, LLC'S AND RENTCAFE, LLC'S REPLY TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

DATE: September 11, 2026
TIME: 1:30 p.m.
PLACE Courtroom 9B
350 West First Street
Los Angeles, CA 90071

Filing Date: February 9, 2026
Removal Date: March 27, 2026

E. SCOTT SCHIRICK
(*Admitted Pro Hac Vice*)
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: 212-210-9400
Facsimile: 212-210-9444
Scott.schirick@alston.com

DAVID B. CARPENTER
(*Admitted Pro Hac Vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile: 404-881-7777
David.carpenter@alston.com

Attorneys for Defendants
**YARDI SYSTEMS, LLC and**
**RENTCAFE, LLC**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. THE FAC DOES NOT IDENTIFY A COGNIZABLE FALSE STATEMENT, ACTIONABLE OMISSION, OR LEASE TERM THAT DEFENDANTS VIOLATED ........ 2

III. THE JUDICIALLY NOTICEABLE SCREENSHOTS CONTRADICT PLAINTIFFS' ALLEGATIONS ........ 4

IV. EACH OF PLAINTIFFS' CLAIMS INDEPENDENTLY FAILS ........ 5

- A. Plaintiffs' Consumer Protection Claims Fail (UCL, CLRA, NJCFA, and Chapter 93A) ........ 5
- B. Plaintiffs' Tortious Interference Claim Fails ........ 9
- C. Plaintiffs' FDCPA and Rosenthal Act Claims Fail ........ 10
- D. Plaintiffs' Unjust Enrichment Claim Fails ........ 11

V. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arcangel v. Yardi Sys., Inc.*,
No. 1-24-2062, 2026 WL 1458911 (Ill. App. Ct. May 22, 2026) .................... 2, 3, 7

*Chowning v. Tyler Techs., Inc.*,
2025 WL 3496690 (N.D. Cal. Dec. 5, 2025) .................... 8

*Fernandez v. Citigroup Mortg. Loan Trust, Inc.*,
2020 WL 6162149 (C.D. Cal. Aug. 17, 2020) .................... 7

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) .................... 4

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) .................... 5

*Holmberg v. Armbrecht*,
327 U.S. 392 (1946) .................... 11

*In re Amazon Service Fee Litigation*,
2024 WL 3460939 (W.D. Wash. July 18, 2024) .................... 6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .................... 8

*Mirabadi v. Select Portfolio Servicing, Inc.*,
2024 WL 1151673 (C.D. Cal. Feb. 13, 2024) .................... 7, 8

*Olson v. La Jolla Neurological Associates*,
85 Cal. App. 5th 723 (2022) .................... 11

*Russ v. Apollo Grp., Inc.*,
2009 WL 106741112 (C.D. Cal. Sept. 23, 2009) .................... 8

*Schertzer v. Bank of Am., N.A.*,
445 F. Supp. 3d 1058 (S.D. Cal. 2020) .................... 7, 8

*Sepanossian v. Nat'l Ready Mixed Concrete Co.*,
97 Cal. App. 5th 192 (2023) .................... 12

*Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-CV-03871-LHK, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ................ 12

*Walters v. Fidelity Mortgage of California*, 730 F. Supp. 2d 1185 (E.D. Cal. 2010) ................ 9, 10

**RULES**

Local Rule 11-6.1 ................ 14

Local Rule 11-6.2 ................ 14

**STATUTES**

15 U.S.C. § 1692a(6) ................ 10

15 U.S.C. § 1692a(6)(F) ................ 11

Cal. Civ. Code § 1782 ................ 2

FDCPA ................ 9, 10, 11

North Carolina Unfair and Deceptive Trade Practices Act ................ 6

Rosenthal Act ................ 2, 10, 11, 12

# I. INTRODUCTION

Plaintiffs ask this Court to treat a disclosed, avoidable fee as if it were hidden and unavoidable—even though information subject to judicial notice shows that Plaintiffs were on notice of the fee and that two of them avoided it dozens of times by paying by check or ACH, rather than by card. Plaintiffs sued anyway, calling the Service Fee hidden, deceptive and unauthorized.

Yet the FAC never identifies a statement Defendants made that was false, material information that Defendants failed to disclose, or a lease term that Defendants violated. The Opposition does not cure those failures. It simply repeats the FAC's pejorative labels—"junk fee," "hidden profit," "pay-to-pay"—without identifying any *facts* supporting those characterizations.

At the same time, Plaintiffs' conclusory allegations are contradicted by disclosures incorporated into the FAC by reference. Plaintiffs allege the Service Fee was concealed until the final screen before payment and presented as mandatory. The payment screens attached to the Motion—which the Court may consider—confirm the opposite: the fee is disclosed before a tenant ever authorizes payment, alongside fee-free alternatives. The Opposition does not dispute what those screens show. Instead, it hedges, saying Plaintiffs "likely" saw a different set of screens in RentCafe's Resident app—even though the FAC's amendments studiously disclaimed any use of the app. But Plaintiffs cannot have it both ways.

Plaintiffs also ignore fatal legal defects as to each individual claim. For example, Plaintiff Mosley does not rebut the fact that she served her CLRA notice two days after filing this lawsuit. Plaintiffs also fail to address the FDCPA's exclusion for debt that was never in default, which, based on their own allegations, ends both the federal claim and the Rosenthal Act claim, since the latter is dependent on the former. Nor do they defend pleading "Defendants" and "RentCafe" as a single undifferentiated actor. And Plaintiffs never explain how an unjust enrichment claim seeking the same money already sought under the UCL is not simply that claim by another name. Because this Court treats a

failure to respond to an argument in opposition as a concession of it, each of these omissions independently warrants dismissal of the corresponding claim.

For these reasons, and those set forth more fully below, the Court should grant Defendants' Motion and dismiss the FAC with prejudice.

## II. THE FAC DOES NOT IDENTIFY A COGNIZABLE FALSE STATEMENT, ACTIONABLE OMISSION, OR LEASE TERM THAT DEFENDANTS VIOLATED

To survive dismissal, the FAC's claims require plausible allegations of an actual false statement, omission, or a violated lease term. The FAC pleads none of the three, and the Opposition does not fill the gap.

*No false statement.* The closest Plaintiffs get to identifying a false statement is the allegation that RentCafe's disclosures represent the Service Fee as covering "bank . . . and network fees," when "in actuality" it is "larded with profit for RentCafe." (FAC, at ¶ 12.) But that quotation is doctored. The full disclosure appears in *Arcangel v. Yardi Sys., Inc.*, the decision from which Plaintiffs borrowed the language, which states that the Service Fee covers "banks fees, ***Yardi fees,*** and processing network fees." No. 1-24-2062, 2026 WL 1458911, at *7–8 (Ill. App. Ct. May 22, 2026) (emphasis added). The FAC substitutes an ellipsis for the words "Yardi fees"—the very fee the Opposition claims was concealed. This same "hidden profit" theory failed in *Arcangel* itself, where the court held that the "Yardi fee" disclosure "flexibly entails that Yardi receives amounts exceeding the strict transaction costs of processing the tenant's payment." *Id.*

This was not accidental. The "covers bank . . . and network fees" language appeared for the first time in the FAC—Plaintiffs' second attempt at these allegations—yet that excerpt's source and context are conspicuously unpled, omitted together with the full, untruncated quote. When the Motion pointed out that the language traces to *Arcangel*, Plaintiffs responded with equally calculated ambiguity, saying that the language "is taken from Defendants' portal, and Plaintiffs will provide the screenshot to prove it in discovery." (Opp., at 5, fn. 3.) But Plaintiffs cannot use a selective, unsourced

quote—with an ellipsis at its heart—to satisfy their fraud pleading burden, while teasing "pro[of]" they had every opportunity, and every reason, to plead twice over. If Plaintiffs can identify the full fee disclosure, they should have done so in the FAC, or at least in the Opposition. Once that manipulated quote is set aside, the FAC does not allege a single fact showing the Service Fee was ever represented as a pure pass-through, or that it excluded profit margin. There is no false statement here—only an accurate disclosure Plaintiffs edited to manufacture an issue of fact.[1]

*No actionable omission.* The FAC does not identify any duty requiring Defendants to disclose the Service Fee before a tenant signs a lease with the landlord or at any point before the tenant later chooses to pay rent through RentCafe. Nor can Plaintiffs amend to identify any such obligation. Defendants are not landlords or parties to Plaintiffs' leases; RentCafe's rental payment processing platform enters the picture only afterward, as one way to pay rent. The Opposition points to no authority imposing a disclosure duty on a third-party payment platform in that position. And the screens submitted with the RJN confirm the Service Fee was disclosed multiple times before payment. (*See* Dkt. 28-2, at Exs. A–C.) A fee disclosed before payment is by definition not "omitted."

*No contract term.* The FAC identifies no lease provision that prohibits the Service Fee or that bars a third-party payment platform from charging one. Plaintiffs' argument is that because their leases do not expressly authorize the Service Fee, the leases prohibit it. (*See* Opp., at 15:24-16:2.) That is a non sequitur. Plaintiffs cite no authority for the proposition that a third-party payment platform cannot charge a disclosed fee simply because the underlying lease does not mention it, one way or the other.

[1] Plaintiffs' hidden profit theory also finds no "plausible basis" in the "Federal Reserve's interchange-fee data, the Durbin Amendment's regulatory caps on debit interchange fees, and industry cost surveys by NACHA and the Association for Financial Professionals." (*See* Opp. at 7, n.7). The figures Plaintiffs cite are averages or do not represent limits on total, customer-facing fees or charges, as explained in the Motion. (*See* Dkt. 28, 22-23.)

## III. THE JUDICIALLY NOTICEABLE SCREENSHOTS CONTRADICT PLAINTIFFS' ALLEGATIONS

When a tenant pays rent through RentCafe, the tenant moves through a short sequence of screens before payment is submitted. Plaintiffs allege that the Service Fee was hidden in that sequence, its amount withheld until the final screen, and that, as a result, paying by card seemed mandatory. The payment-flow screens attached to the RJN contradict each allegation, and the Court need not accept as true allegations that contradict matters properly subject to judicial notice.[2] *See*, *e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014).

Plaintiffs do not dispute that the screenshots disclose the Service Fee or that fee-free alternatives existed. They argue instead that the fee is hidden behind a collapsed banner, pointing to the "show less" indicator in the corner of each screenshot. (Opp., at 1:17-20.) That gets the screenshot backward: "show less" means the disclosure is already expanded, not collapsed. There is nothing left to click open.

Plaintiffs also argue that the fee amount is not disclosed until that final screen, and that RentCafe never tells consumers how to avoid it. (Opp., at 1:22-24.) The record contradicts both points. Plaintiffs do not dispute that the fee amount is disclosed before payment. And the fee is tied to certain payment methods, not to payment itself—and two of the three named Plaintiffs paid by other means multiple times without ever incurring it. (*See* Dkt. 28-2, at Exs. A, D.)

Unable to answer what the screens show, Plaintiffs call them cherry-picked, asserting that Defendants "omit any evidence of the RentCafe app." (Opp., at 4, fn. 2.) But Plaintiffs themselves disclaimed reliance on the app in the FAC. The original complaint alleged that each Plaintiff paid through the "RentCafe Resident app"; the FAC, filed after Defendants' first motion to dismiss, tacks away from the app, alleging only that Plaintiffs paid "via RentCafe":

[2] Defendants' Reply to RJN, filed contemporaneously with this Reply, addresses why the payment-flow screens are properly subject to judicial notice.

| **Plaintiff** | **Original Complaint (Dkt. 1-2)** | **First Amended Complaint (Dkt. 26)** |
|---|---|---|
| Mosley | "…pays her rent each month via the *RentCafe Resident app*." ¶ 48 (emphasis added). | ". . . paid rent via RentCafe." ¶ 93. |
| Foxx | ". . .paid rent through the *RentCafe Resident app*." ¶ 54 (emphasis added). | "…paid rent through RentCafe." ¶ 100. |
| Picardi | "…paid her rent each month via the *RentCafe Resident app*." ¶ 60 (emphasis added). | ". . . paid her rent via RentCafe." ¶ 107. |

Having amended their pleading to remove every reference to the app, Plaintiffs cannot now manufacture a factual dispute over it. An amended pleading supersedes the original. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989).

## IV. <u>EACH OF PLAINTIFFS' CLAIMS INDEPENDENTLY FAILS</u>

### A. <u>Plaintiffs' Consumer Protection Claims Fail (UCL, CLRA, NJCFA, and Chapter 93A)</u>

Plaintiffs assert four consumer protection claims—under the UCL, CLRA, NJCFA, and Massachusetts Chapter 93A. Each requires as a predicate a deceptive or unlawful act, in addition to its own individualized elements. Section II, *supra*, establishes that the FAC fails to plead any actionable misrepresentation or omission, requiring dismissal of each claim. Each also fails for the following additional reasons.

Plaintiffs rely primarily on two out-of-circuit cases, neither of which applies. Plaintiffs cite *Williams v. Pennymac Loan Servs., LLC* for the proposition that "charging unauthorized fees to a captive audience is per se an unfair and deceptive practice." (*See* Opp., at 3:10-11.) *Williams* applied the North Carolina Unfair and Deceptive Trade Practices Act, a statute not at issue in this case. *See Williams*, 2025 WL 3443489, at *1

(M.D.N.C. Dec. 1, 2025). The facts also differ: the *Williams* defendant's fees allegedly exceeded actual processing costs and lacked authorization under the deed of trust. *Id.* at *5. Plaintiffs allege no comparable facts. The most they allege is that the Service Fee "covers bank . . . and network fees," which, as shown above, is not false.[3] Similarly, the *Williams* decision turned on plaintiff's allegation that the defendant was "not legally entitled to charge the fees because there [was] no affirmative authorization for doing so." In contrast, the Plaintiffs here were notified of the Service Fee, given payment options that did not include it, and authorized the fee when they paid their rent.

*Patterson v. WEX, Inc.* involved a materially different timeline. Plaintiffs cite it for the proposition that RentCafe's disclosures are "designed to mislead" because the Service Fee is not disclosed until the final payment screen. (Opp., at 4:4.) The *Patterson* defendant did not disclose its fee until after the plaintiff had already signed up for coverage and did not tell users how to avoid it. 2026 WL 370183, at *1 (N.D. Cal. Feb. 10, 2026). Here, the screenshots show the fee disclosed at the outset, before the payment flow even begins, alongside fee-free alternatives. (*See*, *e.g.*, Dkt. 28-2, at Ex. A.) This is not misleading as a matter of law. *See*, *e.g.*, *In re Amazon Service Fee Litigation*, 2024 WL 3460939, at *8 (W.D. Wash. July 18, 2024); *Arcangel v. Yardi Sys., Inc.*, No. 1-24-2062, 2026 WL 1458911, at *7–8 (Ill. App. Ct. May 22, 2026).[4]

*Plaintiff Mosley's UCL Claim Fails.* The UCL reaches only conduct that is unlawful, unfair, or fraudulent, and Mosley fails to plead all three. On the fraudulent prong, Mosley does not rebut Defendants' arguments, conceding the point. (Opp., at 7:10-17); *see Fernandez v. Citigroup Mortg. Loan Trust, Inc.*, 2020 WL 6162149, at *5

---

[3] Plaintiffs contend that "profit" resulting from credit card processing "is unlawful," citing Mass. Gen. Laws Ch. 140D, §28A. (Opp. at 22, n.32.) That Massachusetts General Law section applies to "sales transactions," not apartment rentals.

[4] Plaintiffs also cite *Ramos v. EyeBuyDirect, Inc.*, No. 8:25 Civ. 539, 2025 WL 2633103 (C.D. Cal. Aug. 27, 2025) and *Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. Appx. 696 (9th Cir. 2013), both of which involved allegations that optional fees were presented as mandatory. That is not the case here, where Defendants presented various payment options from the outset. And *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915 (N.D. Cal. 2013), involved mandatory fees that were "significantly marked-up from . . . third-party vendors' actual fees."

(C.D. Cal. Aug. 17, 2020). On the unfair prong, Mosley argues that class members are a "captive audience" because they are "forced to complete their rental payments through RentCafe" and "cannot choose another payment processor." (Opp., at 8:21-25.) The screenshots contradict that: tenants choose their payment method, and fee-free alternatives were available. (*See* Dkt. 28-2, at Exs. A, D.) On the unlawful prong, the UCL claim rises or falls with the FDCPA, Rosenthal Act, and CLRA claims addressed below, and fails for the same reasons those claims fail.

*Mosley's CLRA Claim Fails*. Mosley's CLRA claim fails for lack of statutory pre-suit notice. Mosley filed this action on February 9, 2026—two days before serving a CLRA demand letter that the statute required her to send thirty days in advance. (*See* Dkt. 28-2, at ¶ 9, Ex. G.) The Opposition does not dispute Defendants' proof of the timing, requiring dismissal.

The CLRA claim fails for the additional reason that the statute applies only to a sale or lease of "goods or services," and a payment-processing fee is neither. Courts consistently hold that a fee ancillary to a primary transaction—like the Service Fee at issue here—falls outside the CLRA's scope. *See, e.g.*, *Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1096 (S.D. Cal. 2020); *Mirabadi v. Select Portfolio Servicing, Inc.*, 2024 WL 1151673, at *7 (C.D. Cal. Feb. 13, 2024). Cases cited by Mosley do not hold otherwise. (*See* Opp., at 11:5-14.) The "service" at issue in *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) was Yahoo's email platform. *Chowning v. Tyler Techs., Inc.*, 2025 WL 3496690 (N.D. Cal. Dec. 5, 2025), involved a campsite reservation service. And *Russ v. Apollo Grp., Inc.*, 2009 WL 106741112 (C.D. Cal. Sept. 23, 2009), held that "education" or "a course of study" (at the online University of Phoenix) was the "service" for CLRA purposes. None holds that a processing fee is itself a "service" under the CLRA.

Plaintiffs try to save their CLRA claim by referring to California's "Honest Pricing Law," which makes "drip pricing" illegal. (FAC, ¶ 52; Opp., at 9:5-15, 10:18-11:16, n.10). That law prohibits "[a]dvertising, displaying, or offering a price for a good

or service that does not include all mandatory fees or charges . . . ." Cal. Civ. Code § 1770(a)(29). But the FAC does not allege that RentCafe advertised one price and charged another; it alleges that a Service Fee was disclosed before payment was submitted. "Drip pricing" is simply inapplicable.

*Plaintiff Foxx's NJCFA Claim Fails.* Foxx does not plead a materially false representation, a New Jersey regulatory violation, or a material omission tied to a duty to disclose. The Opposition instead points back generally to the FAC's allegations that the platform is "deceptive." (*See* Opp., at 12.) That is not enough. He fails to allege how the term "Service Fee" standing alone, is materially false or misleading; why it cannot reasonably be understood to refer to a fee charged to process payment; what duty required Defendants to disclose payment alternatives (which in fact were disclosed); and how that omission was material and caused him damages. (*See* Dkt. 28, 22-23.) And he fails to allege that Defendants knew some specific statement he saw was false or incomplete. (*Id*., at 23.) Each defect independently requires dismissal.

*Plaintiff Picardi's Chapter 93A Claim Fails.*[5] Chapter 93A requires a valid regulatory predicate or independently deceptive conduct. (Dkt. 28, at 23:10-24:8.) The Opposition establishes neither. The Opposition relies heavily on the FAC's "deceptive" allegations which fail for the reasons already explained. (Opp., at 13:3-10.) Picardi then argues that Defendants violated Chapter 93A because the FTC, CFPB, and Massachusetts Attorney General have targeted fees "junk" and "pay to pay" fees. (*Id*., at 13:9-12.) But none have targeted disclosed fees to process card transactions. The FTC's stated concern is with sellers who fail to advertise the total price and disclose fees only after a consumer is well into a transaction. (FAC, ¶ 47.) The CFPB's "pay to pay" concern is connected to the FDCPA. (*Id.*, ¶¶ 49-50.) And the Attorney General's concern

[5] Picardi concedes she did not provide Defendants the required pre-suit notice. (Opp., at 12 fn. 12.) Despite the Opposition's attempt to shift the pleading burden to Defendants, this defect alone is dispositive of Picardi's Chapter 93A claim. *See Sumner v. Mortg. Elec. Registration Sys.*, No. 11-11910-DJC, 2012 WL 3059429, at *6 (D. Mass. July 26, 2012) ("Plaintiffs . . . must allege facts that the Defendants do not maintain a place of business or keep assets in Massachusetts to show the exception to the demand letter requirement applies to plead a Chapter 93A claim.").

is with "hidden or surprise 'junk fees' that deceptively raise costs beyond advertised prices." (*Id.*, ¶ 54.) None describes a fee disclosed from the outset with fee-free alternatives available throughout.

Picardi's two remaining predicates run into their own problems. She concedes that 940 CMR 38.04 was not yet in effect during the period she paid the Service Fee—September 2023 through January 2025—so it cannot serve as her predicate. (Opp., 13 at n. 13.) And her fallback, the MDCPA, defines "debt" as an amount more than 30 days past due but Picardi does not allege her rent was ever delinquent. (*See* Dkt. 28, at n. 11.)

**B. <u>Plaintiffs' Tortious Interference Claim Fails</u>**

Defendants' Motion identified two independent deficiencies: the FAC fails to identify any specific lease term that Defendants allegedly interfered with and fails to allege any actual breach or disruption of the lease relationship. (*See* Dkt. 28, at 14:5-14.) The Opposition does not explain away either shortcoming.

*No lease term identified.* The Motion invited Plaintiffs to identify a lease term that the Service Fee violated. (*See* Dkt. 28, at 14:5-14.) The Opposition is silent, pointing to none. Instead, Plaintiffs allege only that the fee added a cost to their rent payments—not that it altered, breached, or disrupted any lease term. Without an identified term, there is nothing to have interfered with.

*No breach or disruption.* Plaintiffs' remaining argument rests on *Walters v. Fidelity Mortgage of California*, 730 F. Supp. 2d 1185 (E.D. Cal. 2010), but the comparison only underscores the weakness of Plaintiffs' position. *Walters* involved egregious, systematic misconduct by a mortgage servicer over four-years, including failing to credit payments and falsely applying late fees, misapplying payments, falsely claiming default, refusing to accept payments, charging for unnecessary hazard insurance, adding phony fees to the principal owed on the mortgage, and, ultimately, wrongfully foreclosing on the plaintiff's home—all plain violations of law and the servicing agreement. That bears no resemblance to a disclosed processing fee for an optional payment method. Nor does the FAC allege that, because of the Service Fee,

Plaintiffs no longer enjoyed the benefits of their leases. The tortious interference claim must be dismissed.

### C. <u>Plaintiffs' FDCPA and Rosenthal Act Claims Fail</u>

An FDCPA claim requires the defendant to qualify as a "debt collector"—an entity whose principal purpose is debt collection, or that regularly collects debts owed to another. *See* 15 U.S.C. § 1692a(6). Defendants are neither. RentCafe is a payment platform that landlords license so tenants can pay rent online—not a collection agency chasing overdue accounts. The FAC does not allege that Defendants send delinquency notices, pursue past-due balances, or do anything resembling debt collection; it alleges only that tenants used RentCafe to pay rent in the ordinary course of a landlord-tenant relationship. If RentCafe is a debt collector, so is every merchant that charges a service fee incident to a commercial transaction.

Rather than confront that threshold issue, Plaintiffs eschew it, pivoting to Section 1692f(1), arguing that whether the Service Fee is a "debt" is irrelevant because it is an unauthorized "amount." (*See* Opp., at 16:5-8.) That reframing fails: Section 1692f(1) restricts what a "debt collector" may collect, not who counts as one. Defendants still must be a "debt collector" collecting a "debt"—the question Plaintiffs conveniently skip past. The cases Plaintiffs cite for that theory—*Simmet*, *Lindblom*, *DeSimone*, and *Lembeck*—all involved actual debt collectors or loan servicers collecting on consumer debts or mortgages, not a software platform facilitating routine rent payments. (*See* Opp., at 16:8-18.)

Plaintiffs also ignore that the FDCPA excludes debt that was never in default. The statute excludes anyone collecting a debt "which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). The FAC does not allege that any Plaintiff's rent was past due, and the Opposition does not address the issue at all.

Nor does Plaintiffs' tolling argument save the claim. Plaintiffs concede the FDCPA's one-year statute of limitations, but argue it is tolled because they were injured by a fraud they were ignorant of. (Opp., at 18:8-16.) But that rule only applies when a

plaintiff was unaware of an injury "without any fault or want of diligence or care." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Plaintiffs cannot claim ignorance when they allege they paid the Service Fee each month.

As for the Rosenthal Act claim, the Opposition concedes it is predicated entirely on Mosley's FDCPA claim (Opp., at 19:3-4), and therefore fails alongside it. It also fails independently: the Rosenthal Act applies only to defendants who "regularly and in the ordinary course of business 'engage in' debt collection." *Olson v. La Jolla Neurological Associates*, 85 Cal. App. 5th 723, 735 (2022). Plaintiffs say *Olson* addressed a different scenario—a debt holder's liability for hiring a separate collection agency, not routine payment processing. (Opp., at 19:23-20:2.) But *Olson*'s regularity requirement turns on whether debt collection is a regular part of the business and Plaintiffs do not allege that debt collection is part of Defendants' regular business.

Finally, Plaintiffs call Defendants' reliance on *Mann v. Yardi Systems, Inc.* a "red herring." (Opp., at 20:3.) It is not. *Mann* held that rent is not "consumer debt" under the Rosenthal Act because rent is a direct payment for the right to inhabit leased premises, unlike a mortgage, which repays borrowed money. No. 23STCV14050 (Sup. Ct. Cal. June 26, 2026). Plaintiffs fail meaningfully to address this distinction.

**D. <u>Plaintiffs' Unjust Enrichment Claim Fails</u>**

Plaintiffs' unjust enrichment claim fails regardless of whether it can be pleaded as a standalone cause of action, because it duplicates relief sought elsewhere. Plaintiffs seek restitution through their UCL claim (FAC, at ¶ 184) and money damages through their tortious interference claim. A duplicative restitution claim should be dismissed. *See, e.g.*, *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 208 (2023). Plaintiffs' Opposition does not address this duplication. Instead, it defends only the threshold question of whether unjust enrichment can be pleaded as a standalone claim at all. (Dkt. 28, at 24:9-25.) Even accepting Plaintiffs' position on that threshold question, the duplication problem independently requires dismissal.

## V. CONCLUSION

For all these reasons set forth herein, Defendants respectfully request that the Court dismiss Plaintiffs' claims with prejudice.

Dated: August 21, 2026

E. SCOTT SCHIRICK, *Pro Hac Vice*
DAVID B. CARPENTER, *Pro Hac Vice*
RACHEL E. K. LOWE
JONATHAN J. KIM

**ALSTON & BIRD LLP**

By: ______________________
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Yardi Systems, LLC and RentCafe, LLC, certifies that this brief contains 3,924 words, which complies with the word limit of Local Rule 11-6.1.

DATED: August 21, 2026

By: *s/ Rachel E. K. Lowe*
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all attorneys of record.

DATED: August 21, 2026

By: *_/s/ Rachel E. K. Lowe_*
Rachel E. K. Lowe
Attorneys for Defendants Yardi Systems, LLC and RentCafe, LLC